## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **J.A. and J.A., individually and on behalf of J.A., a minor child, and on behalf of ALL OTHERS SIMILARLY SITUATED,** | ) ) ) ) ) | **Case No. 1:18-cv-9580** |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) ) | |
| **MONROE TOWNSHIP BOARD OF EDUCATION; NEW JERSEY DEPARTMENT OF EDUCATION; LAMONT REPOLLET, Acting Commissioner of Education; NEW JERSEY OFFICE OF ADMINISTRATIVE LAW; and JEFFREY R. WILSON, Administrative Law Judge,** | ) ) ) ) ) ) ) ) ) ) ) | **Judge** **Magistrate** |
| **Defendants.** | ) | |

### CLASS ACTION COMPLAINT

NOW COME Plaintiffs J.A. and J.A., individually and on behalf of J.A.[1], a minor child ("J.A. family"); and on behalf of all others similarly situated (collectively referred to as "Plaintiffs"), by and through counsel, and for their Class Action Complaint against Defendants Monroe Township Board of Education

---

[1] Plaintiffs J.A. family are identified by initials pursuant to Fed.R.Civ.P. 5.2(a)(3) so as to protect the identity of the minor child, J.A.

("MTBOE"); New Jersey Department of Education ("NJDOE"); Lamont Repollet,

Acting Commission of Education ("Repollet"); New Jersey Office of

Administrative Law ("OAL"); and Jeffrey R. Wilson, Administrative Law Judge

("ALJ Wilson"), hereby state as follows:

NATURE OF THE ACTION

1.     This matter arises from systemic flaws in NJDOE's system for

resolving special education cases in the State of New Jersey as explained below.

2.     The issues herein originally arose in the underlying case *J.A. and J.A.*

*o/b/o J.A. v. Monroe Township BOE*, OAL Docket No. EDS 08588-17

("Administrative Case").  The problems were consistent with many other special

education due process cases in the State of New Jersey.

3.     The J.A. Family has elected to be representatives in a class action to

address those flaws as well as appeal decisions in the Administrative Case

particular to them.

JURISDICTION AND VENUE

4.     The Court has subject matter jurisdiction over this action pursuant to

federal question jurisdiction 28 U.S.C. §1331, premised upon the federal

Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1415(i)(3)(A)

wherein it provides that "The district courts of the United States shall have

jurisdiction of actions brought under this section without regard to the amount in

controversy;" Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 *et seq.* ("§504"); and the Americans with Disabilities Act, 42 U.S.C. §12101 *et. seq.* ("ADA"). This Court may order declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202. The Court has supplemental jurisdiction to adjudicate any state claims, which may arise out of the same facts as the federal claims asserted herein pursuant to 28 U.S.C. §1367.

5.    Personal jurisdiction exists over the Defendants because they are all residents or arms of the government of the State of New Jersey.

6.    Venue is proper pursuant to 28 U.S.C. §1391 as all the events giving rise to the claims herein occurred in this District.

<u>PARTIES</u>

7.    J.A., whose date of birth is 05/22/2008, is a child with a disability, primary diagnosis of Autism and other secondary diagnoses. She is eligible for special education and related services under the Individuals with Disabilities Education Act, 20 U.S.C. §§1400 et seq. ("IDEA") and protection under Section 504 of the Rehabilitation Act, 29 U.S.C. §794 ("§504"); the Americans with Disabilities Act, 42 U.S.C. §12101 *et. seq.* ("ADA"); New Jersey's Special Education Law, N.J.S.A. 18A:46-1 *et seq.*; and the New Jersey Law Against Discrimination, N.J.S.A. §10:5-1 *et. seq.* ("NJLAD").

8.     J.A. and J.A. are J.A.'s parents and reside with J.A. at 1054 Baywood Dr., Williamstown, Gloucester County, New Jersey.

9.     Defendant Monroe Township Board of Education MTBOE is a Local Educational Agency ("LEA") as that term is defined by 20 USC §1401(19) and 34 CFR §300.28 and a public agency of the State of New Jersey with its principal place of business located at 75 East Academy Street, Williamstown, Gloucester County, New Jersey 08094.  MTBOE is a public school system in the State of New Jersey and an arm of the New Jersey Department of Education and, upon information and belief, receives federal funding.  As such, it is responsible for ensuring compliance with all mandates arising under the numerous federal statutes for providing special education to the school age students residing within its district.

10.     Defendant New Jersey Department of Education ("NJDOE") is a State Educational Agency ("SEA") as that term is defined in 20 U.S.C. §1401(32); 34 C.F.R. §300.41; and a "public entity" as that term is defined in 42 U.S.C. §12131(1); 28 C.F.R. §35.104; and otherwise receives federal funds for special education under various federal statutes and, as such, is responsible for establishing and maintaining a system for resolution of disputes and ensuring compliance with all mandates arising under the numerous federal statutes for providing special education through its Office of Special Education Programs ("OSEP").  NJDOE

has its principal place of business located at 100 River View Plaza, Trenton,

Mercer County, New Jersey 08625-0500.

11.    Lamont Repollet, Acting Commission of Education ("Repollet"), is

the officer in charge of the NJDOE.  Repollet is named herein in his official

capacity.

12.    Defendant New Jersey Office of Administrative Law ("OAL") is an

Executive Branch agency of the State of New Jersey designated by NJDOE to hear

special education due process hearing requests ("Due Process Complaints")

pursuant to 20 U.S.C. §1415(f); N.J.A.C. §§1:6A-3.1 and 6A:14-2.7.  OAL has its

principal place of business located at 9 Quakerbridge Plaza, Mercerville (Hamilton

Twp.), New Jersey 08619.

13.    OAL is a necessary party to this action pursuant to Fed.R.Civ.P. 19

because without the OAL this Court cannot grant full relief.

14.    Jeffrey R. Wilson ("ALJ Wilson") is a New Jersey Administrative

Law Judge ("ALJ") employed by the OAL to hear cases, including special

education cases, in its Atlantic City, NJ location.  ALJ Wilson is a "hearing

officer" as that term is defined in IDEA, 20 U.S.C. §1415(f)(3)(A) and 34 C.F.R.

§300.511(c) and must meet the requirements of those sections.  ALJ Wilson is the

hearing officer assigned to the underlying Administrative Case and also hears

numerous other special education due process cases. ALJ Wilson is named herein in his official capacity.

15.    ALJ Wilson is a necessary party to this action pursuant to Fed.R.Civ.P. 19 because without the ALJ Wilson this Court cannot grant full relief.

<u>FEDERAL STATUTORY OVERVIEW</u>

16.    IDEA guarantees that every child with a disability receives a FAPE from his/her public school if that school receives federal funding. 20 USC §1412(a)(1)(A); 34 CFR §300.101(a).

17.    The U.S. Supreme Court has defined FAPE as requiring that a student's "educational program must be <u>appropriately ambitious</u> in light of his circumstances." *Endrew F v. Douglas County School Dist. RE-1*, 137 S. Ct. 988, 992 (2017) (emphasis added.)

18.    The U.S. Supreme Court has held that it is not only the child with the disability that has legal rights under IDEA, but the parents are also entitled to assert legal rights on their own behalf under IDEA. *Winkelman v. Parma City School Dist.*, 550 U.S. 516, 127 S.Ct. 1994, 1996 (2007).

19.    In addition, the Every Student Succeeds Act, 20 U.S.C. §6301 *et seq.* (2017) ("ESSA") was enacted "to provide all children significant opportunity to receive a fair, equitable, and high-quality education, and to close educational achievement gaps." 20 U.S.C. §6301.

20.    IDEA guarantees parents and their child with a disability numerous legal rights identified as "Procedural Safeguards".  *See* 20 U.S.C. §1415; 34 C.F.R. §§300.500-520.

21.    One of IDEA's key procedural safeguards guaranteed to children with disabilities and their parents is "[a]n opportunity for any party to present a complaint with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  20 U.S.C. §1415(b)(6) ("Due Process Complaint").

22.    As soon as a dispute is filed pursuant to IDEA, students with disabilities are permitted to remain in their current educational placement (a/k/a "pendent placement") throughout and until completion of a dispute filed via a due process complaint.  20 U.S.C. §1415(j) ("during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . until all such proceedings have been completed.")  This is commonly known as the 'Stay Put' rule.

23.    The Stay Put rule is automatic as there are no preconditions or requirements, e.g. filing a motion or pleading, enunciated in the statute.

24.    "This provision, known as the IDEA's 'stay-put rule,' serves 'in essence, as an automatic preliminary injunction.'" *M.R. v. Ridley School Dist.*, 744

F. 3d 112, 117 (3rd Cir. 2014) *cert. denied*, No. 13-1547, 2015 WL 2340858 (S.Ct. May 18, 2015), *citing Drinker by Drinker v. Colonial School Dist.*, 78 F. 3d 859, 864 (3rd Cir. 1996). The rule reflects Congress's conclusion that a child with a disability is best served by maintaining her educational status quo until the disagreement over her IEP is resolved. *M.R.*, 744 F. 3d at 117.

25. To determine what is the current educational placement, the 3rd Circuit has looked to the IEP actually functioning when stay put is invoked. *M.R.*, 744 F. 3d at 118.

26. Counting from the date a special education Due Process Complaint is filed a Local Educational Agency ("LEA") has fifteen (15) days within which to schedule either a resolution session or mediation or the parties can waive both. 20 U.S.C. §1415(f)(1)(B)(i)(I); 34 C.F.R. §300.510(a)(1).

27. "Day" within the meaning of IDEA is a calendar day and does not exclude weekends or holidays. 34 C.F.R. §300.11(a).

28. From the date of filing the Due Process Complaint, the parties have thirty (30) days within which to settle or otherwise resolve the dispute. 20 U.S.C. §1415(f)(1)(B)(ii); 34 C.F.R. §300.510(a)(1).

29. The "resolution period" totals 30 days and if the case is not resolved, it proceeds to hearing. 20 U.S.C. §1415(f)(1)(B)(ii) ("If the local educational agency has not resolved the complaint to the satisfaction of the parents within 30

days of the receipt of the complaint, the due process hearing may occur, and all of

the applicable timelines for a due process hearing under this subchapter shall

commence"); 34 C.F.R. §300.510(b)(1).

30.    Parents of a child with a disability must be afforded an opportunity "to

examine all records relating to such child."  20 U.S.C. §1415(b)(1); 34 C.F.R.

§300.501(a).

31.    Parents must be allowed to inspect and review their child's records

"without unnecessary delay" and prior to a Due Process hearing and "in no case

more than 45 days after the request has been made."  34 C.F.R. §300.613(a).

32.    The parties must exchange and disclose documents they intend to

introduce at the hearing "not less than 5 business days prior to a hearing." 20

U.S.C. §1415(f)(2)(A) (emphasis added); 34 C.F.R. §300.512(b)(1).

33.    Thereafter, a final decision must be rendered in the due process case

within 45 days after the end of the 30-day resolution period.  34 C.F.R.

§300.515(a) ("The public agency must ensure that not later than 45 days after the

expiration of the 30 day period . . . A final decision is reached in the hearing;"

emphasis added.)  This is commonly referred to as the "45 Day Rule".

34.    A hearing officer conducting a special education due process hearing

"shall, at a minimum not be (I) an employee of the State educational agency or the

local educational agency involved in the education or care of the child; or (II) a

person having a personal or professional interest that conflicts with the person's objectivity in the hearing." 20 U.S.C. §1415(f)(3)(A)(i).

35.    In addition, a special education due process hearing officer "shall, at a minimum possess knowledge of, and the ability to understand, the provisions of this chapter, Federal and State regulations pertaining to this chapter, and legal interpretations of this chapter by Federal and State courts; possess the knowledge and ability to conduct hearings in accordance with appropriate, standard legal practice; and possess the knowledge and ability to render and write decisions in accordance with appropriate, standard legal practice." 20 U.S.C. §§1415(f)(3)(A)(ii) – (iv).

36.    Violations of the Procedural Safeguards rise to the level of a denial of FAPE if the violations: "(1) impeded the child's right to a FAPE; (2) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of FAPE to the child; or (3) caused a deprivation of educational benefits." *G.N. ex rel. J.N. v. Bd. of Educ.*, 309 Fed.Appx. 542, 545-546 (3rd Cir. 2009).

## ABOUT NJDOE

37.    States can receive federal funding for special education "if the State submits a plan that provides assurances to the [U.S. Secretary of Education] that the State has in effect policies and procedures to ensure that the State meets each of

the following conditions:  Free Appropriate Public Education ("FAPE") is available to all children with disabilities residing in the State between the ages of 3 and 21 . . . Children with disabilities and their parents are afforded the procedural safeguards required by section 1415 of this title" among other rights.  20 U.S.C. §1412(a)(6)(A) (emphasis added.)

38.    "Any State educational agency, State agency, or local educational agency that receives assistance under this subchapter shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies."  20 U.S.C. §1415(a) (emphasis added.)

39.    NJDOE has submitted a plan to the United States Secretary of Education ensuring that it has procedural safeguards in place for children with disabilities in the State of New Jersey.

40.    NJDOE receives federal funds pursuant to IDEA, 20 U.S.C. §1412, and therefore must comply with the statute's provisions.

41.    As SEA, NJDOE is mandated to ensure that all LEAs, including MTBOE, comply with the requirements of IDEA.  20 U.S.C. §1412(a)(11)(A).

42.    Congress abrogated state sovereign immunity "from suit in Federal court for a violation of [IDEA]."  20 U.S.C. §1403(a).

43.    "In a suit against a State for a violation of [IDEA], remedies (including remedies both at law and in equity) are available for such a violation to the same extent as those remedies are available for such a violation in the suit against any public entity other than a State." 20 U.S.C. §1403(b).

## NEW JERSEY SYSTEM OF SPECIAL EDUCATION DISPUTES

44.    In New Jersey, a special education DP Complaint is initiated when a person files a written "request for due process hearing" with NJDOE Office of Special Education Programs ("OSEP"). N.J.A.C. §6A:14-2.7(c).

45.    "The written request shall include the student's name, student's address, the student's date of birth, the name of the school the student is attending and shall state the specific issues in dispute, relevant facts and the relief sought and, in the case of a homeless child, available contact information for the child and the name of the school the child is attending." N.J.A.C. §6A:14-2.7(c).

46.    The MTBOE named in the DP Complaint must be given notice of the request by the filing party. N.J.A.C. §6A:14-2.7(c).

47.    "When the Office of Special Education Programs receives a request for a due process hearing, the matter shall be processed and, as appropriate, mediation and a due process hearing in accordance with these rules will be made available to the parties." N.J.A.C. §6A:14-2.7(g).

48.    The MTBOE may file a sufficiency challenge that the DP Complaint does not meet the requirements of IDEA, which shall be decided by the OAL. N.J.A.C. §6A:14-2.7(f).

49.    If the DP Complaint "is determined sufficient, the timelines for resolution activities and for conducting a due process hearing will continue." N.J.A.C. §6A:14-2.7(f)(2).

50.    From the filing date of the DP Complaint, the parties have a 30-day period to try to resolve the dispute through mediation or a resolution meeting. N.J.A.C. §§6A:14-2.6(d)(3) and 2.7(h).[2]

51.    If the DP Complaint is not resolved within 30 days, NJDOE transmits the case to OAL.  N.J.A.C. §6A:14-2.7(h)(4).[3]

52.    Discovery in special education cases is intended to be an informal process.  N.J.A.C. §1:6A-10.1(d) ("Discovery shall, to the greatest extent possible, consist of the informal exchange of questions and answers and other information. Discovery may not include requests for formal interrogatories, formal admissions or depositions"; emphasis added.)

53.    "All discovery shall be completed no later than five business days before the date of the hearing.  Each party shall disclose to the other party any

---

[2] The timelines for an expedited DP Complaint are shorter.

[3] *See* preceding fn.

<u>documentary evidence and summaries of testimony intended to be introduced at</u> <u>the hearing.</u>" N.J.A.C. §1:6A-10.1 (emphasis added.)

54.    Once the case is transmitted to OAL, "A final decision shall be rendered by the administrative law judge <u>not later than 45 calendar days after the</u> <u>conclusion of the resolution period</u> . . . unless specific adjournments are granted by the administrative law judge in response to requests by either party to the dispute." N.J.A.C. §6A:14-2.7(j).

55.    "The decision made by an administrative law judge in a due process hearing shall be made on substantive grounds based on a determination of whether the child received a free, appropriate public education (FAPE)."  N.J.A.C. §6A:14-2.7(k).

56.    If a DP Complaint alleges procedural violations, the ALJ may find a denial of FAPE only if the violations: "(1) impeded the child's right to a FAPE; (2) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of FAPE to the child; or (3) caused a deprivation of educational benefits." N.J.A.C. §6A:14-2.7(k).

57.    Thus, NJDOE's system of resolving special education disputes relies upon a timely decision by an OAL ALJ.

## ABOUT THE OAL

58.    OAL "was established in 1979 to create a central independent agency

to conduct administrative hearings, thus promoting due process, expediting the just

conclusion of contested cases, and improving the quality of administrative justice."

(From the OAL website as of May 3, 2018.)

59.    "OAL is an Executive Branch agency."  (From the OAL website as of

May 3, 2018.)

60.    "OAL employs a corps of administrative law judges ('ALJ') who hear

contested cases for state agencies and issue initial decisions."  (From the OAL

website as of May 3, 2018.)

61.    NJDOE has designated OAL as the agency to conduct the

administrative hearing for special education disputes.  N.J.A.C. §6A:14-2.7.

62.    OAL hears cases for most state agencies, including special education

Due Process cases for the NJDOE.  Thus, OAL has a substantial docket covering

most of the New Jersey executive branch agencies.  OAL is not dedicated solely to

handling cases arising under IDEA, §504, the ADA, or other similar statutes which

provide legal rights to children with disabilities and their families.

63.    "[T]he OAL is part of the executive, not the judicial, branch and the

OAL is not a "court' within the intent of . . . the IDEA. ALJs are executive branch

judges."  *D.T. o/b/o L.T. v. Willingboro Township Board of Education, et al.*, OAL

Dkt. Nos. EDS9218-14, EDS9219-14, EDS11302-14, EDS12445-14 (ALJ Robert Bingham II Decision Oct. 27, 2014).

64.    It is OAL's express position that ALJs do not have jurisdiction to hear claims beyond IDEA or reward relief beyond compensatory education in special education cases.

## CLASS ALLEGATIONS

65.    The J.A. Family brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all persons who filed Requests for Due Process Hearings ("DP Complaints") for violations of special education laws with the NJDOE during the period January 1, 2011 through March 23, 2018 and who, after the case was transferred to the OAL, did not receive a decision within 45 days (the "Class"). Excluded from the class is any person who requested one or more adjournments that exceeded 60 days.

66.    The Class consists of more than two hundred (200) persons located throughout the State of New Jersey, thus, the members of the Class are so numerous and geographically separated that joinder of all Class members is impracticable. Upon information and belief, the number of Class members is approximately two hundred fifty (250), but further discovery is necessary to determine the exact number.

67.    In 2016, the New Jersey Special Education Practitioners ("NJSEP")[4] created a task force to study the State of New Jersey's compliance with the 45 Day Rule.  The study was extensive and reviewed NJDOE's own statistics on special education cases and their timelines.  The final report was submitted to New Jersey Governor Phil Murphy with copies to Defendant Repollet; ALJ Lisa James-Beavers, Acting OAL Director and Chief ALJ; and, John Worthington, Director of OSEP; among others, on March 21, 2018 ("45 Day Report").

68.    The NJSEP 45 Day Report found that, despite the federal and state law requirements that special education cases brought pursuant to IDEA should be decided within 45 days after the 30-day resolution period, on average such cases took three hundred twelve (312) days[5] to be adjudicated.

69.    The 45 Day Report found New Jersey was noncompliant dating back to 2011.  NJSEP called upon those with authority, Governor Murphy, the NJDOE, and the OAL, to take immediate action to rectify noncompliance.

70.    Upon information and belief, no such steps to remedy noncompliance have been taken to date.

---

[4] NJSEP consists of more than one hundred (100) attorneys and professional advocates in the State of New Jersey who represent exclusively children with disabilities and their parents in special education disputes.

[5] This number reflects cases that did not seek emergent relief or were not filed as expedited due process matters.

71.     Because of the systemic delay in resolving special education disputes and New Jersey's noncompliance with federal law, there is great harm to children with disabilities and their families because they are being denied a Free Appropriate Public Education ("FAPE"), to which they are entitled, for long periods of time and made to suffer with inadequate IEPs, services, and therapies. This is a great harm to Plaintiffs and to the education system in the State of New Jersey as a whole.

72.     The J.A. Family will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in special education litigation.  Named Plaintiffs' damages are similar, if not identical, in nature to the members of the Class and have no interests that are adverse or antagonistic to those of the Class.

73.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Because the damages are not easily calculable because they involve the deprivation of a Free Appropriate Public Education ("FAPE"), the expense and burden of multiple individual litigations make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged herein on their own.

74.    Common questions of law and fact exist as to all members of the Class and predominate over any questions particular to any single member of the Class.  Among the questions of law and fact common to the Class are:

a.  Whether Defendants violated and continue to violate various federal and state laws and regulations by their acts and omissions and by establishing a flawed system for resolving special education disputes in the State of New Jersey;

b.  Whether Defendants breached their duties and the procedural safeguards owed to Plaintiffs;

c.  Whether Plaintiffs and the members of the Class have been denied a FAPE proximately caused by Defendants' acts and omissions and violations of laws and regulations; and

d.  Whether there are damages and adequate remedies at law for Plaintiffs.

75.    Plaintiffs envision no difficulty in the management of this litigation as a Class Action.

## FACTUAL BACKGROUND – J.A. FAMILY

76.    At the time when the original Request for Due Process Hearing was filed on May 24, 2017, J.A. was a 3rd grade student[6] in a co-teach setting at Oak Knoll Elementary School ("Oak Knoll") in the MTBOE school district.  She had been in a similar setting in the preceding school year (2015-2016).

77.    An Individualized Education Program ("IEP) under IDEA was in place for J.A. dated May 3, 2016 ("5/3/16 IEP") with a projected implementation date of September 8, 2016 and a projected end date of June 21, 2017.

78.    The 5/3/16 IEP indicated J.A.'s areas of weakness in academics as monotone reading, reading through punctuation resulting in slower comprehension, considerable difficulties with inferencing, struggling with finding text evidence to support verbal and written answers, difficulties in writing, problems formulating ideas that are on unfamiliar topic, and difficulties with connecting ideas from one paragraph to another.

79.    Twenty-seven (27) goals and objectives were designed during the annual review for the 5/3/16 IEP to address J.A.'s areas of need, considering teacher assessments and observations, parent feedback, and J.A.'s work product.

---

[6] J.A. is now in 4th grade and is about to be sent to 5th grade by MTBOE.

80.    The 5/3/16 IEP was amended on November 14, 2016 after the 2016-17 school year commenced to address virtually the same issues.  Thus, an IEP was developed dated November 14, 2016 ("11/14/16 IEP") with a projected implementation date of November 15, 2016 and a projected end date of June 21, 2017.

81.    The 11/14/16 IEP contained essentially the same services and goals as the 5/3/16 IEP, except there is one less goal (26) and there is a reduction in Occupational Therapy Consultation from 27 x Yearly 15 min. to 12 x Yearly 15 min.

82.    During the 2016-17 school year, J.A.'s parents became increasingly suspicious of MTBOE's progress reports, which indicated that J.A. was making progress on all 26 goals in 3rd grade, and the absence of any mentioned difficulties J.A. may have been experiencing in school because J.A. was exhibiting notable difficulties at home.  As a result, J.A.'s parents inquired of MTBOE about how J.A.'s progress was being assessed and requested to see data to support the alleged progress.

83.    In addition, since the services were listed as "Yearly" instead of "Hourly per week", they have been provided sporadically and inconsistently to J.A. and it has negatively affected her educational opportunities.

84.    The change of services provision from "Hourly per week" to "Yearly" seems to be systemic for MTBOE and has caused a disruption in therapies for J.A. as well as many other students with disabilities within MTBOE's jurisdiction and is a violation of IDEA.

85.    As a critical member of the IEP team, J.A.'s mother requested to see data on progress towards the IEP goals.  Specifically, in an email dated April 18, 2017, J.A.'s mother requested of members of the Child Study Team "raw data collected this year for all the classroom IEP goals" to determine how progress is being measured and to receive that data prior to the anticipated May 2017 IEP annual review so that next year's goals could be set appropriately.

86.    In response to the April 18, 2017 email, MTBOE provided only grades routinely assigned to the classwork of all students, rather than specific data about J.A.'s goals.  J.A.'s mother inquired how this data correlated to the specific goals in the 11/14/16 IEP.

87.    J.A.'s mother made a follow up request for data, but it was ignored and the annual IEP review proceeded on May 9, 2017.  In an email dated May 5, 2017, J.A.'s mother expressed concern that there is no correlation of the data to the IEP goals and until such information was provided, it would be difficult and likely take multiple IEP meetings to develop new goals for J.A.

88.    On numerous occasions, J.A.'s mother requested to observe J.A. in the classroom environment.  Such requests have been increasingly denied by MTBOE.

89.    In addition, MTBOE has advised J.A.'s mother that she may only communicate through the school principal and not directly to the teachers regarding J.A.'s education and progress towards IEP goals.

90.    MTBOE's Child Study Team ("CST"), after brief consultation with John Lee Bersh, Supervisor of Special Services ("Bersh"), finalized the May 9, 2017 IEP ("5/9/17 IEP") without discussion of classroom goals and notified J.A.'s mother that she had the right to file for due process within 15 days.

91.    On May 11, 2017, Bersh wrote a letter to J.A.'s parents indicating that he was familiar with the email communications between J.A.'s parents and the teachers.  He stated that J.A.'s parents' inquiries regarding how data correlated to J.A.'s IEP goals "could be construed/perceived as a retaliatory measure for the teachers having been called earlier this year to testify regarding Julia's academic performance that was current at the time of that proceeding."

92.    Bersh continued in his May 11, 2017 letter stating, "the appearance of [J.A.'s parents] acting as pro-se attorney in the matter of questioning of staff will lead to the addition in such meetings of our solicitor."

93.    Bersh's comments are veiled threats to intimidate J.A.'s parents from asserting their legal rights under the special education laws.

94.    The 5/9/17 IEP made significant reductions in services and goals from the 11/14/16 IEP as follows:

| Services / Goals | 11/14/16 IEP | 5/9/17 IEP |
|---|---|---|
| Speech Language Therapy | 45x Yearly 30 min. | 27x Yearly 30 min. |
| Occupational Therapy | 12x Yearly 15 min. | 10x Yearly 15 min. |
| Goals | 26 | 9 |

95.    There is no data or recent evaluation that supports the reduction of services and goals in J.A.'s IEPs.  Indeed, despite repeated requests for such data supporting the changes, MTBOE has failed and refused to provide the data to J.A.'s parents.

96.    The J.A. Family disagree with MTBOE's reduction of speech and language therapy services in the 5/9/17 IEP as such reduction decreased or prevented the opportunity for speech therapy to address J.A.'s Auditory Processing Disorder and related issues, such as increased intolerance to background noise and consequently anxiety.  Prolonged use of the squeeze machine therapy is having an adverse and negative effect.

97.    Absent such data, it is impossible to accurately assess J.A.'s present levels of academic achievement and functional performance.

98.    Failure to provide such data to J.A.'s parents is effectively blocking them from full parental participation in the IEP development process.

99.    The CST failed to transfer many of the goals from the 11/14/16 IEP to the 5/9/17 IEP asserting that J.A. had achieved those goals, yet the most recent Progress Report for IEP Goals and Objectives indicates that only goals/objectives nos. 1, 1.3, 8, and 8.1 had been achieved.

100.   As a result, J.A. was given only three (3) purely academic classroom goals and only one additional goal that might be construed as a current classroom goal.

101.   The observations of J.A.'s parents in the home do not reflect that J.A. has achieved the goals as reflected in the 5/9/17 IEP.

## PROCEDURAL BACKGROUND– J.A. FAMILY

102.   On May 24, 2017, the J.A. Family filed a Request for Due Process Hearing *pro se* with the NJDOE OSEP ("Due Process Complaint").

103.   Mediation was conducted on June 19, 2017.

104.   The 30-day resolution period ended on June 23, 2017 (the "end of the resolution period").

105.   A prehearing conference was held before ALJ Wilson on September 27, 2017, ninety six (96) days after the end of the resolution period.

106.   On October 3, 2017, ALJ Wilson issued a Prehearing Order with the scheduling of this matter, setting the Due Process Hearing for January 8, 2018.[7]

107.   At some point during this period, the J.A. Family realized that 'stay put' was not being honored by MTBOE and considered hiring counsel to rectify this issue to enforce 'stay put'.  Failure for MTBOE to honor stay put without formal action, e.g. a motion, is contrary to the law in this Circuit under *M.R. v. Ridley School Dist.*, 744 F. 3d 112, 117 (3rd Cir. 2014) *cert. denied*, No. 13-1547, 2015 WL 2340858 (S.Ct. May 18, 2015), *citing Drinker by Drinker v. Colonial School Dist.*, 78 F. 3d 859, 864 (3rd Cir. 1996) ("IDEA's 'stay-put rule,' serves 'in essence, as an automatic preliminary injunction.'")

108.   Shortly thereafter, the J.A. Family hired undersigned attorney because they knew they could not proceed further in the Administrative Case without the assistance of counsel.

109.   On November 17, 2017, J.A. Family's counsel filed an Appearance, Motion to Amend the Due Process Complaint ("Motion to Amend"), and a Motion to Enforce Stay Put and For Sanctions ("Motion for Stay Put") in the Administrative Case.

---

[7] Had the trial gone forward on January 8, 2018, it would have been one hundred ninety nine (199) days after the end of the resolution period.  However, the trial did not go forward on that date.

110.    Because of the entry of counsel for the J.A. Family and the filed motions, ALJ Wilson convened a telephone status conference on December 20, 2017, one hundred eighty (180) days after the end of the resolution period.

111.    During the December 20, 2017 status conference, ALJ Wilson set a lengthy briefing schedule on these two simple motions, allowing MTBOE until January 8, 2018 to file opposition to the motions and the J.A. Family until February 15, 2018 to file replies.  February 15, 2018 is two hundred forty (240) days from the end of the resolution period.  In addition, counsel for the J.A. Family notified ALJ Wilson during the conference that they intended to file a Motion for Independent Educational Evaluations ("Motion for IEEs") as permitted under IDEA and N.J.A.C.  ALJ Wilson set a briefing schedule on the Motion for IEEs as follows: file the motion on or before January 8, 2018; MTBOE's opposition filed by February 12, 2018; and reply due on March 12, 2018, two hundred sixty two (262) days from the end of the resolution period.  ALJ Wilson set the next telephone status conference call for March 27, 2018, two hundred seventy seven (277) days from the end of the resolution period.

112.    On February 15, 2018, the J.A. Family filed a Motion to Strike and Sanctions for MTBOE's references to a prior, irrelevant due process case ("Motion to Strike").

113.    During the March 27, 2018 status conference, ALJ Wilson acknowledged that there were four motions pending, three of which were fully briefed.  ALJ Wilson indicated that he would be shortly deciding the Motion to Amend the Due Process complaint on the papers and would postpone all of the other motions until a later conference call.  ALJ Wilson allowed MTBOE two weeks to file opposition to the Motion to Strike.

114.    MTBOE never filed an opposition to the Motion to Strike.

115.    On May 1, 2018, the J.A. Family, by and through counsel, inquired of ALJ Wilson the status of the pending motions and reminding him of the federal IDEA 45 Day Rule.

116.    On the same date and apparently out of spite, ALJ Wilson issued an Order denying the Motion to Amend, denying the Motion for IEEs, denying the Motion to Strike, and only partially granting the Motion for Stay put.  May 1, 2018 is three hundred twelve (312) days from the end of the resolution period.

117.    The next telephone status conference in the Administrative Case is set for June 11, 2018, three hundred fifty three (353) days from the end of the resolution period.

## COUNT ONE – CLASS ACTION – SYSTEMIC VIOLATION OF THE 45 DAY RULE AS A DENIAL OF FAPE
**[Defendants NJDOE, Repollet, OAL, and ALJ Wilson]**

118.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

119.    Upon information and belief, NJDOE, as SEA, receives federal funding and therefore owes J.A. and all other children with disabilities in the State of New Jersey a FAPE.

120.    As described at length above, NJDOE has failed to comply with the procedural requirements of the IDEA.

121.    NJDOE has failed to ensure that procedural requirements guaranteeing parents the opportunity to present a due process complaint and have prompt resolution of the dispute within the statutory time frame are available.

122.    NJDOE's systemic design flaw by using the OAL as the adjudicative body to resolve special education disputes has resulted in a denial of FAPE to children with disabilities and their families in the State of New Jersey.

123.    By selecting OAL as the body to handle special education disputes in the State of New Jersey and knowing that the OAL had a limited number of ALJs, the ALJs had little or no training in special education law, and did not have the jurisdiction to award all forms of relief under special education laws, NJDOE knew

or should have known that its system for resolving special education disputes was flawed *ab initio*.

124.    By selecting OAL as the body to handle special education disputes in the State of New Jersey and knowing that the OAL had full dockets handling other matters, NJDOE knew or should have known that the OAL could never comply with the 45 Day Rule.

125.    NJDOEs violations are exacerbated by the 'Stay Put' Rule.  The delay in resolving these cases causes Plaintiffs to remain with a 'stay put' IEP for an excessive period, almost always beyond the intended expiration period of that IEP and with services and special education that is no longer appropriately designed for the child.

126.    This harm is aggravated further if Plaintiffs need appeal the administrative case to a court, which already has built in delays due to the jurisdiction of judicial branch courts.

127.    The J.A. Family's case stands as an example of this violation in that their Administrative Case is still pending and will not even have another status date before ALJ Wilson until June 11, 2018, <u>three hundred eighty three (383) days from the end of the resolution period</u>.

128.   When the J.A. Family's special education dispute was filed, J.A. had almost completed third (3rd) grade.  J.A. will be going into fifth (5th) grade in the Fall with a stay put IEP from November 2016 at the beginning of third (3rd) grade.

129.   NJDOE has systemically violated the 45 Day Rule since at least 2011.

130.   As a result, NJDOE has failed to establish a system guaranteeing a FAPE to children with disabilities in the State of New Jersey and has thereby violated the basis tenets of IDEA and other special education and anti-discrimination laws.

131.   Based on the foregoing, the statutory legal rights of children with disabilities and their families in the State of New Jersey were violated under the IDEA, the federal regulations promulgated thereunder, and other special education laws.

132.   NJDOE's actions have caused Plaintiffs damages.  Specifically, Plaintiffs have been denied a FAPE for every day that a case has exceeded the 45 Day Rule.  Plaintiffs are entitled to all appropriate relief as a result of this harm.

133.   NJDOE must immediately rectify its flawed system and provide relief to all Class members for the harm caused by the delay in their special education cases.

WHEREFORE, Plaintiffs J.A. and J.A., individually and on behalf of their minor child J.A., and on behalf of all Class members, respectfully demand relief as follows:

A.    A trust fund of Four Hundred Fifty Million Dollars ($450,000,000.00) to provide educational services to all Class Members for the denial of FAPE for each day their respective cases exceeded the 45 Day Rule;

B.    NJDOE must develop a new system for handling special education disputes and transition those cases away from the OAL in the shortest time reasonable, preferably in less than six (6) months;

C.    An award of attorneys' fees and costs for Class Plaintiffs; and

D.    For such other and further relief as the Court deems equitable and just.

**COUNT TWO – CLASS ACTION – SYSTEMIC VIOLATION OF HEARING OFFICER QUALIFICATIONS
[Defendants NJDOE, Repollet, OAL, and ALJ Wilson]**

134.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

135.    As described at length above, NJDOE has failed to comply with the procedural requirements of the IDEA.

136.    NJDOE has failed to ensure that procedural requirements guaranteeing parents the opportunity to present a due process complaint and have prompt resolution of the dispute within the statutory time frame are available.

137.    NJDOE's systemic design flaw by using the OAL as the adjudicative body to resolve special education disputes has resulted in a denial of FAPE to children with disabilities and their families in the State of New Jersey.

138.    By selecting OAL as the body to handle special education disputes in the State of New Jersey and knowing that the OAL had a limited number of ALJs, the ALJs had little or no training in special education law, and did not have the jurisdiction to award all forms of relief under special education laws, NJDOE knew or should have known that its system for resolving special education disputes was flawed *ab initio*.

139.    Although not technically employees of the NJDOE, ALJs are employees of the OAL, an executive branch agency like the NJDOE.  Since the budget and salaries of NJDOE and OAL employees are subparts of and determined by the larger budget of the executive branch, they are beholden to the same pot of money.  This creates a personal and/or professional interest that conflicts with the ALJ's objectivity in a special education due process hearing.

140.    Upon information and belief, most of the ALJs assigned to special education cases by the OAL in New Jersey do not have special training in nor possess knowledge of the provisions of IDEA.  Further, by its own admission, the OAL, as an executive branch agency instead of a judicial branch court, does not

have jurisdiction to make legal interpretations of or conduct hearings in special education cases in accordance with standard legal practice.

141.    As a result, Plaintiffs are harmed by this lack of expertise in special education law and limited jurisdiction.  By way of example, the J.A. Family was harmed because ALJ Wilson did not understand the exhaustion rules as expressed in *Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 752-758 (2017) and *Batchelor v. Rose Tree Media School Dist.*, 759 F. 3d 266 (3rd Cir. 2014); did not understand the Motion for IEEs filed by the J.A. Family; and did not understand the Motion to Strike filed to prohibit the improper application of the *res judicata* doctrine in special education cases.

142.    Another example is that while IDEA awards reimbursement of attorney's fees and costs to parents who are prevailing parties in special education cases, "the OAL does not have jurisdiction to award attorney's fees. . . [T]he OAL is part of the executive, not the judicial, branch and the OAL is not a 'court' within the intent of the above-cited section of the IDEA. ALJs are executive branch judges.  Consequently, ALJs do not have authority to grant claims for attorney's fees in Special Education cases. . . . Moreover, the OAL does not have jurisdiction to determine who is a prevailing party, for purposes of a party's intent to seek attorney's fees later in a Federal District Court."  *D.T. o/b/o L.T. v. Willingboro*

*Township Board of Education, et al.*, OAL Dkt. Nos. EDS9218-14, EDS9219-14, EDS11302-14, EDS12445-14 (Decision Oct. 27, 2014).

143.    The OAL's self-limited jurisdiction harms Plaintiffs because, even if they win a Due Process hearing, they must seek reimbursement of those fees and costs in a separate judicial proceeding.  This causes a chilling effect on settlement of special education cases where parents have hired counsel because school districts have no incentive to include fees and costs in a settlement.  Because parents must exhaust their administrative remedies before going to court, they must wait until the Due Process case is concluded before seeking reimbursement of those costs and fees.  This problem is compounded by the violation of the 45 Day Rule discussed above and harms Plaintiffs who must wait one year or more, not only for relief for their child with a disability, but to get their fees reimbursed. These Plaintiffs often lack the financial resources to litigate cases for a year or more, whereas school districts and the NJDOE do have such resources.

144.    Because ALJs lack training, knowledge, and jurisdiction, NJDOE's system of assigning special education disputes to the OAL is flawed and broken.

145.    NJDOE's systemic violations of IDEA have caused Plaintiffs damages.  Specifically, Plaintiffs have been denied a FAPE for every case sent to the OAL, which does not meet the statutory qualifications for hearing officers. Plaintiffs are entitled to all appropriate relief as a result of this harm.

146.    NJDOE must immediately rectify its flawed system and provide relief to all Class members for the harm caused by the delay in their special education cases.

WHEREFORE, Plaintiffs J.A. and J.A., individually and on behalf of their minor child J.A., and on behalf of all Class members, respectfully demand relief as follows:

A.    A trust fund of Seven Hundred Million Dollars ($700,000,000.00) to reimburse Class Members for the denial of FAPE because of NJDOE's flawed system of the OAL using ALJs who do not meet statutory qualifications;

B.    NJDOE must develop a new system for handling special education disputes and transition those cases away from the OAL in the shortest time reasonable, preferably in less than six (6) months;

C.    An award of attorneys' fees and costs for Class Plaintiffs; and

D.    For such other and further relief as the Court deems equitable and just.

**COUNT THREE – CLASS ACTION – DECLARATORY JUDGMENT**
**[Defendants NJDOE, Repollet, OAL, and ALJ Wilson]**

147.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

148.    The Federal Declaratory Judgment Act provides that "In a case of actual controversy within its jurisdiction, [exceptions omitted as inapplicable], any

court of the United States, upon the filing of an appropriate pleading, may declare

the rights and other legal relations of any interested party seeking such declaration,

whether or not further relief is or could be sought. Any such declaration shall have

the force and effect of a final judgment or decree and shall be reviewable as such."

28 U.S.C. §2201(a).

149.    There is an actual and justiciable controversy between the Class and

Defendants NJDOE, Repollet, OAL, and ALJ Wilson in that said Defendants are

not compelled to comply with either IDEA's or New Jersey's timeline for

resolving special education disputes.

150.    Defendants have been provided data regarding the violations of

aspects of IDEA and New Jersey law and have been asked to repair the system by

NJSEP.  To date, Defendants have taken no action to repair the system and it

remains broken.

151.    Defendants know or should know that ALJs are handling special

education cases despite a serious conflict of interest as fellow employees of the

executive branch of the New Jersey Government as NJDOE, where their

paychecks come from the same source.

152.    Defendants know or should know that ALJs are handling special

education cases without "knowledge of, and the ability to understand, the

provisions of [IDEA], Federal and State regulations pertaining to [IDEA], and

legal interpretations of [IDEA] by Federal and State courts; possess the knowledge and ability to conduct hearings in accordance with appropriate, standard legal practice" to comply with IDEA's timelines and without special training in these cases.

153.   As a result and because of the exhaustion rules set forth in *Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 752-758 (2017) and *Batchelor v. Rose Tree Media School Dist.*, 759 F. 3d 266 (3rd Cir. 2014), Plaintiffs must linger for extended periods of time in administrative cases before having the opportunity to appeal such cases.

154.   As a result, parents and their children with disabilities are being denied the procedural safeguards under IDEA to enforce that federal statute.

155.   As a result and because of the 'stay put' rule, Plaintiffs are being harmed because children with disabilities are having to remain with outdated and inappropriate IEPs, not being provided with timely educational services, obtaining inconsistent and erroneous results in special education disputes without timely review or oversight by NJDOE or a judicial branch court, and thereby are being denied FAPE in the State of New Jersey.

WHEREFORE, Plaintiffs J.A. and J.A., individually and on behalf of their minor child J.A., and on behalf of all Class members, respectfully demand relief as follows:

A.    Declaration that J.A.'s Administrative Case at the administrative level has denied J.A. a FAPE and is entitled to immediate appeal to this Court;

B.    Declaration that any class member's case that is currently pending and has violated the 45 Day Rule is immediately appealable to a federal or state court of that member's choosing;

C.    Declaration that NJDOE"s system for resolving special education disputes in the State of New Jersey violates IDEA and is systemically violating the rights of all class members;

D.    Declaration that NJDOE has six (6) months to develop a new system for handling special education disputes and transition those cases away from the OAL in the shortest time reasonable;

E.    Declaration that NJDOE shall establish an education trust fund of Seven Hundred Million Dollars ($700,000,000.00) to reimburse Class Members for the denial of FAPE because of NJDOE's flawed system of the OAL using ALJs who do not meet statutory qualifications;

F.    An award of attorneys' fees and costs for Class Plaintiffs; and

D.    For such other and further relief as the Court deems equitable and just.

## COUNT FOUR – CLASS ACTION –VIOLATION OF PLAINTIFFS' RIGHTS UNDER 42 U.S.C. §1983
**[Defendants NJDOE, Repollet, OAL, and ALJ Wilson]**

156.   Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

157.   Congress intended that IDEA rights be enforceable under 42 U.S.C. §1983.

158.   Any person, including without limitation a school district, school board of education, local educational agency, state educational agency, and/or arm of the state government, who subjects or causes to be subjected a U.S. citizen to the deprivation of that citizen's Constitutional rights and/or privileges shall be liable to such citizen in an action at law, suit in equity, or other proceeding for redress. 42 U.S.C. §1983.

159.   Plaintiffs have a cause of action under §1983 if a school district, school board of education, local educational agency, state educational agency, and/or arm of the state government has a policy or custom that caused the violation of The J.A. Family' constitutional rights, *Monell v. Department of Social Services*, 436 U.S. 658 (1978), or, under the state-created danger theory.  *See Sanford v. Stiles,* 456 F. 3d 298 (3d Cir. 2006); *Kneipp v. Tedder,* 95 F. 3d 1199 (3d Cir. 1996).

160.   Defendants NJDOE, Repollet, OAL, and ALJ Wilson were acting within the course and scope of their employment and/or under the color of state law at all material times.

161.   Defendants NJDOE, Repollet, OAL, and ALJ Wilson have denied Plaintiffs their right to due process of law.

162.   Defendants NJDOE, Repollet, OAL, and ALJ Wilson have denied Plaintiffs their right to a determination of their special education claims against school districts and/or local education agencies by failing to issue timely decisions.

163.   Defendants NJDOE, Repollet, OAL, and ALJ Wilson have denied Plaintiffs their right to a determination of their special education claims against school districts and/or local education agencies by delaying and/or preventing them from seeking a timely judicial review of decisions.

164.   Defendants NJDOE, Repollet, OAL, and ALJ Wilson have denied Plaintiffs their right to timely judicial review of decisions by ALJs in the State of New Jersey.

165.   Defendants NJDOE, Repollet, OAL, and ALJ Wilson violated Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by actions, including but not limited to, depriving Plaintiffs equal protection under the law on the basis of disability.

166.    Defendants NJDOE, Repollet, OAL, and ALJ Wilson violated Plaintiffs' rights under the Fourth Amendment to the United States Constitution by actions, including but not limited to, acting with deliberate indifference to the risk of harm to Plaintiffs by delaying and/or failing to timely address special education problems in school districts and leaving children with disabilities in inappropriate IEPs and/or harmful school environments.

167.    Defendants NJDOE, Repollet, OAL, and ALJ Wilson violated Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution by actions, including but not limited to creating a flawed system for resolving special education disputes in the State of New Jersey; selecting the OAL as the adjudicative body for special education disputes knowing that the OAL already had an overloaded docket and could not timely issue decisions in these case; allowing the unreasonable delay in special education cases to continue without efforts to rectify the problem; and, because of the 'exhaustion rule', failing to provide Plaintiffs a proper forum to resolve special education disputes in compliance with federal law.

168.    The failure to issue timely decisions has harmed Plaintiffs.

169.    Defendants NJDOE, Repollet, OAL, and ALJ Wilson knew or should have known that they were denying Plaintiffs their rights in violation of statutory law.

170.   Defendants NJDOE, Repollet, OAL, and ALJ Wilson knew or should have known that they were denying Plaintiffs due process of law.

171.   Defendants NJDOE, Repollet, OAL, and ALJ Wilson knew or should have known that they were impeding, impairing, prejudicing, and/or violating Plaintiffs' constitutional rights to have a proper forum in which to enforce federal statutory law.

172.   Defendants NJDOE, Repollet, OAL, and ALJ Wilson acted intentionally, wantonly, and/or with deliberate indifference to Plaintiffs' clearly established constitutional rights.

173.   Plaintiffs are harmed because so much time has passed while the school districts and/or LEAs continue to deny FAPE and the special education disputes are not timely resolved.

174.   Plaintiffs are harmed because so much time has passed while their children with disabilities remain in 'stay put' IEPs which are no longer appropriate or applicable because the child has progressed in school grades.

175.   Plaintiffs are harmed because so much time has passed while their children with disabilities are being denied FAPE.

176.   Plaintiffs are harmed because the education system for children with disabilities has broken down in the State of New Jersey.

177.   Plaintiffs are harmed because school districts, LEAs, and their counsel know that they can outlast the cost and delays in litigating special education disputes due to the OAL's inability to timely address the issues and lacks jurisdiction to resolve the entire conflict.

178.   Plaintiffs have exhausted their administrative remedies as required by IDEA because further pursuit in the OAL would be futile and inadequate.

WHEREFORE, Plaintiffs J.A. and J.A., individually and on behalf of their minor child J.A., and on behalf of all Class members, respectfully demand relief as follows:

A.   Issue preliminary injunctive relief requiring Defendants NJDOE and Repollet to create a new system for resolving special education disputes in the State of New Jersey in six (6) months or less;

B.   Issue preliminary injunctive relief requiring Defendants OAL and ALJ Wilson to conduct hearings and issue decisions in all pending special education cases within ten (10) days or otherwise allow Plaintiffs to immediately file actions in federal court seeking relief;

C.   A trust fund of Seven Hundred Million Dollars ($700,000,000.00) to reimburse Class Members for the denial of FAPE because of NJDOE's flawed system of the OAL using ALJs who do not meet statutory qualifications;

D. NJDOE must develop a new system for handling special education disputes and transition those cases away from the OAL in the shortest time reasonable, preferably in less than six (6) months;

E. An award of punitive damages in the amount of Two Billion One Hundred Million Dollars ($2,100,000,000.00) to Plaintiffs;

F. An award of attorneys' fees and costs for Class Plaintiffs; and

D. For such other and further relief as the Court deems equitable and just.

## COUNT FIVE – APPEAL PURSUANT TO 20 U.S.C. §1415(i)
**[Defendants MTBOE, ALJ Wilson – Motion to Amend DP Complaint]**

179. Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

180. ALJ Wilson denied the J.A Family's Motion to Amend the Complaint on the basis that it "constitutes a significant expansion of the original Request for a Due Process Hearing and does not serve in the best interest of efficiency and expediency" because the proposed Amended DP Complaint added causes of action under §504, the Every Student Succeeds Act, the ADA, and the New Jersey Law Against Discrimination, but had the same set of core facts.

181. The J.A. Family proposed these additional causes of action because they are required to exhaust administrative remedies under *Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 752-758 (2017) and *Batchelor v. Rose Tree Media School Dist.*, 759 F. 3d 266 (3rd Cir. 2014).

182.   Prior to filing the Motion to Amend the DP Complaint, the J.A.

Family was acting *pro se*.

183.   When the J.A. Family hired undersigned counsel, the motion was filed

to preserve these claims and not waive them should the case need to be appealed.

184.   Motions to amend complaints are to be granted liberally.  *See, e.g.,*

N.J.R. 4:9-1; *Kernan v. One Washington Park*, 713 A. 2d 411, 456 (NJ 1998);

Fed.R.Civ.P. 15; *In re Burlington Coat Factory Securities Litigation*, 114 F. 3d

1410, 1434 (3rd Cir. 1997).

185.   Thus, ALJ Wilson's May 1, 2018 Order effectively barred the J.A.

Family's opportunity to exhaust their administrative remedies under §504, the

Every Student Succeeds Act, the ADA, and the New Jersey Law Against

Discrimination.

186.   The OAL has stated it lacks jurisdiction to rule on claims brought

under §504, the Every Student Succeeds Act, the ADA, and the New Jersey Law

Against Discrimination.

187.   ALJ Wilson's denial of the J.A. Family's Motion to Amend their

Request for a Due Process Hearing was an abuse of discretion.

188.   IDEA provides that an aggrieved party has an absolute right to appeal

a decision made in a special education administrative due process case.  "<u>A</u>

<u>decision </u>made in a [special education due process] hearing . . . <u>shall be final</u>,

except that any party involved in such hearing may appeal such decision" and

"[a]ny party aggrieved by the findings and decision . . . shall have the right to bring

a civil action with respect to the complaint presented."  20 U.S.C. §§1415(i)(1)(A)

and (2)(A) respectively (emphasis added); 34 C.F.R. §§300.514(a) and 300.516(a).

189.   The J.A. Family seeks judicial review of ALJ Wilson's denial of their

Motion to Amend their Request for a Due Process Hearing pursuant to 20 U.S.C.

§1415(i).

WHEREFORE, Plaintiffs J.A. and J.A., individually and on behalf of their

minor child J.A., respectfully demand relief as follows:

A.   Finding that ALJ Wilson's May 1, 2018 Order denying the J.A.
     Family's Motion to Amend their Request for a Due Process Hearing
     was an abuse of discretion and such amendment should have been
     allowed;

B.   ALJ Wilson's May 1, 2018 Order be overturned and vacated to that
     extent and remanded for proceedings in accordance with such ruling;

C.   An award of attorneys' fees and costs for the J.A. Family; and

D.   For such other and further relief as the Court deems equitable and just.

### COUNT SIX – APPEAL PURSUANT TO 20 U.S.C. §1415(i)
### [Defendants MTBOE, ALJ Wilson – Motion for IEEs]

190.   Plaintiffs repeat and reallege the preceding allegations of this

Complaint and incorporate them herein by reference as if set forth in full.

191.   ALJ Wilson denied the J.A Family's Motion for IEEs on the basis that it "is an attempt to bootstrap this request onto their earlier filed Amended Request for a Due Process Hearing."

192.   All students with a disability eligible for an IEP must be reevaluated at least once every 3 years but not more frequently than once a year, unless both the parent and the LEA agree otherwise.  20 U.S.C. §1414(a)(2)(B); 34 C.F.R. §300.303(b) (emphasis added.)

193.   The purpose of the periodic evaluations is to ensure that an IEP includes "a statement of the child's present levels of academic achievement and functional performance, including [*inter alia*] how the child's disability affects the child's involvement and progress in the general education curriculum."  20 U.S.C. §1414(d)(1)(A)(i)(I); 34 C.F.R. §300.320(a)(1)(i); *see also* N.J.A.C. §6A:14-3.7(c) ("When developing the IEP, the IEP team shall: Consider the strengths of the student and the concerns of the parents for enhancing the education of their child; Consider the academic, developmental and functional needs of the student; Consider the results of the initial evaluation or most recent evaluation of the student and, as appropriate, the student's performance on any general State or districtwide assessment;" emphasis added.)

194.   Further, an IEP must also contain "a statement of measurable annual goals, including academic and functional goals, designed to meet the child's needs

that result from the child's disability to enable the child to be involved in and make

progress in the general education curriculum; and meet each of the child's other

educational needs that result from the child's disability." 20 U.S.C.

§1414(d)(1)(A)(i)(II); 34 C.F.R. §300.320(a)(2).

195.    N.J.A.C. §1:6A-14.4(a) provides: "For good cause and after giving the

parties an opportunity to be heard, the judge may order an independent educational

evaluation of the pupil." *See also* 34 C.F.R. §300.502(b).

196.    "Good cause" within N.J.A.C. §1:6A-14.4(a) is not defined in the

regulation, but caselaw has interpreted the term to mean: "a legal sufficient ground

or reason; and a substantial reason that affords legal excuse." *N.P. o/b/o J.P. v.*

*East Orange Board of Education*, OAL Docket No. EDS 03801-05 (July 27, 2006)

*citing State v. Schlanger*, 203 N.J. Super 289, 294 (Law Div. 1985).

197.    The J.A. Family presented good cause to support the Motion for IEEs.

198.    ALJ Wilson's denial of the J.A. Family's Motion for IEEs lacked any

legal analysis and was an abuse of discretion.

199.    The J.A. Family seeks judicial review of ALJ Wilson's denial of their

Motion for IEEs pursuant to 20 U.S.C. §1415(i).

WHEREFORE, Plaintiffs J.A. and J.A., individually and on behalf of their

minor child J.A., respectfully demand relief as follows:

A.   Finding that the J.A. Family's Motion for IEEs presented good cause for granting the motion;

B.   Finding that ALJ Wilson's May 1, 2018 Order denying the J.A. Family's Motion for IEEs lacked legal analysis;

C.   Finding that ALJ Wilson's May 1, 2018 Order denying the J.A. Family's Motion for IEEs was an abuse of discretion and such motion should have been granted;

D.   ALJ Wilson's May 1, 2018 Order be overturned and vacated to that extent and remanded for proceedings in accordance with such ruling;

E.   An award of attorneys' fees and costs for the J.A. Family; and

F.   For such other and further relief as the Court deems equitable and just.

## COUNT SEVEN – APPEAL PURSUANT TO 20 U.S.C. §1415(i)
### [Defendants MTBOE, ALJ Wilson – Motion to Strike]

200.   Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

201.   ALJ Wilson denied the J.A Family's Motion to Strike Materials and for Sanctions on the basis that it "is frivolous and without merit." ALJ Wilson effectively allowed a decision in another unrelated special education due process case to remain in the J.A. Family's Administrative Case and found "it is up to this ALJ as to what weight or consideration, if any, will be afforded this or any other exhibit."

202.    Defendant MTBOE included several references to the decision in special education case OAL Docket No. EDS 08913-16 and attached it as an exhibit to its oppositions to motions filed by the J.A. Family in the Administrative Case.  MTBOE had two purposes for doing so: (1) for the prior decision to have *res judicata* effect on the current Administrative Case; and (2) to prejudice ALJ Wilson because the prior case involved the J.A. Family and MTBOE wanted to portray them as serial litigators.

203.    The doctrine of *res judicata* was discussed in the context of special education disputes in *M.R. v. Ridley School Dist.*, 744 F. 3d 112 (3rd Cir. 2014) *cert. denied*, No. 13-1547, 2015 WL 2340858 (S.Ct. May 18, 2015).  The Third Circuit held that for a party to rely on that doctrine, it must establish three elements: (1) a final judgment on the merits in a prior proceeding that involved (2) the same parties or their privies and (3) the same "cause of action."  There was no identity of causes of action from the prior case and the current case, so reference to OAL Docket No. EDS 08913-16 was extremely irrelevant and only introduced to harass the J.A. Family.

204.    Thus, the J.A. Family's Motion to Strike was not frivolous or without merit.

205.    ALJ Wilson's denial of the J.A. Family's Motion to Strike lacked any true legal analysis and was an abuse of discretion.

206.    The J.A. Family seeks judicial review of ALJ Wilson's denial of their Motion to Strike pursuant to 20 U.S.C. §1415(i).

WHEREFORE, Plaintiffs J.A. and J.A., individually and on behalf of their minor child J.A., respectfully demand relief as follows:

A.    Finding that the J.A. Family's Motion to Strike was well-taken, not frivolous, and had merit;

B.    Finding that ALJ Wilson's May 1, 2018 Order denying the J.A. Family's Motion to Strike lacked legal analysis;

C.    Finding that ALJ Wilson's May 1, 2018 Order denying the J.A. Family's Motion to Strike was an abuse of discretion and such motion should have been granted;

D.    ALJ Wilson's May 1, 2018 Order be overturned and vacated to that extent and remanded for proceedings in accordance with such ruling;

E.    An award of attorneys' fees and costs for the J.A. Family; and

F.    For such other and further relief as the Court deems equitable and just.

## COUNT EIGHT – DENIAL OF FAPE
### [Defendant MTBOE]

207.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

208.    The J.A. Family should be permitted to pursue remedies in this Court because continuing the Administrative Case before ALJ Wilson in the OAL is

futile.  ALJ Wilson has already violated the 45 Day Rule by extreme measure since

the case will not even go to hearing with more than a year passing.  In the

meantime, J.A. will be going to 5th grade with a 3rd grade IEP and no adequate

progression of her education due to an ongoing denial of FAPE by MTBOE.  Thus,

the futility exception to exhaust IDEA administrative procedures is applicable

herein.  *See Batchelor v. Rose Tree Media School Dist.*, 759 F. 3d 266, 280 (3rd

Cir. 2014) [other citations omitted].

209.   The J.A. Family have exhausted their administrative remedies as

required by IDEA because further pursuit in the OAL would be futile and

inadequate.

210.   One of the key Procedural Safeguards is "an opportunity for the

parents of a child with a disability . . . to participate in meetings with respect to the

identification, evaluation, and educational placement of the child."  20 U.S.C.

§1415(b)(1); 34 C.F.R. §300.501(b)(1) (emphasis added.)

211.   The parents of a child with a disability are mandatory members of the

IEP Team.  20 U.S.C. §1414(d)(1)(B)(i); 34 C.F.R. §300.321(a)(1).  Indeed, "the

concerns of the parents for enhancing the education of their child" is critical in

developing the child's IEP.  20 U.S.C. §1414(d)(3)(A)(ii); 34 C.F.R.

§300.324(a)(1)(ii); *see also Honig v. Doe*, 484 U.S. 305 (1988); *Schaffer v. Weast*,

546 U.S. 49, 53, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005) (Parents play "a

significant role" in the development of each child's IEP.)

212.   Parental participation in an IEP meeting is so vital, it is set forth twice

in the IDEA regulations.  34 C.F.R. §§300.322(a), (c) and (d) (emphasis added); 34

C.F.R. §300.501(b)(1).

213.   The ESSA guarantees parents of a child with a disability to participate

"in regular, two-way, and meaningful communication involving student academic

learning and other school activities" and "play an integral role in assisting their

child's learning."  To accomplish that goal, parents are "encouraged to be actively

involved in their child's education at school . . . [and carry] out of other activities,

such as those described in section 1116."  20 U.S.C. §7801(39)**.**

214.   The activities referenced in "section 1116" state that parents may

engage in to participate in their child's education include, *inter alia*, ongoing

communications between teachers and parents and classroom observation.  20

U.S.C. §6318(d).

215.   "Procedures used to develop an IEP must be strictly reviewed,

although 'technical deviations do not render an IEP invalid.'"  *DB ex rel. HB v.*

*Gloucester Tp. School Dist.*, 751 F. Supp. 2d 764, 771 (D.N.J. 2010) *citing Dong*

*ex rel. Dong v. Board of Educ.*, 197 F.3d 793, 800 (6th Cir.1999).

216.   Predetermination of an IEP can be grounds for finding a denial of FAPE because it precludes parents from meaningfully participation in the decision-making process.  *DB ex rel. HB v. Gloucester Tp. School Dist.*, 751 F. Supp. 2d 764, 771 (D.N.J. 2010); *see also WG v. Bd. Of Trustees of Target Range School D.*, 960 F. 2d 1479, 1484 (9th Cir. 1992).

217.   An IEP must accurately reflect a child's present levels of academic achievement and functional performance.  20 U.S.C. §1414(d)(3); *Schaffer v. Weast*, 546 U.S. 49, 53, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005) ("Each IEP must include an assessment of the child's current educational performance, must articulate measurable educational goals, and must specify the nature of the special services that the school will provide.")

218.   Upon information and belief, MTBOE receives federal funding and therefore owes J.A. a FAPE.

219.   When there is a finding of denial of FAPE, a hearing officer or court "shall grant such relief as the court determines is appropriate."  20 U.S.C. §1415(i)(2)(C)(iii).

220.   "Appropriate remedies under the IDEA are determined on a case-by-case basis.  In each case, a court will evaluate the specific type of relief that is appropriate to ensure that a student is fully compensated for a school district's past violations of his or her rights under the IDEA and develop an appropriate equitable

award." *DF EX REL. AC v. Collingswood Borough Bd. of Educ.*, 694 F. 3d 488, 499 (3d Cir. 2012).

221.   Compensatory education is a judicially-created remedy that has been approved by the 3rd Circuit. *Collingswood Borough Bd. of Educ.*, 694 F. 3d 488, 496 (3d Cir. 2012).

222.   MTBOE denied J.A. a FAPE as follows:

    a.   Seriously depriving J.A.'s parents of their participation rights in the development of the 5/9/17 IEP;

    b.   Impeding J.A.'s rights to a FAPE;

    c.   Blocking J.A.'s mother from ongoing communication with teachers and staff at J.A.'s school;

    d.   Preventing and/or prohibiting J.A.'s mother from observing J.A. in the classroom;

    e.   Causing a deprivation of educational benefits to J.A.;

    f.   Predetermining the 5/9/17 IEP without involvement of J.A.'s parents or addressing their concerns and requests;

    g.   The 5/9/17 IEP is not appropriately ambitious to meet J.A.'s needs;

    h.   Design of the 5/9/17 IEP is flawed because the services and goals do not meet all of J.A.'s needs;

i.    MTBOE failed to have a current, accurate, comprehensive assessment of J.A. that revealed all of her needs in school and as a result the 5/9/17 IEP does not accurately reflect J.A.'s present levels of academic achievement and functional performance;

j.    MTBOE is retaliating against The J.A. Family for asserting their legal rights under IDEA;

k.    Failure to gather and/or keep data on J.A. correlated to the goals in J.A.'s IEPs;

l.    Failure to provide current data and/or assessments to J.A.'s parents when they requested same;

m.    Failure to implement the 11/14/16 IEP because numerous services were not provided or were provided on a sporadic and inconsistent basis; and

n.    Systemically providing services on a "yearly" basis instead of an "hours per week" basis, thereby depriving educational benefits to J.A. as well as other students eligible for special education under the IDEA.

WHEREFORE, Plaintiffs J.A. and J.A., individually and on behalf of their minor child J.A., demand that this honorable Court enter an Order in their favor and against Defendant MTBOE as follows:

A.    Finding that MTBOE denied J.A. a FAPE;

B.    Awarding J.A. compensatory education services as appropriate;

C.    Awarding all legal and equitable relief available under the laws;

D.    Holding that the J.A. Family are prevailing parties on the issues herein;

E.    Granting the J.A. Family an award of monetary reimbursement for all expenses incurred by them in pursuing this appeal and for attorney's fees and costs pursuant to 20 U.S.C. §1415(i)(3)(B)(i); 34 C.F.R. §300.517(a)(1)(i); and

F.    Such other and further relief as this Court deems equitable and just.

## COUNT NINE – VIOLATION OF §504
### [Defendant MTBOE]

223.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

224.    Section 504 of the Rehabilitation Act of 1973 ("§504"), 29 USC §701 *et seq.* ("§504") prohibits discrimination of children with disabilities in school and ensures that their civil rights are not violated.

225.   As described above, exhaustion of administrative remedies before pursuing remedies under §504 is futile and inadequate.  *See Batchelor v. Rose Tree Media School Dist.*, 759 F. 3d 266, 280 (3rd Cir. 2014) [other citations omitted].

226.   Indeed, ALJ Wilson's May 1, 2018 Order denying the J.A. Family's Motion to Amend their Due Process Complaint prevents them from exhausting their administrative remedies.

227.   Denial of FAPE to a child with a disability is discrimination and a violation of §504.  34 C.F.R. §104.4.

228.   Retaliation by a school district when a parent or child with a disability tries to enforce their rights under §504 is a violation of §504.  29 C.F.R. §33.13; 34 C.F.R. §100.7(e); 34 C.F.R. §104.61.

229.   J.A. has a "disability" as defined in §504 as Autism is a mental impairment which substantially limits one or more of her major life activities, including but not limited to learning and communicating.  29 U.S.C. §705(20)(B).

230.   J.A. is an "individual with a disability" within the meaning of §504 because J.A.'s diagnosis of Autism substantially limits her ability to learn, communicate, and be educated.  29 U.S.C. §705(20)(A); 34 C.F.R. §104.3(j).

231.   J.A. is entitled to the protections against discrimination as provided by §504 and shall not, by reason of her disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or

be subjected to discrimination by any such entity. 29 U.S.C. §794(a); 34 C.F.R. §§104.4, 104.31 and 104.33.

232.    Upon information and belief during all relevant time periods herein, MTBOE received federal funds to operate as a public facility providing education to the residents within its jurisdiction.

233.    MTBOE knew of J.A.'s disability because of her IEP, which requires a determination of eligibility of a child with a disability.

234.    By its actions and/or inactions in denying equal access to educational services, including but not limited to a denial of FAPE to J.A., and by subjecting J.A. to a hostile and dangerous educational environment, MTBOE violated J.A.'s rights under §504 and the regulations promulgated thereunder.

235.    By retaliating against the J.A. Family for asserting their legal rights under §504 and for discriminating against J.A. and her parents, MTBOE violated J.A.'s rights under §504 and the regulations promulgated thereunder.

236.    As a direct and proximate result of MTBOE's violations of §504 and the regulations promulgated thereunder, the J.A. Family have suffered serious damages including special and general damages according to proof.

237.    The same remedies available under Title VI of the Civil Rights Act of 1964 are available to any person aggrieved by a violation of §504.  29 U.S.C. §794a(a)(2), 34 C.F.R. §104.61.

238.   Remedies under §504 for denial of FAPE include, but are not limited to, compensatory education, reimbursement for private placement, compensatory damages, injunctive relief, and reimbursement of expert fees. *Barnes v. Gorman*, 536 U.S. 181, 187, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002); *see also L.T. ex rel B.T. v. Mansfield Twp. Sch. Dist.*, 2009 WL 2488181 (D.N.J. 2009).

WHEREFORE, Plaintiffs J.A. and J.A., individually and on behalf of their minor child J.A., demand that this honorable Court enter an Order in their favor and against Defendant MTBOE as follows:

A.    Finding that MTBOE denied J.A. a FAPE;

B.    Finding that MTBOE discriminated against J.A. as a result of her disability;

C.    Awarding J.A. compensatory education services as appropriate;

D.    Awarding the J.A. Family compensatory damages in the amount of Two Hundred Fifty Thousand Dollars $250,000.00;

E.    Awarding all legal and equitable relief available under the laws;

F.    Holding that the J.A. Family are prevailing parties on the issues herein;

G.    Granting the J.A. Family an award of monetary reimbursement for all expenses incurred by them in pursuing this appeal and for attorney's fees and costs; and

H.     Such other and further relief as this Court deems equitable and just.

## COUNT TEN – VIOLATION OF ADA
### [Defendant MTBOE]

239.   Plaintiffs repeat and reallege the preceding allegations of this

Complaint and incorporate them herein by reference as if set forth in full.

240.   The Americans with Disabilities Act of 1990 ("ADA"), 42 USC

§12101 *et seq*. ("ADA") prohibits discrimination of children with disabilities in

school and ensures that their civil rights are not violated.

241.   As described above, exhaustion of administrative remedies before

pursuing remedies under the ADA is futile.  *See Batchelor v. Rose Tree Media*

*School Dist.*, 759 F. 3d 266, 280 (3rd Cir. 2014) [other citations omitted].

242.   Indeed, ALJ Wilson's May 1, 2018 Order denying the J.A. Family's

Motion to Amend their Due Process Complaint prevents them from exhausting

their administrative remedies.

243.   Denial of FAPE to a child with a disability is discrimination and a

violation of the ADA.  28 C.F.R. §35.130.

244.   The ADA also prohibits retaliation, coercion or threats against people

who file complaints under the ADA.  42 U.S.C. §12203; 28 C.F.R. §35.134.

245.   As a child with Autism, J.A. has a "disability" as the disorder

substantially limits one or more of her major life activities, including but not

limited to learning and communicating, as set forth in the ADA. 42 U.S.C.

§12102(1); 28 C.F.R. §35.104.

246.   J.A. is a "qualified individual with a disability" within the meaning of

the ADA. 42 U.S.C. §§12132 and 12182; 28 C.F.R. §§35.130 and 35.149.

247.   J.A. is entitled to the protections against discrimination as provided by

the ADA and shall not, by reason of her disability, be denied public

accommodations or excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination

by any such entity. 42 U.S.C. §§12132, 12181 and 12182; 28 C.F.R. §§35.130 and

35.149.

248.   MTBOE, like all educational facilities receiving federal funds, is a

public accommodation. 42 U.S.C. §12181(7)(j).

249.   MTBOE failed in its responsibilities under the ADA and the

regulations promulgated thereunder to provide its services, programs and activities

in a full and equal manner to J.A., a disabled person, as described hereinabove,

including failing to ensure that educational services are provided on an equal basis

to a child with a disability and free of hostility towards J.A.'s disability.

250.   MTBOE further failed in its responsibilities under the ADA to provide

its services, programs and activities in a full and equal manner to J.A., a disabled

person, as described hereinabove, by subjecting her to a hostile and dangerous educational environment.

251.  By denying J.A. a FAPE as described above, MTBOE has violated the ADA and the regulations promulgated thereunder.

252.  By retaliating against the J.A. Family for asserting their legal rights under the ADA and for discriminating against J.A. and her parents, MTBOE violated J.A.'s rights under the ADA and the regulations promulgated thereunder.

253.  As a direct and proximate result of MTBOE's failures to comply with the ADA and the regulations promulgated thereunder, the J.A. Family have suffered serious damages including special and general damages according to proof.

254.  Similar remedies are available under the ADA for denial of FAPE as stated above.  *See* 42 U.S.C. §2000a–3(a), 28 C.F.R. §36.504; 42 U.S.C. §12188; *see also Hohider v. United Parcel Service, Inc.,* 574 F. 3d 169 (3rd Cir. 2009) and *Gagliardo v. Connaught Laboratories, Inc.*, 311 F. 3d 565 (3rd Cir. 2002).

255.  In addition, punitive damages are available under ADA when the violator "engaged in a discriminatory practice ... with malice or with reckless indifference."  42 U.S.C. §1981a(b)(1).

WHEREFORE, Plaintiffs J.A. and J.A., individually and on behalf of their minor child J.A., demand that this honorable Court enter an Order in their favor and against Defendant MTBOE as follows:

A.    Finding that MTBOE denied J.A. a FAPE;

B.    Finding that MTBOE discriminated against J.A. as a result of her disability;

C.    Awarding J.A. compensatory education services as appropriate;

D.    Awarding the J.A. Family compensatory damages in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00);

E.    Awarding the J.A. Family punitive damages in the amount of Seven Hundred Fifty Thousand Dollars ($750,000.00);

F.    Awarding all legal and equitable relief available under the laws;

G.    Holding that the J.A. Family are prevailing parties on the issues herein;

H.    Granting the J.A. Family an award of monetary reimbursement for all expenses incurred by them in pursuing this appeal and for attorney's fees and costs; and

I.    Such other and further relief as this Court deems equitable and just.

## COUNT ELEVEN – VIOLATION OF NJLAD
### [Defendant MTBOE]

256.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

257.    The New Jersey Law Against Discrimination, N.J.S.A. §10:5-1 *et seq.* ("NJLAD") prohibits discrimination of children with disabilities in school and ensures that their civil rights are not violated.

258.    As described above, exhaustion of administrative remedies before pursuing remedies under the NJLAD is futile.  *See Batchelor v. Rose Tree Media School Dist.*, 759 F. 3d 266, 280 (3rd Cir. 2014) [other citations omitted].

259.    Indeed, ALJ Wilson's May 1, 2018 Order denying the J.A. Family's Motion to Amend their Due Process Complaint prevents them from exhausting their administrative remedies.

260.    J.A. has a "disability" as a result of her diagnosis of Autism Spectrum Disorder as defined in the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. §10:5-5(q).

261.    MTBOE, like all educational facilities under the supervision of the NJDOE and receiving federal funds, is "a place of public accommodation." N.J.S.A. §10:5-5(l).

262.    J.A. is entitled to the prohibitions against unlawful discrimination as provided by the NJLAD and shall not, by reason of her disability, be denied public

accommodations or excluded from participation in or be denied the benefits of the services, programs, or activities of MTBOE or be subjected to discrimination by any such entity. N.J.S.A. §10:5-12.

263.   In addition, under NJLAD, public schools and its employees are barred from discriminating on the basis of a person's disability.

264.   MTBOE failed in its responsibilities under the NJLAD to provide its services, programs and activities in a full and equal manner to J.A., a disabled person, as described hereinabove, including failing to ensure that educational services are provided on an equal basis to a child with a disability and free of hostility towards J.A.'s disability.

265.   MTBOE further failed in its responsibilities under the NJLAD to provide its services, programs and activities in a full and equal manner to J.A., a disabled person, as described hereinabove, by subjecting her to a hostile and dangerous educational environment.

266.   By retaliating against the J.A. Family for asserting their legal rights under the NJLAD and for discriminating against J.A. and her parents, MTBOE violated J.A.'s rights under the NJLAD.

267.   As a direct and proximate result of MTBOE's failure to comply with the NJLAD, the J.A. Family have suffered serious damages including special and general damages according to proof.

268.    Under NJLAD, "All remedies available in common law tort actions shall be available to prevailing plaintiffs. These remedies are in addition to any provided by this act or any other statute." N.J.S.A. 10:5-13.

WHEREFORE, Plaintiffs J.A. and J.A., individually and on behalf of their minor child J.A., demand that this honorable Court enter an Order in their favor and against Defendant MTBOE as follows:

A.    Finding that MTBOE denied J.A. a FAPE;

B.    Finding that MTBOE discriminated against J.A. as a result of her disability;

C.    Awarding J.A. compensatory education services as appropriate;

D.    Awarding the J.A. Family compensatory damages in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00);

E.    Awarding all legal and equitable relief available under the laws;

F.    Holding that the J.A. Family are prevailing parties on the issues herein;

G.    Granting the J.A. Family an award of monetary reimbursement for all expenses incurred by them in pursuing this appeal and for attorney's fees and costs; and

H.    Such other and further relief as this Court deems equitable and just.

THURSTON LAW OFFICES LLC


By:  /s/ Robert C. Thurston
           Robert C. Thurston, Esq.
           Attorney for Plaintiffs

Dated: May 23, 2018

Robert C. Thurston, Esq.
Attorney ID #008801988
Thurston Law Offices LLC
100 Springdale Road A3
PMB 287
Cherry Hill, NJ 08003
856-335-5291
Email: rthurston@schoolkidslawyer.com