## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Joanna A., individually and on behalf of her minor child J.A.; C.M., individually and on behalf of her minor child L.S.; CH.M. and J.M., individually and on behalf of their minor child R.M.; and on behalf of ALL OTHERS SIMILARLY SITUATED,** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| **Plaintiffs,** | ) <br> ) |
| **v.** | ) <br> ) |
| **New Jersey Department of Education; Kevin Dehmer, Acting Commissioner of Education; and New Jersey Office of Administrative Law,** | ) <br> ) <br> ) <br> ) <br> ) |
| **Defendants.** | ) <br> ) <br> ) |

**Case No. 1:18-cv-9580-ESK-MJS**

**Judge Edward S. Kiel**

**Magistrate Judge Matthew J. Skahill**

## SECOND AMENDED CLASS ACTION COMPLAINT

NOW COME Plaintiffs Joanna A., individually and on behalf of her minor child J.A.[1] ("J.A. Family"); C.M., individually and on behalf of her minor child L.S. ("L.S. Family"); Ch.M.[2] and J.M., individually and on behalf of their minor child R.M. ("R.M. Family"); and on behalf of all others similarly situated (collectively referred to as "Plaintiffs"), by and through counsel, and for their Second Amended Class Action Complaint against Defendants New Jersey Department of Education ("NJDOE"); Kevin Dehmer, Acting New Jersey Commissioner of Education ("Commissioner"); and New Jersey Office of Administrative Law ("OAL") (collectively referred to as "State Defendants"), hereby state as follows:

---

[1] All plaintiffs are identified by initials pursuant to Fed.R.Civ.P. 5.2(a)(3) so as to protect the identities of the minor children.

[2] Ch.M. is so identified to distinguish him from plaintiff C.M.

**Page 1 of 107**

## TABLE OF CONTENTS

NATURE OF THE ACTION ................................................................................................ 4

JURISDICTION AND VENUE ......................................................................................... 4

PARTIES ............................................................................................................................ 5

FEDERAL STATUTORY OVERVIEW .......................................................................... 7

    I.    IDEA ................................................................................................................ 7

    II.    §504 ............................................................................................................... 10

    III.    ADA .............................................................................................................. 11

ABOUT NJDOE ............................................................................................................... 12

NEW JERSEY SYSTEM OF SPECIAL EDUCATION DISPUTES ........................... 13

ABOUT THE OAL ........................................................................................................... 14

CLASS ALLEGATIONS ................................................................................................. 15

FACTUAL BACKGROUND – General ......................................................................... 17

FACTUAL BACKGROUND – J.A. Family Due Process Cases .................................. 22

    JA DP Case #1 ................................................................................................... 22

    JA DP Case #2 ................................................................................................... 26

    JA DP Case ##1 and 2 Consolidated ............................................................. 27

    JA DP Case #3 ................................................................................................... 31

FACTUAL BACKGROUND – L.S. Family Due Process Case .................................... 38

FACTUAL BACKGROUND – R.M. Family Due Process Case .................................. 41

COUNT ONE – CLASS ACTION – SYSTEMIC VIOLATION OF THE DUE PROCESS COMPLAINT PROCEDURES ...................................................................... 43

COUNT TWO – CLASS ACTION – SYSTEMIC VIOLATION OF THE STAY PUT RULE . 46

COUNT THREE – CLASS ACTION – SYSTEMIC VIOLATION OF THE 10 DAY PEREMPTORY HEARING DATE REGULATION ...................................................... 50

COUNT FOUR – CLASS ACTION – SYSTEMIC VIOLATION OF THE 30 DAY RESOLUTION PERIOD .................................................................................................. 54

COUNT FIVE – CLASS ACTION – SYSTEMIC VIOLATION OF THE ACCESS TO RECORDS PROCEDURAL SAFEGUARD ................................................................... 60

COUNT SIX – CLASS ACTION – SYSTEMIC VIOLATION OF THE FIVE-DAY EXCHANGE REGULATION .......................................................................................... 63

COUNT SEVEN – CLASS ACTION – DECLARATORY JUDGMENT ................... 67

COUNT EIGHT – CLASS ACTION – SYSTEMIC VIOLATION OF THE BURDEN OF PROOF AND PRODUCTION IN SPECIAL EDUCATION DUE PROCESS CASES ............ 75

COUNT NINE – CLASS ACTION – SYSTEMIC VIOLATION OF THE 45 DAY RULE AND ADJOURNMENT RULE – (DEFENDANT OAL ONLY) ........................................ 78

COUNT TEN – CLASS ACTION – SYSTEMIC VIOLATION OF HEARING OFFICER QUALIFICATIONS ................................................................................................ 82

COUNT ELEVEN – CLASS ACTION – SYSTEMIC VIOLATION OF THE INDEPENDENCE OF THE ADJUDICATING BODY OF SPECIAL EDUCATION DISPUTES ......................... 86

COUNT TWELVE – CLASS ACTION – SYSTEMIC VIOLATION OF §504 ........................ 90

COUNT THIRTEEN – CLASS ACTION – SYSTEMIC VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA) ........................................................................... 91

COUNT FOURTEEN – CLASS ACTION – SYSTEMIC VIOLATION OF PLAINTIFFS' RIGHTS UNDER 42 U.S.C. §1983 .......................................................................... 93

COUNT FIFTEEN – CLASS ACTION – SYSTEMIC VIOLATION OF THE NJLAD ............ 97

COUNT SIXTEEN – CLASS ACTION – SYSTEMIC FAILURE TO ENFORCE ORDERS. 100

COUNT SEVENTEEN – CLASS ACTION – SYSTEMIC VIOLATION OF IDEA'S HEARING RIGHTS ................................................................................................ 103

## NATURE OF THE ACTION

1.     This matter arises from systemic flaws in NJDOE's system for resolving special education cases in the State of New Jersey as explained below.  Despite receiving hundreds of millions of dollars in federal funding each year to provide a fair and equitable system for special education dispute resolution, State Defendants have been violating virtually every Procedural Safeguard under the Individuals with Disabilities Education Act, 20 U.S.C. §1400 *et seq.* ("IDEA") for more than two decades.  This action is to hold State Defendants accountable as per the mandates of IDEA and to compel change in the entire system.

2.     The issues herein originally arose in the underlying cases *J.A. and J.A. o/b/o J.A. v. Monroe Township BOE*, OAL Dkt. Nos. EDS 08588-17 and EDS 11524-18 [Consolidated] and *Monroe Township BOE v. J.A. and J.A. o/b/o J.A. v.*, OAL Dkt. No. EDS 04821-2020 S (collectively "JA DP Cases").  The problems were consistent with many other special education due process cases in the State of New Jersey, including *C.M., individually and on behalf of her minor child L.S. v. Monroe Township BOE*, OAL Dkt. Nos. EDS 9541-18 and EDS 9544-18 [Consolidated] ("LS DP Case"); and *C.M. and J.M., individually and on behalf of their minor child R.M. v. Monroe Township BOE*, OAL Dkt. Nos. EDS 18349-18 and EDS 18350-18 [Consolidated] ("RM DP Case").

3.     The J.A. Family, L.S. Family, and R.M. Family have elected to be representatives in a class action to address the systemic flaws as affected particular to them and in the public interest.

## JURISDICTION AND VENUE

4.     The Court has subject matter jurisdiction over this action pursuant to federal question jurisdiction 28 U.S.C. §1331, premised upon the federal Individuals with Disabilities

Education Act, 20 U.S.C. §1400 *et seq.* ("IDEA"), wherein it provides that "The district courts of the United States shall have jurisdiction of actions brought under this section without regard to the amount in controversy," 20 U.S.C. §1415(i)(3)(A); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 *et seq.* ("§504"); and the Americans with Disabilities Act, 42 U.S.C. §12101 *et. seq.* ("ADA").

5.       This Court may order declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

6.       The Court has supplemental jurisdiction to adjudicate any state claims, which may arise out of the same facts as the federal claims asserted herein pursuant to 28 U.S.C. §1367.

7.       Personal jurisdiction exists over the Defendants because they are all residents or arms of the government of the State of New Jersey.

8.       Venue is proper pursuant to 28 U.S.C. §1391 as all the events giving rise to the claims herein occurred in this District.

## PARTIES

9.       J.A., whose date of birth is 05/22/2008, is a child with a disability, primary diagnosis of Autism and other secondary diagnoses, including without limitation Auditory Processing Disorder.  She is eligible for special education and related services under IDEA and protection under §504, the ADA, New Jersey's Special Education Law, N.J.S.A. §18A:46-1 *et seq.*, and the New Jersey Law Against Discrimination, N.J.S.A. §10:5-1 *et. seq.* ("NJLAD").

10.      Joanna A. is J.A.'s mother and resides with J.A. at 23 Buena Court, Blackwood, Gloucester County, New Jersey.

11.      L.S., whose date of birth is 12/03/2007, is a child with a disability, primary diagnosis of Autism and other secondary diagnoses.  He is eligible for special education and

related services under IDEA and protection under §504, the ADA, New Jersey's Special

Education Law, and the NJLAD.

12.      C.M. is L.S.'s parent and resides with L.S. at 46 Glasgow Road, Williamstown,

Gloucester County, New Jersey.

13.      R.M., whose date of birth is 04/10/2009, is a child with a disability, diagnosed

with ADHD and Dyslexia.  She is eligible for special education and related services under the

category of Specific Learning Disability ("SLD") under IDEA and protection under §504, the

ADA, New Jersey's Special Education Law, and the NJLAD.

14.      Ch.M. and J.M. are R.M.'s parents and reside with R.M. at 3717 Sunset Avenue,

Williamstown, Gloucester County, New Jersey.

15.      Defendant New Jersey Department of Education ("NJDOE") is a State

Educational Agency ("SEA") as that term is defined in 20 U.S.C. §§1401(32) and 1412; 34

C.F.R. 300.41; and a "public entity" as that term is defined in 42 U.S.C. §12131(1); 28 C.F.R.

§35.104; and otherwise receives federal funds for special education under various federal statutes

and, as such, is responsible for establishing and maintaining a system for resolution of disputes

and ensuring compliance with all mandates arising under the numerous federal statutes for

providing special education through its Office of Special Education Programs ("OSEP").

NJDOE has its principal place of business located at 100 River View Plaza, Trenton, Mercer

County, New Jersey 08625-0500.

16.      Kevin Dehmer, Acting New Jersey Commissioner of Education

("Commissioner"), is the officer in charge of the NJDOE.  Commissioner is named herein in his

official capacity.

17.     Defendant New Jersey Office of Administrative Law ("OAL") is an Executive

Branch agency of the State of New Jersey designated by NJDOE to hear special education due

process hearing requests ("due process complaints") pursuant to 20 U.S.C. §1415(f); N.J.A.C.

1:6A-3.1 and 6A:14-2.7.  OAL has its principal place of business located at 9 Quakerbridge

Plaza, Mercerville (Hamilton Twp.), New Jersey 08619.

18.     OAL is a necessary party to this action pursuant to Fed.R.Civ.P. 19 because

without the OAL this Court cannot grant full relief or enforce any such relief.

## FEDERAL STATUTORY OVERVIEW

I.     IDEA

19.     IDEA is a federal funded law that guarantees that every child with a disability

receives a Free Appropriate Public Education ("FAPE") from his/her public school if that school

district receives federal funding.  20 USC §1412(a)(1)(A).

20.     IDEA is the successor statute to the Education for All Handicapped Children Act

of 1975 (Public Law 94–142) implementation of which "has been impeded by low expectations,

and an insufficient focus on applying replicable research on proven methods of teaching and

learning for children with disabilities."  20 U.S.C. §1400(c).

21.     IDEA's stated purposes are:

　　a.    "to ensure that all children with disabilities have available to them a free

        appropriate public education that emphasizes special education and related

        services designed to meet their unique needs and prepare them for further

        education, employment, and independent living; to ensure that the rights of

        children with disabilities and parents of such children are protected; and to assist

States, localities, educational service agencies, and Federal agencies to provide

for the education of all children with disabilities;

      b.   to assist States in the implementation of a statewide, comprehensive, coordinated,

multidisciplinary, interagency system of early intervention services for infants and

toddlers with disabilities and their families;

      c.   <u>to ensure that educators and parents have the necessary tools to improve</u>

<u>educational results for children with disabilities</u> by supporting system

improvement activities; coordinated research and personnel preparation;

coordinated technical assistance, dissemination, and support; and technology

development and media services; and

      d.   <u>to assess, and ensure the effectiveness of, efforts to educate children with</u>

<u>disabilities</u>."

20 U.S.C. §1400(d) (emphasis added.)

      22.   The U.S. Supreme Court has defined FAPE as requiring that a student's

"educational program must be <u>appropriately ambitious</u> in light of his circumstances" and that

"<u>this standard is markedly more demanding</u> than the 'merely more than de minimis' test."

*Endrew F v. Douglas County School Dist. RE-1*, 137 S. Ct. 988, 1000 (2017) (emphasis added.)

      23.   The U.S. Supreme Court has held that it is not only the child with the disability

that has legal rights under IDEA, but the parents are also entitled to assert legal rights on their

own behalf under IDEA. *Winkelman v. Parma City School Dist.*, 550 U.S. 516, 127 S.Ct. 1994,

1996 (2007).

24.    Congress authorized the U.S. Secretary of Education to promulgate regulations to govern the implementation of IDEA and ensure compliance with its provisions, 20 U.S.C. §1406, which regulations are set forth in the Code of Federal Regulations.  *See* 34 C.F.R. 300.1 *et seq.*

25.    IDEA guarantees parents and their child with a disability numerous legal rights identified as "Procedural Safeguards" in disputes with school districts.  *See* 20 U.S.C. §1415.

26.    The Procedural Safeguards establish a rigid structure and timeline for special education due process complaints to ensure the prompt resolution of disputes between families and school districts regarding the educational needs of children with disabilities.  *See* 20 U.S.C. §1415 and chart below:

| Event | Statutory / Regulatory Reference | Timeline* |
|---|---|---|
| Due Process Complaint filed | 20 U.S.C. §1415(b)(6) | Day 0 |
| Student records review | 20 U.S.C. §1415(b)(1) | ASAP, if not before DP Complaint |
| **30 Day Resolution Period** | | |
| Mediation or | 20 U.S.C. §1415(e) | Day 0-30 |
| Resolution meeting | 20 U.S.C. §1415(f)(1)(B)(i) | Day 15 |
| **Due Process Hearing** | | |
| Transmittal to ALJ | 20 U.S.C. §1415(f)(1)(B)(ii) | Day 30 |
| 5-Day exchange | 20 U.S.C. §1415(f)(2) | ~Day 33* |
| Peremptory hearing date | N.J.A.C. 1:6A-9.1(a) | ~Day 40 |
| Decision issued and distributed | 34 C.F.R. §300.515(a) | **Day 75**\*\* |

*All days are calculated using calendar days, except the 5-Day exchange which is 5 business days.
**The 75 day total includes the 30 Day Resolution Period.  The total after the case is transmitted for hearing is 45 days.

27.    Violations of the Procedural Safeguards rise to the level of a denial of FAPE if the violations: "(1) impeded the child's right to a FAPE; (2) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of FAPE to the child; or (3) caused a deprivation of educational benefits."  20 U.S.C. §1415(f)(3)(E)(ii); *see also G.N. ex rel. J.N. v. Bd. of Educ.*, 309 Fed.Appx. 542, 545-546 (3rd Cir. 2009).

28.     Congress abrogated state sovereign immunity "from suit in Federal court for a violation of [IDEA]."  20 U.S.C. §1403(a).

29.     In a lawsuit against the State for violation(s) of IDEA, a court may award "remedies (including remedies both at law and in equity)." 20 U.S.C. §1403(b) (emphasis added.)

II.    §504

30.     Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 *et seq.* ("§504") provides additional protection of the civil rights of children with disabilities in their public schools and NJDOE.  "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ."  29 U.S.C. §794(a).

31.     If a "program or activity" receives Federal financial assistance, it is subject to the requirements of §504.  *See* 29 U.S.C. §794(b)(1).

32.     Individuals with a disability as defined by §504 are entitled to the protections provided by the federal statute.  29 U.S.C. §705(20).

33.     Individuals with a disability must otherwise be qualified to participate in school activities and be excluded from, denied the benefits of, or subjected to discrimination by the "program or activity" solely due to their disabilities.

34.     State Defendants' special education dispute resolution system is a "program or activity" that receives federal funding and children with disabilities are entitled to access a fair system and may not be denied the benefits of that system.

35.    There is a private right of action for violation of §504 in the context of special education.  29 U.S.C. §794a; *see also A.W. v. Jersey City Public Schools*, 486 F.3d 791, 804 (3ʳᵈ Cir. 2007) *citing Barnes v. Gorman*, 536 U.S. 181, 185, 122 S.Ct. 2097 (2002).

III.    <u>ADA</u>

36.    The Americans with Disabilities Act, 42 U.S.C. §12101 *et. seq.* ("ADA"), similarly provides protection to students with disabilities in public schools and from State Defendants' programs.  "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. §12132.

37.    A public entity is defined by the ADA, in part, as "any department, agency, special purpose district, or other instrumentality of a State or States or local government."  42 U.S.C. §12132(1)(B).

38.    A qualified individual with a disability is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. §12132(2).

39.    There is a private right of action for allegations of discrimination under the ADA in the context of special education.  42 U.S.C. §12133; *citing* 29 U.S.C. §794a; *see also Chambers v. School Dist. Philadelphia Bd. of Educ.,* 587 F. 3d 176 (3rd Cir. 2009).

## **ABOUT NJDOE**

40.     States can receive federal funding for special education "if the State submits a plan that provides assurances to the [U.S. Secretary of Education] that the State has in effect policies and procedures to ensure that the State meets each of the following conditions:  Free Appropriate Public Education ("FAPE") is available to all children with disabilities residing in the State between the ages of 3 and 21 . . . Children with disabilities and their parents are afforded the procedural safeguards required by section 1415 of this title" among other rights.  20 U.S.C. §1412(a)(6)(A) (emphasis added.)

41.     "Any State educational agency, State agency, or local educational agency that receives assistance under this subchapter shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies."  20 U.S.C. §1415(a) (emphasis added.)

42.     Each year, NJDOE submits a plan to the United States Secretary of Education ensuring that it has procedural safeguards in place for children with disabilities in the State of New Jersey.

43.     Between the years 2006-2020, NJDOE received over $5.3 billion in federal funds under IDEA at an average of over $356 million per year and therefore must comply with the statute's provisions.  Thus, NJDOE must ensure the provision of a FAPE to each child with a disability in New Jersey, including Plaintiffs J.A., L.S., R.M., and all other eligible children, and ensure such children and their families receive the procedural safeguards of IDEA.

44.     As the SEA for New Jersey, NJDOE has the obligation to oversee any agency or entity – including the OAL and all LEAs, including without limitation school districts, within the

State of New Jersey – and ensure compliance.  *See* 20 U.S.C. §§1412(a)(11) and (a)(12); 34 C.F.R. 300.149 (general supervision) and 34 C.F.R. 300.150 (procedural safeguards).

## **NEW JERSEY SYSTEM OF SPECIAL EDUCATION DISPUTES**

45.    NJDOE established a system for resolution of special education disputes within the State and promulgated regulations with the purpose of complying with IDEA and its regulations.  *See* N.J.A.C. 6A:14-1 *et seq.*

46.    As part of its system, NJDOE developed and propagated a series of standard forms to be used in this process of special education cases, including among others a Parental Request For Mediation/Due Process Hearing, mediation forms, a Notice of Due Process Hearing Transmittal letter, and a Hearing Notice.

47.    For example, NJDOE's standard form Hearing Notice contains the following language, in pertinent part:

a.    Please be advised that the above referenced matter has been transmitted to the Office of Administrative Law (OAL). **A hearing** before an Administrative Law Judge has been scheduled for: [DATE] [TIME] Judge: [ALJ'S NAME AND LOCATION];

b.    You have the right to be represented by an attorney or by an individual with special knowledge and training regarding handicapped children;

c.    "Parents and Guardians have a right to examine relevant school records relating to their child. If you have not seen those records, contact the Board of Education immediately.";

d.    "All evidence including documents and summaries of expected testimony that either party intends to use at **the hearing** must be disclosed to the other party at least 5 days before **the hearing**. If you do not comply with this requirement, you may be prevented from presenting the evidence at **the hearing**.";

e.    "A judge will decide the case based only on what is presented at **the hearing**. If you would like the judge to consider any papers, you must have them at **the hearing**. If you want any witnesses to testify, you must arrange for their attendance at **the hearing**. If you are not sure that they will attend **the hearing**, you should serve them with a subpoena and the appropriate fee. This should occur

within a reasonable time before **the hearing**, and if possible, at least three days before **the hearing**.";

f.      "Legal briefs and other memoranda or argument cannot be submitted after **the hearing**. You should be prepared to offer these submissions at **the hearing** with the final argument."; and

g.      "If you do not attend **the hearing**, the judge may dismiss your case or order that an action requested by the other side be granted."

(Emphasis added.)

## ABOUT THE OAL

48.     The OAL "was established in 1979 to create a central independent agency to conduct administrative hearings, thus promoting due process, expediting the just conclusion of contested cases, and improving the quality of administrative justice." (From the OAL website, https://www.nj.gov/oal/, as of May 3, 2018[3].)

49.     "OAL is an Executive Branch agency" of the State of New Jersey.  (OAL website.)

50.     "OAL employs a corps of administrative law judges ("ALJs") who hear contested cases for state agencies and issue initial decisions."  (OAL website.)

51.     NJDOE has designated the OAL as the agency to conduct the administrative hearing for special education disputes.  N.J.A.C. 6A:14-2.7(a) ("A due process hearing is an administrative hearing conducted by an administrative law judge.")

52.     An interagency agreement, called the "Memorandum of Understanding between the Office of Administrative Law and the Office of Special Education Programs (MOU)", is executed every year between NJDOE and the OAL to institute such relationship.  The MOU provides that it is executed "to ensure that [special education due process] cases transmitted to

---

[3] Hereinafter, "OAL website".

the [OAL] by the Office of Special Education Programs (OSEP) are heard within the timeframe mandated by the [IDEA]," *i.e.* the 45 Day Rule.

53.    From at least 2013 to 2020, NJDOE distributed $1.8 million in IDEA funds to the OAL for the purpose stated in the preceding paragraph.  From 2013-2018, NJDOE distributed $150,000 per year and in 2019 distributed $900,000 to the OAL.  Thus, the OAL received federal IDEA funds and must comply with IDEA and its regulations.

54.    NJDOE has acknowledged that it shares responsibility for IDEA compliance with the OAL.

55.    The OAL hears cases for most state agencies, including special education due process cases for the NJDOE.  The OAL is not dedicated solely to handling cases arising under IDEA or other similar statutes which provide legal rights to children with disabilities and their families.  The OAL has a substantial docket covering most of the New Jersey executive branch agencies.

56.    NJDOE promulgated regulations regarding the OAL's handling of special education cases.  *See* N.J.A.C. 1:6A-1.1 *et seq.*

## CLASS ALLEGATIONS

57.    The J.A. Family, L.S. Family, and R.M. Family ("Class Representatives") bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all persons similarly situated a/k/a the "Class".

58.    The Class (and potential Sub-Classes) is defined as:

All children with disabilities and their parents within the State of New Jersey who filed Requests for Due Process Hearings (also known as Due Process Complaints) for violations of special education laws with the NJDOE from January 1, 2011

through any final Order entered in this matter ("class period") and who were

denied their guaranteed Procedural Safeguards under IDEA by State Defendants.

(hereinafter the "Class").

59.    The Class specifically includes:

- cases closed during the class period;

- cases settled during the class period;

- cases adjourned during the class period; and

- cases pending during the class period.

60.    The Class consists of more than ten thousand (10,000) families located throughout

the State of New Jersey.  Some Class families have moved out of the state and are spread across

various locations in the United States.  Thus, the members of the Class are so numerous and

geographically separated that joinder of all Class members is impracticable.  Further discovery is

necessary to determine the exact number of Class members.

61.    The Class Representatives will fairly and adequately protect the interests of the

members of the Class and have retained counsel competent and experienced in special education

litigation.  Named Plaintiffs' damages are similar, if not identical, in nature to the members of

the Class and have no interests that are adverse or antagonistic to those of the Class.

62.    A class action is superior to other available methods for the fair and efficient

adjudication of this controversy.  Because the damages are not easily calculable because they

involve the deprivation of a Free Appropriate Public Education ("FAPE") and state-wide,

systemic violations of federal laws, the expense and burden of multiple individual litigations

make it virtually impossible for the Class members to seek redress for the wrongful conduct

alleged herein on their own.

**Page 16 of 107**

63.    Common questions of law and fact exist as to all members of the Class and predominate over any questions particular to any single member of the Class.  Among the questions of law and fact common to the Class are:

a.    Whether State Defendants violated and continue to violate various federal and state laws and regulations by their acts and omissions and by establishing a flawed system for resolving special education disputes in the State of New Jersey;

b.    Whether State Defendants breached their duties and the Procedural Safeguards owed to Plaintiffs;

c.    Whether Plaintiffs and the members of the Class have been denied a FAPE proximately caused by State Defendants' acts and omissions and violations of laws and regulations; and

d.    Whether there are damages and adequate remedies at law or equity for Plaintiffs.

64.    Plaintiffs envision no difficulty in the management of this litigation as a Class Action.

## FACTUAL BACKGROUND – General

65.    In 2016, the New Jersey Special Education Practitioners ("NJSEP")[4] created a task force to study the State of New Jersey's compliance with the 45 Day Rule.  The study was extensive and reviewed NJDOE's own statistics on special education cases and their timelines. The final report was submitted to New Jersey Governor Phil Murphy with copies to Defendant Repollet; ALJ Lisa James-Beavers, then Acting OAL Director and Chief ALJ; and, John Worthington, Director of OSEP; among others, on March 21, 2018 ("45 Day Report").

---

[4] NJSEP consists of more than one hundred (100) attorneys and professional advocates in the State of New Jersey who represent exclusively children with disabilities and their parents in special education disputes.

66.     The NJSEP 45 Day Report found that, despite the federal and state law requirements that special education cases brought pursuant to IDEA should be decided within 45 days after the 30-day resolution period, on average such cases took **three hundred twelve (312) days**[5] to be adjudicated.

67.     The 45 Day Report found State Defendants noncompliant dating back to 2011. NJSEP called upon those with authority, Governor Murphy, the NJDOE, Repollet, and the OAL through ALJ Lisa James-Beavers, to take immediate action to rectify noncompliance.

68.     Concerns about State Defendants' compliance with the 45 Day Rule were communicated to the USDOE via letters in 2017 and the USDOE sent an inquiry to NJDOE about the concerns.

69.     By letter dated November 1, 2017, John Worthington, then-Director of NJOSEP, responded to the USDOE inquiries and argued that NJDOE was in compliance with the 45 Day Rule and blamed any delays on the parties seeking adjournments.

70.     This matter was originally filed with this Court on May 23, 2018 because several of the named Plaintiffs had already suffered from final decisions in due process cases taking more than 180 days, several in excess of a year.

71.     On May 6, 2019, after an investigation conducted by the United States Department of Education Office of Special Education and Rehabilitative Services, Laurie VanderPloeg, the U.S. Director of the Office of Special Education Programs ("USOSEP") issued a letter to Repollet finding that the NJDOE was noncompliant on the 45 Day Rule (the "USDOE noncompliance letter").  Specifically, OSEP found that NJDOE improperly used a system of

---

[5] This number reflects cases that did not seek emergent relief or were not filed as expedited due process matters.

"Federal days" instead of calendar days to calculate the 45-day timeline.  However, NJDOE "was unable to provide its definition of 'Federal day' or method for calculating the 45-day timeline, and acknowledged that it does not have a mechanism for ensuring that ALJs who serve as hearing officers are reaching hearing decisions and mailing a copy of the decision to the parties within the 45-day timeline.  Proper calculation of the due process hearing decision timeline using calendar days is essential to ensuring the timely resolution of due process complaints filed by parents and school districts on matters relating to the identification, evaluation, educational placement of a child with a disability, or the provision of a free appropriate public education to the child."  The noncompliance letter concludes that "OSEP determined that [NJDOE] does not have procedures for ensuring that decisions in due process hearings are issued within the 45-day timeline or within allowable extensions . . . Consequently, NJDOE has failed to exercise its general supervisory and monitoring responsibility in 20 U.S.C. §§1412(a)(11) and 1416(a) and 34 C.F.R. §§300.149 and 300.600 and 20 U.S.C. §1232d(b)(3)(A) to ensure that due process hearing decisions are issued within the 45-day timeline or within an allowable extension, as required by 34 C.F.R. §300.515(a) and (c)."

72.     The OAL uses forms that facially violate the IDEA 45 Day Rule, including the use of the term "Federal days".

73.     Despite the 45 Day Report, the May 6, 2019 noncompliance letter from the USDOE, and two pending class actions on the 45 Day Rule, namely, this case and *C.P., et al. v. N.J. Dep't of Education,* U.S.D.C. D.N.J. Civil No. 1:19-cv-12807 ("*CP Class Action*"), State Defendants have taken virtually <u>zero</u> steps to remedy noncompliance.  Indeed, the NJDOE and OAL continue to use the phrase "Federal days" despite the USDOE's explicit instruction to cease

and desist the practice. Further, State Defendants continue to schedule hearings in special education due process cases months after the deadline imposed by the 45 Day Rule.

74.    This Court has previously ruled that "a significant delay in providing a due process hearing – one measured in months beyond expiration of the 45 Day Rule – constitutes a substantive as opposed to procedural harm, and therefore, constitutes a denial of a FAPE." *CP Class Action*, Judge Hillman, op. at 28 (D.N.J. May 22, 2020) *citing Blackman v. D.C.*, 382 F. Supp. 2d 3, 9 (D.D.C. 2005) (holding that a delay of 158 days after filing the initial due process complaint "unquestionably constitutes denial of [the student's] right to a Free Appropriate Public Education ("FAPE") and therefore irreparable harm.")

75.    NJDOE responded to the USDOE noncompliance letter on August 6, 2019. NJDOE claimed it had "updated its policies and procedures concerning the conduct of due process hearings." As corrective actions to address the findings of noncompliance, NJDOE asserted that (a) it "directed Administrative Law Judges (ALJs) to limit granting requests to extend the 45-day timeline to resolve due process hearings; and required ALJs to submit data to the NJDOE on a monthly basis detailing information concerning due process hearings such as, the number of due process hearings conducted and resolved, and the number of extensions of the 45-day timeline requested, including the party seeking the extension of time and the reason for the request;" (b) it and the OAL will implement an Independent Hearing Officer (IHO) pilot program during state fiscal year 2020 that will utilize contracted independent hearing officers (IHOs) to preside over special education due process hearings. The Department will issue a Request for Qualifications (RFQ) in order to contract with individuals who have demonstrated experience in special education, law, and/or dispute resolution;" and (c) it "will assign an NJDOE designee to work directly with ALJs to ensure the scheduling of due process hearings

remains in compliance with the timelines set forth in the Individuals with Disabilities Education

Act (IDEA). The NJDOE designee will also ensure ALJs obtain ongoing and regular training and

professional development in special education law and procedures, legal writing, and settlement

negotiations. The NJDOE designee will work with ALJs to develop regulations governing the

conduct of due process hearings to ensure compliance with the IDEA and relevant federal and

state regulations. The NJDOE designee will also work with ALJs to ensure the collection and

reporting of accurate dispute resolution data."

76.     However, State Defendants did none of the items it represented to the USDOE in

the August 6, 2019 letter.

77.     On January 14, 2020, Peggy McDonald, then Assistant Commissioner of

Education ("McDonald"), and Ellen Bass, then Acting Director and Chief ALJ of the OAL

("Bass"), wrote a further letter to the USDOE.  In the letter, McDonald and Bass wrote that in

addition to the corrective actions described in the August 6, 2019 letter, "our agencies continue

to collaborate to ensure special education due process hearings are conducted in compliance with

the timelines set forth by the Individuals with Disabilities Education Act (IDEA)."  Without

advising this Court as to its actions, the two agencies told USDOE that it had issued proposed

guidelines "governing the conduct of special education due process hearings" and had issued a

Broadcast Memorandum to stakeholders for input on the proposed guidelines, which would then

go into effect less than two months later on March 2, 2020.  The letter promised that

"Additionally, each month, the OAL will collect and report to the NJDOE specific due process

hearing data, including the number of due process hearings conducted, the number of hearings

resolved, the number of hearings pending, and the number of hearings with extended timelines,

including the party seeking the extension of time and the reason for the request" and that they

would designate more ALJs to be special education hearing officers, create an Assignment Judge for special education cases, and provide training.

78.     However, like the actions described in the August 6, 2019 letter, State Defendants did none of the items it represented to the USDOE in the January 14, 2020 letter.

79.     On December 11, 2023, Class Counsel in the *CP Class Action* filed a Motion for Preliminary Approval of a Settlement Agreement and Consent Order to settle that case.  The two issues in that case were NJDOE's compliance with the 45 Day Rule and the Adjournment Rule. Therefore, settlement of that case has mooted those issues in the present case with respect to the NJDOE only.

80.     However, OAL is not a party to the *CP Class Action* and has exhibited behaviors to indicate the ALJs do not intend to comply with either the settlement in that case, the corrective actions it represented USDOE, or the 45 Day Rule or Adjournment Rule.  The OAL is the real party in interest who has control over compliance with this Rule because it sets the hearing dates and the ALJs issue the final decisions.  Although NJDOE legally has oversight responsibility and ultimate liability for noncompliance, the OAL is sabotaging compliance despite receipt of federal funds via NJDOE.

**FACTUAL BACKGROUND – J.A. Family Due Process Cases**

JA DP Case #1

81.     On May 24, 2017, the J.A. Family filed a Request for Due Process Hearing *pro se* with the NJDOE OSEP, captioned *J.A. and J.A. o/b/o J.A. v. Monroe Twp. Board of Education*, Agency Ref. No. 2017-26280 ("JA DP Case #1").

82.     On May 25, 2017, Cathy Anthony, NJDOE's Coordinator of Dispute Resolution for the Office of Special Education ("OSE"), sent an acknowledgment of the Due Process

Request to Plaintiffs and copied to Charles Earling, then Superintendent of MTBOE; John Bersh; and John J. Armano, Esq., then counsel for MTBOE, and stated that "no change can be made to the student's classification, program or placement, unless both parties agree to the change." This is the notification of 'Stay Put'.

83.    Mediation of JA DP Case #1 was conducted on June 19, 2017 and was unsuccessful because the school district did not negotiate in good faith with the J.A. Family. The J.A. Family had filed a previous due process complaint and because the school district was successful in the prior case, the LEA retaliated by refusing to settle the new dispute because it knew the system for dispute resolution in New Jersey is broken.

84.    JA DP Case #1 was transmitted from NJDOE to the OAL on June 19, 2017 and assigned OAL Dkt. No. EDS 08588-17. A transmittal letter with a hearing notice was sent to the parties. A final decision in JA DP Case #1 should have been issued no later than August 7, 2017 according to the 45 Day Rule.

85.    JA DP Case #1 was scheduled for hearing on July 6, 2017 at 10:00 a.m. before Administrative Law Judge Lisa James-Beavers ("ALJ Beavers") at OAL's offices in Trenton, NJ.

86.    The June 19, 2017 Notice of Due Process Hearing Transmittal to the Office of Administrative Law in JA DP Case #1 states in pertinent parts:

  a.    "Parents and Guardians have a right to examine relevant school records relating to their child. If you have not seen those records, contact the Board of Education immediately;"

  b.    "All evidence including documents and summaries of expected testimony that either party intends to use at the hearing must be disclosed to the other party at least 5 days before the hearing. If you do not comply with this requirement, you may be prevented from presenting the evidence at the hearing;"

  c. "Legal briefs and other memoranda or argument cannot be submitted after the hearing;"

  d. "If you do not attend the hearing, the judge may dismiss your case or order that an action requested by the other side be granted;" and

  e. "The procedure for this hearing is fully set out in the Uniform Administrative Procedure rules N.J.A.C. 1:6A-1.1 et seq. and N.J.A.C. 1:1-1 et seq."

87. Indeed, the June 19, 2017 transmittal letter does not indicate that the July 6, 2017 date was for a settlement conference. The term "settlement conference" does not appear anywhere on the transmittal letter, while the term "hearing" appears fifteen (15) times.

88. ALJ Beavers did not hold a hearing in JA DP Case #1 on July 6, 2017. Instead, ALJ Beavers held a settlement conference on that date in accordance with the OAL "Settlement Thursday" practice, *see infra*, yet the case did not settle. There is no hearing transcript for July 6, 2017 and the case was reassigned to ALJ Jeffrey R. Wilson ("ALJ Wilson").

89. A pre-hearing conference was held before ALJ Wilson on September 27, 2017, **ninety six (96) days** after the end of the resolution period. The date was set according to ALJ Wilson's schedule as neither party requested an adjournment during this period.

90. On October 3, 2017, ALJ Wilson issued a Prehearing Order setting the due process hearing in JA DP Case #1 for January 8, 2018, **one hundred ninety nine (199) days** after the end of the resolution period. Neither party requested an adjournment during this period.

91. On November 17, 2017, J.A. Family's counsel filed an Appearance and pre-trial motions in JA DP Case #1. The motions did not request an adjournment of the January 8, 2018 hearing date.

92. ALJ Wilson scheduled a status conference in JA DP Case #1 for December 20, 2017. During the status conference, ALJ Wilson set briefing schedules on the two pending

motions over Plaintiffs' objections.  The briefing schedules extended beyond the January 8, 2018 hearing date and the final briefs were due **two hundred sixty two (262) days** from the end of the resolution period.

93.    ALJ Wilson *sua sponte* adjourned the due process hearing to March 27, 2018, **two hundred seventy-seven (277) days** from the end of the resolution period, without a request for adjournment by either party.

94.    ALJ Wilson did not hold a hearing on March 27, 2018, but rather held a telephone status conference on the case.  During the March 27, 2018 status conference, ALJ Wilson further adjourned the due process hearing *sua sponte* to an unknown date in the future.  Neither of the parties to JA DP Case #1 requested the adjournment.

95.    On May 1, 2018, the J.A. Family inquired of ALJ Wilson the status of the pending motions and the due process hearing, reminding him of the 45 Day Rule.

96.    A few hours later on May 1, 2018, **three hundred twelve (312) days** from the end of the resolution period, ALJ Wilson denied all of the pending motions, including a motion to amend the due process complaint, except the motion to enforce Stay Put and awarded Plaintiffs compensatory education for the period when Stay Put was not upheld by the school district.  ALJ Wilson further scheduled the hearing of JA DP Case #1 for June 11, 2018, **three hundred fifty-three (353) days** from the end of the resolution period.

97.    Still no hearing had occurred and no future hearing date was scheduled for JA DP Case #1.

98.    Upon information and belief, ALJ Wilson issued the May 1, 2018 Order out of spite and in retaliation for Plaintiffs' objections for the delays in violation of the 45 Day Rule.

99.     On May 23, 2018, the J.A. Family filed the original Complaint in this action naming, among others, ALJ Wilson as a defendant, seeking relief for violation of the 45 Day Rule.  As a result, ALJ Wilson recused himself from JA DP Case #1.

100.     Shortly thereafter, JA DP Case #1 was reassigned to ALJ John Kennedy ("ALJ Kennedy") and the OAL issued new hearing dates for October 1, 2018, October 5, 2018, October 15, 2018, and October 29, 2018, all of which are in excess of **four hundred sixty-four (464) days** from the end of the resolution period.

### JA DP Case #2

101.     Because ALJ Wilson denied the motion to amend the due process case in JA DP Case #1, the J.A. Family filed a second Request for Due Process Hearing on May 22, 2018 for the ongoing special education disputes with the school district.  The case was assigned Agency Reference No. 2018-28138 ("JA DP Case #2").

102.     The 30-day resolution period for JA DP Case #2 ended on June 21, 2018.  The parties did not request any continuation of the resolution period.

103.     Mediation was scheduled for JA DP Case #2 on August 2, 2018, 72 days after the filing of the due process complaint and **41 days** after the end of the resolution period.  Despite the J.A. Family, their counsel, and the mediator traveling to Monroe Township for the mediation, the LEA acted in bad faith by refusing to participate in the mediation and it was cancelled before it began.  The case was then immediately transmitted to the OAL.

104.     JA DP Case #2 was transmitted from NJDOE to the OAL on August 9, 2018, assigned OAL Docket No. EDS 11524-18 and scheduled for a hearing before ALJ Ellen Bass ("ALJ Bass") on August 16, 2018 at 9:00 a.m. at the OAL's Trenton offices.  The standard form transmittal letter and hearing notice were issued to the parties.

105.    The August 9, 2018 transmittal letter in JA DP Case #2 does not indicate that the August 16, 2018 date was for a settlement conference.  The term "settlement conference" does not appear anywhere on the transmittal letter, while the term "hearing" appears fifteen (15) times.

106.    A final decision in JA DP Case #2 was now due on or before September 17, 2018 in accordance with the 45 Day Rule.

107.    On August 14, 2018, the LEA filed a motion to consolidate JA DP Case #2 with JA DP Case #1 on the basis the cases involved the "same set of facts" even though the LEA had opposed Plaintiffs' motion to amend the due process case in JA DP Case #1.  The motion was granted by ALJ Kennedy on the same day.  Thus, no hearing was held on August 16, 2018 in JA DP Case #2 because in his Order, ALJ Kennedy assigned the same "hearing dates [as JA DP Case #1] in October 2018."

JA DP Case ##1 and 2 Consolidated

108.    The OAL issued a hearing notice for October 1, 2018, which includes the Five-Day Exchange Rule language and other warning language.  October 1, 2018 is **469 days** after JA DP Case #1 was transmitted to the OAL.

109.    On September 24, 2018, the J.A. Family served their Five-Day Exchange binder for the consolidated cases on the school district's counsel.  September 24, 2018 is five (5) business days prior to October 1, 2018.

110.    The school district did not submit its Five-Day Exchange until September 25, 2018, which is only four (4) business days prior to October 1, 2018.

111.    On September 25, 2018, the J.A. Family filed a Motion to Preclude Evidence against the school district for violation of the Five-Day Exchange Rule.  The school district did not oppose the motion prior to October 1, 2018.

112.    On the first day of hearing, October 1, 2018, ALJ Kennedy heard oral argument on the J.A. Family's Motion to Preclude Evidence.  During oral argument, ALJ Kennedy indicated he would permit the school district to present evidence and would issue an order to that effect.  He permitted the school district to argue the motion, even though they had not opposed it prior to the hearing.  He also allowed the school district to file their written opposition on October 2, 2018.  The J.A. Family's counsel then orally moved to stay the case pending interlocutory appeal of the denial of the Motion to Preclude Evidence.

113.    ALJ Kennedy issued his Order and ruling on October 2, 2018 denying the J.A. Family's Motion to Exclude Evidence and staying the case pending the appeal.

114.    ALJ Kennedy's Order dated October 2, 2018 did not enforce the Five-Day Exchange Rule or the 5 days language and warning in the hearing notices issued in the consolidated cases.

115.    The J.A. Family filed an interlocutory appeal of ALJ Kennedy's October 2, 2018 Order in this Court bearing Civil No. 1:18-cv-14838 ("Interlocutory Appeal").

116.    During the Interlocutory Appeal in this Court, the school district continued to violate Stay Put.  J.A. Family's counsel wrote to NJDOE OSEP in May 2019 requesting that it enforce ALJ Wilson's May 1, 2018 Order on Stay Put, but in July 2019 NJDOE refused to enforce the Order and Compensatory Education award despite the J.A. Family having filed two due process cases.  NJDOE told the J.A. Family they would have to file another Request for Emergent Relief in the OAL.

117.    On August 22, 2019, the J.A. Family filed a second Request for Emergent Relief because the school district was violating J.A.'s Stay Put 11/14/16 IEP.

118.    ALJ Kennedy entered an Order dated September 12, 2019 merely confirming but not enforcing the Stay Put 11/14/16 IEP, stating in pertinent part: "an award for compensatory education is not appropriate at this time as a full hearing has yet to be conducted. Compensatory education shall be considered after a full hearing is conducted."

119.    The school district ignored this Order and continued to violate the Stay Put Rule.

120.    JA DP Case ##1 and 2 consolidated were stayed until U.S. District Judge Hillman ordered the parties to return to the OAL to complete the hearing, dismissing the interlocutory appeal without prejudice.

121.    Shortly after JA DP Case ##1 and 2 consolidated were remanded to the OAL, Plaintiffs' counsel became aware of an *ex parte* communication between ALJ Kennedy and the school district's counsel, John Armano, Esq., in a prior due process case filed by Plaintiffs *pro se*. Plaintiffs requested that ALJ Kennedy recuse himself from JA DP Case ##1 and 2 consolidated because of this new fact.

122.    Almost immediately thereafter, ALJ Kennedy recused himself from JA DP Case ##1 and 2 consolidated and they were reassigned to ALJ Catherine Tuohy ("ALJ Tuohy").

123.    ALJ Tuohy scheduled a hearing in JA DP Case ##1 and 2 consolidated for August 13, 2020. The hearing notice includes the Five-Day Exchange Rule and other standard language.

124.    Accounting for the stay during the Interlocutory Appeal, August 13, 2020 is **491 days** after JA DP Case #1 was transmitted to the OAL. No party to JA DP Case ##1 and 2 consolidated requested an adjournment between July 22, 2020 and August 13, 2020.

125.    Instead of holding a hearing on August 13, 2020, ALJ Tuohy conducted a status conference despite the language of the notice that it was to be a "hearing".

126.    During the status conference on August 13, 2020, ALJ Tuohy granted additional adjournments of the hearing dates based on the school district's counsel's schedule as a municipal prosecutor with those duties occurring on Tuesdays, Wednesdays, and Thursdays. The J.A. Family objected to the hearing dates being dependent upon counsel's work schedule, but ALJ Tuohy overruled the objection and scheduled hearing dates of September 21, October 2, October 23, November 6, November 16, November 20, December 4, and December 11.

127.    The J.A. Family's counsel sent a letter to ALJ Tuohy dated August 14, 2020 asserting objections to the hearing in the JA DP Case ##1 and 2 consolidated based on *inter alia* violation of the 45 Day Rule, failure to enforce the Five-Day Exchange Rule, violation of the Adjournment Rule, and the proposed hearing dates.  ALJ Tuohy ignored all of those objections.

128.    Hearings were held in JA DP Case ##1 and 2 consolidated before ALJ Tuohy via Zoom on September 21, 2020; October 2, 2020; October 23, 2020; November 16, 2020; November 20, 2020; and December 4, 2020.

129.    At the close of the hearings in the JA DP Case ##1 and 2 consolidated, ALJ Tuohy directed the parties to submit closing briefs, over the J.A. Family's counsel's objections as further violating the 45 Day Rule and the warnings against post-hearing briefs in the hearing notices.

130.    Accounting for the stay during the Interlocutory Appeal, the post-hearing briefs were submitted on December 11, 2020, **612 days** after JA DP Case #1 was transmitted to the OAL.  No party to JA DP Case ##1 and 2 consolidated requested an adjournment between August 13, 2020 and December 11, 2020.

131.    On February 22, 2021, ALJ Tuohy issued her Final Decision in JA DP Case ##1 and 2 consolidated.  February 22, 2021 is **73 days** after the closing briefs were submitted on December 11, 2020, which by itself violates the 45 Day Rule.

132.    Accounting for the stay during the Interlocutory Appeal, February 22, 2021 is **685 days** after JA DP Case #1 was transmitted to the OAL.  No party to JA DP Case ##1 and 2 consolidated requested an adjournment between December 11, 2020 and February 22, 2021.

133.    ALJs Wilson, Kennedy, and Tuohy all violated the 45 Day Rule.

JA DP Case #3

134.    The J.A. Family demanded that the school district fund an Independent Education Evaluation ("IEE") – called an Auditory Evoked Potential[6] test – for J.A. pursuant to IDEA's regulation 34 C.F.R. §300.502(b)(1), via letter dated February 17, 2020.  The school district had never performed an evaluation of J.A.'s Auditory Processing Disorder ("APD").

135.    Instead of funding the IEE, the school district filed a due process complaint with NJOSEP on March 5, 2020 against the J.A. Family seeking to deny the IEE and it was assigned Agency Reference No. 2020-31368 ("JA DP Case #3").

136.    On March 14, 2020, the J.A. Family timely filed their Answer to the complaint and repeatedly averred that the school district filed the complaint in bad faith because it had never conducted an evaluation for J.A.'s Central Auditory Processing Disorder ("CAPD") and never accepted the prior private evaluations and recommendations submitted by the J.A. Family.

---

[6] Also called a Brainstem Auditory Evoked Potentials ("BAEP") or Brainstem Auditory Evoked Response ("BAER") test.  It is a test that "measures the functioning of the auditory nerve and auditory pathways in the brainstem."  *See* "What are brainstem auditory evoked potential (BAEP) tests?," Evans and Benbadis *et al.*, *Medscape* (Oct. 25, 2019), https://www.medscape.com/answers/1137451-176427/what-are-brainste.

137.    A resolution meeting was held via conference call on May 19, 2020, after a 60 day extension due to the COVID-19 lockdown, but failed to resolve the case.  Again, the school district did not negotiate in good faith knowing that the first hearing date would be another "Settlement Thursday" and otherwise the case was likely to drag out in the OAL.

138.    JA DP Case #3 was assigned OAL Dkt. No. EDS 4821-2020 S and a hearing was scheduled before ALJ MaryAnn Bogan ("ALJ Bogan") for June 4, 2020 at 9:00 a.m. at the OAL's Trenton offices.  The transmittal letter and hearing notice were the standard form, which still included the language "Zero federal days used" despite the USDOE's instruction not to more than a year prior.

139.    The May 19, 2020 transmittal letter and Hearing Notice in JA DP Case #3 do not indicate that the June 4, 2020 date was for a settlement conference.  The term "settlement conference" does not appear anywhere on the transmittal letter, while the term "hearing" appears fifteen (15) times.

140.    Due to a scheduling conflict, the J.A. Family requested a "brief adjournment" of the June 4, 2020 hearing date in JA DP Case #3 and, with the consent of the school district, the case was rescheduled by the OAL for hearing on June 18, 2020 with the issuance of an amended Hearing Notice containing identical language to the original Hearing Notice.

141.    The Notice of Filing and Hearing issued by the OAL in JA DP Case #3 do not indicate that the June 18, 2020 date was for a settlement conference.  The term "settlement conference" does not appear anywhere on the transmittal letter, while the term "hearing" appears seven (7) times.

142.    In anticipation of and preparation for the hearing, the J.A. Family requested access to J.A.'s records and that the documents be produced by June 8, 2020 pursuant to the

Procedural Safeguards under IDEA so that the J.A. Family could adequately prepare for the hearing in the JA DP Case #3 and comply with the Five-Day Exchange Rule.

143.    The school district denied the J.A. Family access to J.A.'s records asserting that there was no hearing on June 18, 2020 and knowing that the State Defendants would not enforce parents' rights to timely access those records.

144.    The J.A. Family duly and properly served a subpoena on the school district's former counsel as a knowledgeable witness relating to the IEE dispute.

145.    Despite the lack of documents from the school district and the time restrictions involved, the J.A. Family prepared extensively for the June 18, 2020 hearing in the JA DP Case #3.

146.    The J.A. Family hand-delivered their Five-Day Exchange to the school district on June 11, 2020 and also confirmed same via email on that same date.

147.    The school district did not provide its Five-Day Exchange by close of business on June 11, 2020 and did not produce any documents prior to the scheduled hearing date of June 18, 2020 knowing that State Defendants would not enforce those Procedural Safeguards.

148.    The J.A. Family filed a Motion to Bar Evidence in the JA DP Case #3 against the school district premised upon the school district's failure to comply with the Five-Day Exchange Rule.

149.    The OAL acknowledged receipt of the Motion to Bar Evidence on June 12, 2020, but indicated that ALJ Bogan would address the motion on June 18, 2020.

150.    The J.A. Family replied to the OAL that June 18, 2020 was a hearing date and that the Motion to Bar Evidence should be decided prior to that date.

151.    The OAL denied that June 18, 2020 was a hearing date and ALJ Bogan's administrative assistant responded via email, "In accordance with my email dated June 11, 2020 . . . this case is scheduled for a settlement conference on June 18, 2020."

152.    The J.A. Family directed the OAL's attention to the June 18 Hearing Notice and stated, "Note that nowhere in the attached Hearing Notice is the phrase 'settlement conference'. [The J.A. Family] demand that 6/18 be a hearing or we will have to seek relief from either the OAL, NJDOE and/or the federal court."

153.    Counsel for the school district then joined in the debate, by and through counsel, stating, "I have had the opportunity to review this email chain. The proceeding scheduled for June 18, 2020 in this matter is a settlement conference. . . . As an attorney who has appeared before the OAL in special education matters in the past, Mr. Thurston is aware that the first appearance before the ALJ is a settlement conference and that **Thursdays are reserved for settlement conferences** so that the parties have the opportunity to explore resolution. . . . To be clear, **the June 18, 2020 is not an evidentiary hearing**. My client and I look forward to the settlement conference with Judge Bogan."

154.    The J.A. Family, by and through counsel, sent a final email to make the J.A. Family's position unequivocal. "I would like to emphasize that Ms. Dev [counsel for the school district] (a) does not and cannot speak for me; (b) is not the judge on this case, nor is she a judge or representative of the OAL; and (c) despite what the 'common practice' may be, it is in direct violation of IDEA, its regulations, and the NJAC. The first scheduled date according to the Notice issued by the OAL is a HEARING date and Ms. Dev has no power to alter that. It is actually Ms. Dev (and other school district counsel) who abuse the system, inherently flawed in design by the NJDOE and OAL, and needlessly increase the cost of litigation and the violation of

the 45 Day Rule, for which there is already a pending class action[7]. . . . <u>It is again an abuse of the system by school districts and their attorneys to resist settlement during the 30 Day Resolution period knowing that they will get another date to delay and pretend to discuss settlement in the OAL</u>."

155.    As a result of the email exchange on June 12, 2020, the OAL reassigned the JA DP Case #3 to ALJ Ascione and set a prehearing conference for June 16, 2020.

156.    During the June 16, 2020 conference call in the JA DP Case #3, ALJ Ascione refused to grant the J.A. Family's Motion to Bar Evidence and stated, "<u>That's not the procedure in the OAL.  [the school district] gets 10 days to respond to the motion and then 5 days for a reply</u>."  The J.A. Family, by and through counsel, voiced disagreement with ALJ Ascione as it was contrary to federal law and regulations.  ALJ Ascione asked when the parties were ready for hearing.  The J.A. Family responded, "Thursday, June 18."  ALJ Ascione responded, "<u>That is disingenuous based on the customs of the OAL</u>."  The J.A. Family requested that ALJ Ascione put all of his statements / rulings into a written Order.  ALJ Ascione snapped, saying, "I have 7 days to issue a prehearing Order."  ALJ Ascione then set up a briefing schedule on the pending motions as follows: (1) response to the Motion to Bar Evidence due 6/22/2020 and reply due 6/29/2020; and (2) the school district's motion to suppress Armano subpoena must be filed by 6/19/2020, response due 6/29/2020, and reply due 7/6/2020.  Finally, ALJ Ascione set hearing dates of July 9 and 10, 2020 via Zoom.  All dates were set by ALJ Ascione and without any request for adjournment by the parties.

---

[7] This is a reference to the pending class actions captioned *J.A. v. New Jersey Department of Education, et al.*, U.S.D.C. D.N.J. Civil No. 1:18-cv-09580-NLH-KMW and *C.P., et al. v. New Jersey Department of Education, et al.*, U.S.D.C. D.N.J. Civil No. 1:19-cv-12807-NLH-KMW.

157.    The school district filed its motion to quash the Armano subpoena and the J.A. Family timely filed opposition to the motion to quash.

158.    One day after the scheduled June 18 Hearing Date, ALJ Ascione issued a Prehearing Order for the JA DP Case #3 ruling (a) "Discovery" to be completed by June 30, 2020; (b) any discovery issue will be presented at the hearing; (c) exchange of witness lists shall be completed on or before July 2, 2020; (d) motions to exclude evidence or witnesses shall be filed electronically no later than June 22; and (e) confirmed the hearing dates of July 9 and 10, 2020.

159.    On June 22, 2020, the school district filed its opposition to the J.A. Family's Motion to Bar Evidence, arguing that it did not violate the Five-Day Exchange Rule because June 18, 2020 was not a real "hearing date".  The school district also argued that it had not denied access to J.A.'s records because it was a "discovery request" rather than an IDEA records request and that ALJ Ascione set June 30, 2020 as the deadline for discovery.  The school district took these positions because it knew that State Defendants historically did not enforce these Procedural Safeguards and would not in this case.

160.    The J.A. Family filed a Motion for Summary Decision on June 24, 2020 in the JA DP Case #3.  The school district submitted a letter to ALJ Ascione arguing that the motion was untimely because it violated the motion schedule under N.J.A.C. 1:1-12.5(a), knowing that State Defendants wrongfully rely upon the UAPR in special education cases and would support their position.  The J.A. Family responded via letter to ALJ Ascione that N.J.A.C. 1:1-12.5(a) does not apply because N.J.A.C. §6A:14 and 1:6A govern special education cases and supersede N.J.A.C. 1:1, which only applies when there is no conflict with the special education regulations.

161.    ALJ Ascione issued a letter ruling on several matters in the JA DP Case #3, including (a) the J.A. Family's motion for summary disposition [sic] is untimely; (b) limiting the J.A. Family's presentation of documentary evidence, including previous rejections by the school district of Plaintiffs' private evaluations; (c) quashing the Armano subpoena; (d) "I will not be addressing any issues in this matter prior to July 9, as I am not physically in the office until that date, and my administrative assistant has been furloughed," using the pandemic as an excuse; and (e) limiting the J.A. Family's testimony to "a current doctor or educational consultant with knowledge of the benefits educationally of the proposed evaluation.  No other testimony will be considered."  The following day, the J.A. Family wrote to ALJ Ascione objecting to these rulings as errors of law.

162.    Since ALJ Ascione had not ruled yet on their motion, the J.A. Family renewed their Motion to Bar Evidence.  The J.A. Family also objected to ALJ Ascione's limitations on evidence on the basis that both the New Jersey regulations and the caselaw err on the side of admissibility in administrative cases.

163.    Having still not received any rulings on various pending motions and objections, the J.A. Family wrote again to ALJ Ascione on July 8, 2020 raising a number of issues to be resolved prior to the hearing.

164.    ALJ Ascione disregarded all of the J.A. Family's objections and motions and the hearing was held on July 9, 2020.

165.    On July 16, 2020, ALJ Ascione issued his final Decision in the JA DP Case #3 which contained numerous legal and factual errors.

## FACTUAL BACKGROUND – L.S. Family Due Process Case

166.    A due process case was filed by the L.S. Family in 2017 and transmitted to the OAL with the caption *Carolina Monteiro o/b/o L.S. v. Monroe Twp. BOE*, OAL Dkt. No. EDS 04997-2017 S.

167.    The parties appeared before an ALJ at the 10 Day Peremptory Hearing Date, but as per OAL practice it was a "Settlement Thursday". After the ALJ informed the L.S. Family that it would be months before a hearing would be held in the case, the L.S. Family took the settlement offer by the LEA of evaluations for L.S. and a severely reduced attorney's fee. The settlement was finalized on May 11, 2017.

168.    After evaluations were performed, the LEA's Child Study Team placed L.S. at the Burlington County Special Services School District without fully informing the parent, C.M., about the placement.

169.    On May 17, 2018, the L.S. Family demanded that the LEA fund comprehensive Independent Educational Evaluations (IEEs) to determine a more proper placement for L.S.

170.    Instead of funding the IEEs, the school district filed a due process complaint with NJDOE on June 4, 2018 against the L.S. Family seeking to deny the IEEs and it was captioned *Monroe Township Board of Education v. Carolina Monteiro o/b/o L.S.* and assigned Agency Reference No. 2018-28183 ("LS DP Case").[8]

171.    On June 11, 2018, the L.S. Family timely filed an Answer and Cross-Petition against the LEA in the LS DP Case seeking an alternate placement for L.S., which was assigned Agency Reference No. 2018-28234.

---

[8] The LS DP Case involves the same LEA/school district as the multiple J.A. Family cases.

172.    The two petitions were informally consolidated and the LS DP Case was transmitted to the OAL on July 5, 2018 and assigned OAL Dkt. Nos. EDS 09544-2018 S and EDS 09541-2018 S [Consolidated]. A hearing was scheduled before ALJ John Futey ("ALJ Futey") for July 19, 2018 at 11:00 a.m. at the OAL's Trenton offices. The transmittal letter and hearing notice were the standard form, with the usual warnings.

173.    The July 5, 2018 transmittal letters and Hearing Notices in the LS DP Case do not indicate that the July 19, 2018 date was for a settlement conference. The term "settlement conference" does not appear anywhere on the transmittal letter, while the term "hearing" appears fifteen (15) times.

174.    A final decision in LS DP Case was now due on or before August 19, 2018 in accordance with the 45 Day Rule.

175.    On July 6, 2018, counsel for the school district wrote to ALJ Futey requesting an adjournment of the July 19, 2018 hearing date because "I am not available on the scheduled date as I am the Municipal Prosecutor for Glassboro and Franklin Township and will be in court session all day." The request was granted and the hearing in LS DP Case was rescheduled for August 16, 2018.

176.    ALJ Futey did not hold a hearing on August 16, 2018, but held a settlement conference as per the OAL's practice of "Settlement Thursday", forty-two (42) days after the LS DP Case was transmitted to the OAL.

177.    ALJ Futey sua sponte adjourned the hearing to September 13, 2018, seventy (70) days after transmittal to the OAL. Neither of the parties to LS DP Case requested an adjournment.

178.    The LS DP Case did not settle at the September 13, 2018 settlement conference. The case was re-assigned to ALJ Dean Buono ("ALJ Buono") who, based on his own calendar, scheduled a status conference call on September 20, 2018, seventy-seven (77) days after transmittal to the OAL. Neither of the parties to LS DP Case requested this adjournment.

179.    ALJ Buono did not hold a hearing on September 20, 2018, but rather conducted a "pre-hearing conference" and then issued a Pre-Hearing Order. The Pre-Hearing Order scheduled another status conference for September 28, 2018 and set hearing dates in 2019 of April 29, April 30, May 1, and May 2, all of which are in excess of two hundred ninety-eight (298) days after transmittal to the OAL. Neither of the parties to LS DP Case requested this adjournment.

180.    Since so much time elapsed between when the LS DP Case was filed and would be eventually heard, the L.S. Family filed a Petition for Emergent Relief with ALJ Buono on April 3, 2019 as per the regulations. See N.J.A.C. 6A:14-2.7(r) and (s) ("After transmittal of a request for a due process hearing or an expedited hearing, any application for emergent relief shall be made directly to the Office of Administrative Law.")

181.    On April 8, 2019, ALJ Buono formally consolidated all of the matters related to the LS DP Case and scheduled a hearing for April 17, 2019.

182.    On April 17, 2019, ALJ Buono held a hearing on the emergent relief portion of the LS DP Case and then encouraged the parties to settle the case. The parties reached a tentative settlement leaving some terms open and ALJ Buono set a "ghost date" of June 5, 2019. June 5, 2019 is three hundred thirty-five (335) days after transmittal to the OAL.

183.    On or about May 9, 2019, the parties agreed to settle the LS DP Case. The settlement involved temporary homebound instruction, placement out of district after the temporary homebound instruction, and attorney's fees of $4,000.00. However, total fees and

costs incurred as of that date were $42,198.66. The reduced fees and costs offer was accepted by the L.S. Family because they were threatened by the LEA's counsel of not getting the merits portion of the settlement and facing a hearing more months in the future. This is because the LEA, having had over a hundred special education due process cases in the OAL, knew the system was broken and ultimately would favor the school district and that the OAL would not impose prevailing party fees on the LEA.

184.    On June 4, 2019, counsel for the LEA requested and was granted an adjournment to approve the final version of the settlement agreement.

185.    On June 13, 2019, ALJ Buono entered a Final Decision Approving Settlement in the LS DP Case. June 13, 2019 is three hundred forty-three (343) days after transmittal to the OAL.

## FACTUAL BACKGROUND – R.M. Family Due Process Case

186.    The R.M. Family filed a due process complaint with the NJDOE on November 27, 2018 against the LEA disputing declassification and seeking to remain eligible for special education and related services and it was captioned *C.M. and J.M. o/b/o R.M. v. Monroe Township Board of Education* and assigned Agency Reference No. 2018-29072 ("RM DP Case").[9]

187.    By this time, the LEA involved in the RM DP Case, namely Monroe Township Board of Education, had been involved in nearly 100 special education due process cases.

188.    On December 14, 2018, the LEA filed a cross-complaint for a due process hearing with NJDOE against the R.M. Family seeking to deny an IEE to R.M. and it was captioned

---

[9] The RM DP Case involves the same LEA/school district as the multiple J.A. Family cases and the L.S. Family case.

*Monroe Township Board of Education v. C.M. and J.M. o/b/o R.M.* and assigned Agency Reference No. 2019-29155. The cross-complaint was informally consolidated with the R.M. Family petition in the RM DP Case.

189.    The parties waived the 30 Day Resolution Period and the RM DP Case was transmitted to the OAL on December 28, 2018 and assigned OAL Dkt. Nos. EDS 18350-2018 S and EDS 18349-2018 S [Consolidated].[10] A hearing was scheduled before ALJ Crowley for January 3, 2019 at 1:30 p.m. at the OAL's Trenton offices. The transmittal letter and hearing notice were the standard form, with the usual warnings.

190.    The December 28, 2018 transmittal letters and Hearing Notices in the RM DP Case do not indicate that the January 3, 2019 date was for a settlement conference. The term "settlement conference" does not appear anywhere on the transmittal letter, while the term "hearing" appears fifteen (15) times.

191.    A final decision in RM DP Case should have been issued no later than February 11, 2019 according to the 45 Day Rule.

192.    ALJ Crowley did not hold a hearing on the Peremptory Hearing Date of January 3, 2019, but instead held a settlement conference as per the OAL's practice of "Settlement Thursday". ALJ Crowley advised the parties that if they didn't settle that day, the RM DP Case would be re-assigned to another ALJ and it was unlikely that a hearing date would be available for months. ALJ Crowley also advised the R.M. Family that ALJs are not permitted to include attorney's fees and costs in the settlement discussions.

---

[10] It is unclear why the earlier-filed complaint by the R.M. Family received a later-filed docket number at the OAL than the LEA complaint.

193.    The parties did not settle their dispute at the Peremptory Hearing Date because the LEA refused to resolve the merits portion of the RM DP Case and rejected discussion of attorney's fees and costs. The RM DP Case was re-assigned to ALJ Elaine Frick ("ALJ Frick") and the OAL issued a Notice of Filing and Hearing on January 9, 2019 scheduling a status conference call for February 6, 2019. February 6, 2019 is 40 days after transmittal to the OAL.

194.    The January 9, 2019 Notice of Filing and Hearing also scheduled hearings in the RM DP Case before ALJ Frick, based on her own calendar, for May 14, June 24, June 26, and June 28, 2019, which are all in excess of one hundred thirty-seven (137) from the end of the 30 Day Resolution Period and transmittal to the OAL. Neither of the parties to RM DP Case requested any of these adjournments.

195.    In the interim (approximately around mid-February 2019), the parties reached a settlement in principal of the RM DP Case. Although the R.M. Family got nearly everything they asked for in the case and were, therefore, prevailing parties, they had to settle attorney's fees and costs for nearly 50% of the incurred fees and costs. This was because the LEA knew that the OAL would not order fees on a jurisdictional basis and the R.M. Family did not want to risk losing the merits portion of the settlement.

196.    On March 5, 2019, ALJ Frick entered a Final Decision Approving Settlement in the RM DP Cases [informally consolidated].

## COUNT ONE – CLASS ACTION – SYSTEMIC VIOLATION OF THE DUE PROCESS COMPLAINT PROCEDURES

197.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

198.    One of IDEA's Procedural Safeguards guaranteed to children with disabilities and their parents is "[a]n opportunity for any party to present a complaint with respect to any matter

relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. §1415(b)(6) ("due process complaint").

199.    In New Jersey, a special education due process complaint is initiated when a person files a written "request for due process hearing" (aka "due process complaint") with NJDOE Office of Special Education Programs ("NJOSEP").  N.J.A.C. 6A:14-2.7(c).

200.    "When [NJOSEP] receives a request for a due process hearing, the matter shall be processed and, as appropriate, mediation and a due process hearing in accordance with these rules will be made available to the parties."  N.J.A.C. 6A:14-2.7(g).

201.    A special education due process complaint need only contain four (4) elements: (1) the name and address of the child; (2) the name of the school the child is attending; (3) a description of the nature of the problem of the child relating to such proposed initiation or change, including facts relating to such problem; and (4) a proposed resolution of the problem "to the extent known and available to the party at the time."  20 U.S.C. §1415(b)(7)(A)(ii); *see* N.J.A.C. 6A:14-2.7(c).

202.    The respondent may file a sufficiency challenge that the due process complaint does not meet the requirements of IDEA.  A due process complaint shall be deemed sufficient "unless the party receiving the notice notifies the hearing officer and the other party in writing that the receiving party believes the notice has not met the requirements" set forth in the preceding paragraph.  20 U.S.C. §1415(c)(2)(A) (known as a "sufficiency challenge").  A sufficiency challenge must be made within fifteen (15) days of receipt of the due process complaint.  34 C.F.R. 300.508(d)(1).  In New Jersey, a sufficiency challenge must be decided by the OAL.  N.J.A.C. 6A:14-2.7(f).

203.    If the due process complaint "is determined sufficient, the timelines for resolution activities and for conducting a due process hearing will continue."   N.J.A.C. 6A:14-2.7(f)(2).

204.    The respondent named in the due process complaint must be given notice of the request for hearing by the filing party and the party receiving the due process complaint must file a response thereto within ten (10) days.  20 U.S.C. §1415(c)(2)(B); *see* N.J.A.C. 6A:14-2.7(c).

205.    Upon information and belief, on hundreds or maybe thousands of occasions NJDOE wrongfully dismissed a family's due process complaint although it met the statutory requirements and NJDOE refused to transmit the case to the OAL.

206.    Upon information and belief, on hundreds or thousands of occasions the OAL wrongfully dismissed a family's due process complaint although no sufficiency challenge was filed by the school district.

207.    Upon information and belief, on thousands of occasions the OAL failed to enforce the IDEA provision requiring school districts to timely respond to a family's due process complaint when it should have found the school district in default.

WHEREFORE, Class Representatives, individually and on behalf of all Class members, respectfully demand relief as follows:

A.    Injunctive relief that State Defendants cease and desist dismissing special education due process complaints when such complaints meet the statutory requirements or when a school district fails to file a sufficiency challenge;

B.    Injunctive relief that State Defendants immediately begin enforcing the 10 day response rule to a family's due process complaint by entering default against any school district that does not comply;

C.      Finding that State Defendants have systemically failed to properly handle the 'pleadings' phase of special education due process cases;

D.      An award of compensatory damages in the amount of One Hundred Million Dollars ($100,000,000.00) to provide relief to those Class Plaintiffs who were affected by these violations;

E.      An award of attorneys' fees and costs for Class Plaintiffs; and

F.      For such other and further relief as the Court deems equitable and just.

## COUNT TWO – CLASS ACTION – SYSTEMIC VIOLATION OF THE STAY PUT RULE

208.     Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

209.     Under IDEA, students with disabilities are permitted to remain in their current educational placement (a/k/a "pendent placement") throughout and until completion of a dispute filed via a due process complaint.  20 U.S.C. §1415(j) ("during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . until all such proceedings have been completed.")  This is commonly known as the 'Stay Put Rule'.  New Jersey has adopted the Stay Put Rule similar to that of the federal statute.  N.J.A.C. 6A:14-2.7(u).

210.     The Third Circuit has stated, "This provision, known as the IDEA's 'stay-put rule,' serves 'in essence, as an <u>automatic preliminary injunction</u>.'" *M.R. v. Ridley School Dist.*, 744 F. 3rd 112, 117 (3rd Cir. 2014) *cert. denied*, No. 13-1547, 2015 WL 2340858 (S.Ct. May 18, 2015), *citing Drinker by Drinker v. Colonial School Dist.*, 78 F. 3rd 859, 864 (3rd Cir. 1996).

211.     The 'Stay Put Rule' reflects Congress' conclusion that a child with a disability is best served by maintaining her educational status quo until the disagreement over her IEP is resolved.  *M.R.*, 744 F. 3rd at 117.

212.     After ascertaining a student's current educational placement, the parents are entitled to an order maintaining that placement <u>without satisfaction of the usual prerequisites to injunctive relief</u>.  *M.R.*, 744 F. 3rd at 118 (emphasis added.)

213.     The filing of a due process complaint triggers the Stay Put Rule.  "The operative placement is not determined by the date the parents seek reimbursement for stay-put expenses, but by the date the dispute between the parents and the school district 'first arises' and proceedings conducted pursuant to the IDEA begin." *M.R.*, 744 F. 3rd at 124; *see also D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 492 (3ʳᵈ Cir. 2012) ("By filing the [due process] petition, [the student] triggered the IDEA's 'stay-put' requirement.").

214.     "§1415(j) states that the child shall remain in the current educational placement until all [IDEA] proceedings have been completed."  *M.R.*, 744 F. 3rd at 124; *see also* N.J.A.C. 1:6A-18.4 ("the educational placement of the pupil <u>shall not be changed</u> prior to the issuance of the decision in the case," emphasis added.)

215.     State Defendants have systemically failed to enforce the Stay Put Rule.  State Defendants have either (a) wrongfully applied the prerequisites for injunctive relief under *Crowe v. De Gioia,* 90 N.J. 126, 447 A. 2d 173 (1982) (a divorce case) instead of the 'automatic preliminary injunction' under Third Circuit precedent *M.R., supra* (a special education case); (b) unreasonably and illegally delayed enforcement until long after the due process complaint was filed; (c) illegally required parents to file a motion to enforce Stay Put; or (d) failed to enforce the Rule at all.   Such was the case in JA DP Case ##1 and 2 consolidated.  *See supra*.

216.    Further, State Defendants have systemically failed to enforce the Stay Put Rule by allowing school districts to persistently violate the Rule without consequences; failing to enjoin school districts from violating the Rule; failing to award relief to children with disabilities and their families, *e.g.* compensatory education; and/or refusing to find a denial of FAPE for such procedural violations.

217.    LEAs routinely violate the Stay Put Rule by generating a new IEP during the pendency of proceedings and implement the new IEP automatically if parents don't file a new due process complaint within 15 days in reliance upon two New Jersey regulations. *See* N.J.A.C. 6A:14-2.3(h)(2) ("The district board of education shall provide written notice at least 15 calendar days prior to the implementation of a proposed action so that the parent may consider the proposal"); and 2.3(h)(3) ("The district board of education shall implement the proposed action after the opportunity for consideration in (h)(2) above has expired unless: i. The parent disagrees with the proposed action and the district board of education takes action in an attempt to resolve the disagreement; or ii. The parent requests mediation or a due process hearing according to N.J.A.C. 6A:14-2.6 or 2.7. A request for mediation or a due process hearing prior to the expiration of the 15th calendar day in (h)2 above shall delay the implementation of the proposed action according to N.J.A.C. 6A:14-2.6(d)10 or 2.7(u).")

218.    While State Defendants have stated publicly that they do not interpret the regulations cited in the preceding paragraph to permit a school district to implement a new IEP and override Stay Put, they uniformly fail to enforce Stay Put by permitting LEAs to do just that and rule against Class Members if they have not filed a new due process case to dispute the new IEP.

219.    By failing to enforce the Stay Put Rule, State Defendants have caused serious harm to Class members by having to (a) endure unwanted changes to IEPs by school districts during pending due process cases; (b) unnecessarily incur legal fees to enforce the Stay Put Rule; and/or (c) seek interlocutory appeal of erroneous rulings on Stay Put, *e.g.* denial of Stay Put for failure to meet the *Crowe v. De Gioia* criteria, thereby causing an unreasonable delay in resolving the special education dispute.

WHEREFORE, Class Representatives, individually and on behalf of all Class members, respectfully demand relief as follows:

A.    Injunctive relief that State Defendants immediately begin enforcing the Stay Put Rule as an automatic preliminary injunction the moment a due process complaint is filed and cease and desist requiring the proof of the *Crowe v. De Gioia* prerequisites;

B.    Injunctive relief that State Defendants immediately retroactively apply the Stay Put Rule to any pending due process cases and award any appropriate relief to parents against school districts for violations of Stay Put, including but not limited to compensatory education and attorney's fees incurred to enforce the Rule;

C.    Injunctive relief that State Defendants cease and desist using the OAL as the adjudicative body of special education disputes in the State of New Jersey and replace it with another system that complies with IDEA within 3 months from a decision in this case;

D.    Finding that State Defendants have systemically failed to employ the applicable federal law on the Stay Put Rule;

**Page 49 of 107**

E.     Finding that State Defendants have systemically failed to enforce the Stay Put Rule;

F.     An award of compensatory damages in the amount of Three Hundred Million Dollars ($300,000,000.00) to provide relief to those Class Plaintiffs who were affected by these violations;

G.     An award of attorneys' fees and costs for Class Plaintiffs; and

H.     For such other and further relief as the Court deems equitable and just.

## COUNT THREE – CLASS ACTION – SYSTEMIC VIOLATION OF THE 10 DAY PEREMPTORY HEARING DATE REGULATION

220.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

221.    "Upon unsuccessful conclusion of the resolution process or mediation . . . the representative of the Office of Special Education Programs shall immediately contact the Clerk of the Office of Administrative Law and the Clerk shall assign a peremptory hearing date. The hearing date shall, to the greatest extent possible, be convenient to all parties but shall be approximately 10 days from the date of the scheduling call." N.J.A.C. 1:6A-9.1 (emphasis added.) This is known as the '10 Day Peremptory Hearing Date Rule'.

222.    "Peremptory" is not defined in the New Jersey regulations, but Black's Law Dictionary defines "peremptory" as: "Imperative; absolute; not admitting of question, delay, or reconsideration. Positive; final; decisive; not admitting of any alternative. Self-determined ; arbitrary; not requiring any cause to be shown."[11] Further, NJDOE's former director John Worthington, who was involved in development of the special education dispute procedural

---

[11] https://thelawdictionary.org/peremptory/.

regulations (N.J.A.C. 1:6A-1.1 *et seq.*), testified that 'Peremptory' within the 10 Day Peremptory Hearing Date Rule means "mandatory" and that a peremptory hearing date means a hearing must occur on that date.

223.    The standard form letter when a due process case is transmitted from NJDOE to the OAL states "A hearing before an Administrative Law Judge has been scheduled for . . . [Date, Time, Location, Judge information is inserted]." (Emphasis added.) Further, the letter states, "If you do not attend the hearing, the judge may dismiss your case or order that an action requested by the other side be granted." (Emphasis added.) In fact, as was stated in each of the Named Plaintiffs' due process cases earlier and is true for all Class Members' due process cases when they are transmitted to the OAL, the standard form transmittal letter is used which does not reference a settlement conference, but rather uses the word 'hearing' fifteen (15) times.

224.    In at least 2014 if not earlier the OAL unilaterally converted the peremptory hearing date to a mandatory settlement conference, calling it a 'pre-hearing conference', in direct violation of the 10 Day Peremptory Hearing Date Rule.  These settlement conferences are conducted every Thursday alternatively in the OAL's Trenton and Newark offices, impacting the ALJs' schedules and the 45 Day Rule.  This illegal practice came to be known as "Settlement Thursday" among the special education bar.

225.    Every special education due process case transmitted from the NJDOE to the OAL since at least 2014 – which numbers in the thousands of cases - is subject to Settlement Thursday with no option to have an actual evidentiary hearing on that date.  During those settlement conferences, the ALJs would pressure the parties to settle because, as they would say, the case would not go to hearing "for many months".

226.    Settlement Thursday was initiated to enable the OAL to distort the timeline and to cover up its historic violations of the 45 Day Rule, *see infra*, and fraudulently assert that the delays to final decision were the result of adjournments requested by the parties and/or granted by the ALJ.

227.    NJDOE condoned this conversion of the 10 Day Peremptory Hearing Date and sanctioned the continuation of this violation of the regulation.  NJDOE never enforced the 10 Day Peremptory Hearing Date Rule even when faced with a motion or request by a party to do so.

228.    In addition, it is not within the OAL's scope of authority to conduct settlement conferences.  Even though a hearing has been scheduled, it "shall not preclude voluntary ongoing efforts by the parties to settle the matter before or at the hearing," N.J.A.C. 1:6A-4.1(a), *i.e.* by the parties, not the ALJs.

229.    Settlement Thursday has created a disincentive for school districts to resolve special education disputes within the 30 Day Resolution Period, because they know they have another opportunity to mediate, this time with a school-favorable ALJ (*see infra* Systemic Violation Of The Independence Of The Adjudicating Body Of Special Education Disputes).

230.    Typically, the due process case did not resolve on Settlement Thursday because school districts and their counsel knew that parents could not likely wait months for a hearing or afford the legal fees for that period of time so would likely give up their case.  When the cases didn't resolve, it was reassigned to another ALJ and a new hearing date was given, typically many months after the peremptory hearing date.

231.    Settlement Thursday also negatively impacts the Five-Day Exchange Rule, because school districts know – despite the warning on the hearing notice – that the Peremptory

Hearing Date is not an evidentiary hearing and they will not be required to perform the Five-Day Exchange. School districts also do not comply with Class Members' requests to access student records timely before the Peremptory Hearing Date due to Settlement Thursday and therefore impede plaintiffs' due process rights. The ALJs do not enforce the Five-Day Exchange Rule because of the Settlement Thursday practice.

232. Settlement Thursday is a systemic violation of the 10 Day Peremptory Hearing Date Rule and has caused serious harm to children with disabilities and their families and therefore a denial of FAPE. It has also put a chilling effect on such families from filing a request for a due process hearing.

WHEREFORE, Class Representatives, individually and on behalf of all Class members, respectfully demand relief as follows:

A.    Injunctive relief that State Defendants immediately cease and desist using the 10 Day Peremptory Hearing Date as a mandatory settlement conference;

B.    Injunctive relief that State Defendants immediately start using the 10 Day Peremptory Hearing Date as an actual hearing date and strictly enforce all related regulations;

C.    Injunctive relief that State Defendants cease and desist using the OAL as the adjudicative body of special education disputes in the State of New Jersey and replace it with another system that complies with IDEA within 3 months from a decision in this case;

D.    Finding that State Defendants have systemically failed to enforce the 10 Day Peremptory Hearing Date Rule;

E.      Finding that State Defendants' conversion of the 10 Day Peremptory Hearing Date Rule to a mandatory settlement conference violated Class Members' due process rights;

F.      An award of compensatory damages in the amount of Seven Hundred Fifty Million Dollars ($750,000,000.00) to provide relief to those Class Plaintiffs who were affected by these violations;

G.      An award of attorneys' fees and costs for Class Plaintiffs; and

H.      For such other and further relief as the Court deems equitable and just.

## COUNT FOUR – CLASS ACTION – SYSTEMIC VIOLATION OF THE 30 DAY RESOLUTION PERIOD

233.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

234.    From the date of filing the due process complaint, the parties have thirty (30) days within which to settle or otherwise resolve the dispute.  20 U.S.C. §1415(f)(1)(B)(ii); *see* N.J.A.C. 6A:14-2.6(d)(3) and 2.7(h).  This is known as the '30 Day Resolution Period'.  If the dispute is not resolved during this period, the case is immediately transmitted to a hearing officer and proceeds to hearing and all events on the timeline begin.  20 U.S.C. §1415(f)(1)(B)(ii); N.J.A.C. 6A:14-2.7(h)(4) (NJDOE transmits the case to the OAL for a due process hearing); *see also* N.J.A.C. 1:6A-3.1.

235.    There are essentially three options for the parties to resolve the dispute during the 30 Day Resolution Period.  The parties have the opportunity to conduct a private Resolution Session, 20 U.S.C. §1415(f)(1)(B); participate in Mediation, 20 U.S.C. §1415(e); or waive both.

236.    Counting from the date a special education due process complaint is filed a Local Educational Agency ("LEA") has fifteen (15) calendar days, including weekends and holidays,

within which to schedule either a resolution session or mediation or the parties can waive both. 20 U.S.C. §1415(f)(1)(B)(i)(I); 34 C.F.R. 300.11(a) ("Day").

237.    Any mediation is voluntary by the parties, must be "conducted by a qualified and impartial mediator who is trained in effective mediation techniques," and requires good faith negotiation.  20 U.S.C. §1415(e)(2)(A) ("not used to deny or delay a parent's right to a due process hearing . . . or to deny any other rights afforded under this subchapter.")

238.    If both parties agree in writing to waive the resolution meeting or prior to the end of the resolution period the parties agree in writing that no agreement is possible, it terminates the 30-day resolution period immediately and the case is transferred to a hearing officer for a due process hearing.  34 C.F.R. 300.510(c); *see* N.J.A.C. 6A:14-2.7(h)(9)(iii).

239.    While the 30 Day Resolution Period does not require the parties to settle the dispute, because special education disputes typically involve a contract between the school district and the families, *e.g.* an IEP, there is an implied duty of good faith and fair dealing during this period.  *See, generally,* 20 U.S.C. §1415(f)(1)(B); *see also Palisades Props., Inc. v. Brunetti,* 207 A.2d 522, 531 (N.J. 1965) (In every contract, there is the implied covenant of good faith and fair dealing); *WM v. Scranton School District*, U.S.D.C. M.D.Pa. Civil No. 3:21-cv-01266 (September 22, 2022); *MM v. Red Clay Consolidated School District*, U.S.D.C. D.Dela. Case No. C.A. No. 18-423 (MN) (May 15, 2019).

240.    As a direct and proximate result of State Defendants' systemic violation of the 10 Day Peremptory Hearing Date Rule, *supra*, they have created a disincentive to school districts and their counsel to engage in good faith settlement negotiations during the 30 Day Resolution Period.  Because of "Settlement Thursday" (*see supra*), school districts and their counsel know

they get another bite at the apple to settle the case before an ALJ on what should be the peremptory hearing date.

241.    Further, State Defendants refuse to award attorney's fees in special education due process cases even when parents are prevailing parties.  This erroneous position came about in the case *D.T. o/b/o L.T. v. Willingboro Township Board of Education, et al.*, OAL Dkt. Nos. EDS9218-14, EDS9219-14, EDS11302-14, EDS12445-14 (Decision Oct. 27, 2014).  The ALJ in that matter found, "the OAL does not have jurisdiction to award attorney's fees. . . [T]he OAL is part of the executive, not the judicial, branch and the OAL is not a 'court' within the intent of the above-cited section of the IDEA. ALJs are executive branch judges.  Consequently, ALJs do not have authority to grant claims for attorney's fees in Special Education cases. . . . Moreover, the OAL does not have jurisdiction to determine who is a prevailing party, for purposes of a party's intent to seek attorney's fees later in a Federal District Court."  School districts and their counsel know this and realize they don't have to negotiate attorney's fees with Class Members in the 30 Day Resolution Period which adds another disincentive to act in good faith.  However, this decision was effectively overturned by *Rena C. v. Colonial School Dist.*, 890 F. 3d 404, 420 (3rd Cir. 2018) (Held, "a parent is substantially justified in rejecting [a settlement] offer that does not include the payment of reasonable attorney's fees when the school district cannot reasonably believe that no attorney's fees have accrued.")

242.    Under IDEA, a court or hearing officer is authorized to "award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability."  20 U.S.C. §1415(i)(3)(B)(i); *see S.D. v. Haddon Heights Bd. of Educ.*, U.S.C.A. 3rd Circuit No. 15-1804 (January 31, 2018) [Not Precedential] (attorney's fees are appropriate forms of relief that an IDEA hearing officer may award, *citing Chambers ex rel. Chambers v. Sch. Dist.*

*of Phila. Bd. of Educ.*, F.3d 176, 185 (3rd Cir. 2009).) "In order to be a 'prevailing party,' a party must be 'successful' in the sense that it has been awarded some relief by a court." *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3rd Cir. 2006) *quoting Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001). "In order to be a 'prevailing party,' a party must be 'successful' in the sense that it has been awarded some relief by a court." *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3rd Cir. 2006) *quoting Buckhannon Bd. & Care Home, Inc.*, 532 U.S. at 603; *see also Hensley*, 461 U.S. at 433 and 435 ("Where a plaintiff has obtained excellent results, [her] attorney should recover a fully compensatory fee."). The relief awarded must constitute a "change in the legal relationship of the parties" that is "judicially sanctioned." *Buckhannon*, 532 U.S. at 605; *P.N.*, 442 F.3d at 853. Parents are considered to be "prevailing parties" even when the case is resolved by settlement if the stipulated settlement is judicially sanctioned and enforceable. *See A.W. v. East Orange Bd of Educ.,* 248 Fed. Appx. 363 (3rd Cir. 2007); *P.N., supra; John T. ex rel. Paul T. v. Del. Cnty. Intermed. Unit.*, 318 F.3d 545, 558 (3rd Cir. 2003). "A stipulated settlement is judicially sanctioned where it: 1) contains mandatory language; 2) is entitled "Order," 3) bears the signature of the District Court judge, not the parties' counsel; and 4) provides for judicial enforcement." *P.N.,* 442 F.3d at 853. "A settlement of administrative proceedings that is judicially enforceable meets the *Buckhannon* requirements." *Id.* at 854.

243.    As a direct and proximate result of the decision in *D.T., supra,* and the knowledge that ALJs will not award attorney's fees and costs, LEAs and their counsel refuse to include same in a settlement or permit parents to carve out that claim to pursue a fee petition in federal court. Thus, parents are stuck with either settling without reimbursement of attorney's fees and costs, thereby placing them in financial jeopardy, or not settling at all and facing the risks of

litigation.  This is especially hazardous given that school districts prevail in more than 70% of their cases at the administrative level.

244.    These same events occurred in all of the named Plaintiffs' due process cases.  The school districts and their counsel in each case refused to negotiate in good faith and/or made an offer on the merits, but refused to include full reimbursement of attorney's fees and costs as part of the settlement.

245.    Upon information and belief, LEAs rarely settle due process cases during the 30 Day Resolution Period as a direct result of State Defendants' flawed implementation of IDEA's dispute resolution system.

246.    Upon information and belief, Defendants regularly violate the 30 Day Resolution Period because they never honor the 10 Day Peremptory Hearing Date and always use it as a settlement conference.

247.    By limiting the jurisdiction of the OAL, State Defendants have disincentivized LEAs from resolving due process cases during the 30 Day Resolution Period because, for example, the OAL does not have the jurisdiction to award or enforce attorney's fees as part of a settlement contrary to Third Circuit law.

248.    Upon information and belief, the OAL and ALJs have never been properly trained on the 30 Day Resolution Period and its inseparable connection with the 10 Day Peremptory Hearing Date, and the necessity of its strict enforcement.

249.    NJDOE, by allowing the OAL to ignore the 10 Day Peremptory Hearing Date and conduct "Settlement Thursdays", has failed to adequately enforce the 30 Day Resolution Period and is and has been violating its legal duty to enforce IDEA, the federal regulations, and the New Jersey Administrative Code.

**Page 58 of 107**

250.    As a direct and proximate result of these violations, Class Members have suffered harm by not having a fair opportunity to resolve their due process complaints because school districts and counsel could rely upon "Settlement Thursdays" and further delays without having to negotiate in good faith.

251.    As a direct and proximate result of these violations, Class Members have suffered harm by their due process cases go to hearing after all of the other procedural violations when hearing would have been avoided if the 30 Day Resolution Period was adequately honored.

252.    As a direct and proximate result of these violations, Class Members have suffered harm by the school district taking advantage of the failure of NJ's system to enforce the 30 Day Resolution Period and cause the Class to incur substantial attorney's fees and costs to contest the school district's actions in due process cases.

WHEREFORE, Class Representatives, individually and on behalf of all Class members, respectfully demand relief as follows:

A.    Injunctive relief that State Defendants immediately advise all school districts in the State of New Jersey that the 30 Day Resolution Period requires good faith negotiation;

B.    Injunctive relief that State Defendants immediately reverse their position on ALJs ability to award attorney's fees and costs to parents who are prevailing parties either by settlement or by a favorable decision at the administrative level;

C.    Injunctive relief that State Defendants cease and desist using the OAL as the adjudicative body of special education disputes in the State of New Jersey and replace it with another system that complies with IDEA within 3 months from a decision in this case;

**Page 59 of 107**

D.     Finding that State Defendants have systemically failed to enforce the 30 Day Resolution Period;

E.     An award of compensatory damages in the amount of Seven Hundred Fifty Million Dollars ($750,000,000.00) to provide relief to those Class Plaintiffs who were affected by these violations;

F.     An award of attorneys' fees and costs for Class Plaintiffs; and

G.     For such other and further relief as the Court deems equitable and just.

## COUNT FIVE – CLASS ACTION – SYSTEMIC VIOLATION OF THE ACCESS TO RECORDS PROCEDURAL SAFEGUARD

253.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

254.    Parents have the absolute right to access and examine all records relating to their child with a disability.  20 U.S.C. §1415(b)(1).  This right is fundamental and not 'discovery'.

255.    The standard form letter when a due process case is transmitted from NJDOE to the OAL states "Parents and Guardians have a right to examine relevant school records relating to their child. If you have not seen those records, contact the Board of Education immediately."  (Emphasis added.)

256.    The reason for this fundamental due process right is twofold: (1) "Through the child-study team, the [school district] board generally has extensive records pertaining to a handicapped child," *Lascari v. Board of Educ.*, 116 N.J. 30, 45, 560 A. 2d 1180 (N.J. 1989), not the parents; and (2) parents are entitled to prepare for a school district's argument in a special education dispute and the Five-Day Exchange Rule, *see infra,* if there are records that the parents wish to present as evidence.

257.    An LEA must comply with a request by parents and/or their legal representative to access their child's records "without unnecessary delay and before any meeting regarding an IEP, or any [due process] hearing . . . or resolution session . . . , and in no case more than 45 days after the request has been made." 34 C.F.R. 300.613(a) (emphasis added); *see* N.J.A.C. 6A:14-2.9(b) ("The parent, adult student, or designated representative shall be permitted to inspect and review the contents of the student's records maintained by the district board of education . . . without unnecessary delay;" emphasis added.)

258.    All student records must be maintained by the LEA in accordance with New Jersey regulatory requirements.  N.J.A.C. 6A:14-2.9(a).

259.    Such student records "shall be maintained for a period of five years after a student's graduation or termination from the school district, or to age 23, whichever is longer." N.J.A.C. 6A:32-7.4(e).

260.    LEAs and their counsel know that State Defendants do not enforce this regulation and thus either do not timely comply or do not comply at all.

261.    State Defendants routinely violate IDEA by failing to enforce this regulation, even when it is brought to their attention in the due process cases, as what happened to the Named Plaintiffs in their respective due process cases.

262.    As a direct and proximate cause of State Defendants systemic violation of the access to records Procedural Safeguard, Class Members have been unable to properly and timely prepare their case in administrative special education cases.

263.    As a direct and proximate cause of State Defendants systemic violation of the access to records Procedural Safeguard, LEAs rarely comply with full and proper access to Class

Members' children's records, especially emails that discuss the child's progress or status in school.

264.    Instead, State Defendants require that Class Members serve discovery requests on LEAs in order to obtain documents that they should get immediately upon request.  Discovery requests are illegal under special education due process procedures.  *See infra*.

265.    As a direct and proximate result of these violations, Class Members suffered harm by school districts and their counsel taking advantage of the failure of NJ's system to enforce the right to access records and cause Plaintiffs to incur substantial attorney's fees and costs to contest the school district's actions in due process cases.

266.    As a direct and proximate result of these violations, Class Members have been harmed because they had to go to an unfair hearing without ALJs properly enforcing this Procedural Safeguard.

WHEREFORE, Class Representatives, individually and on behalf of all Class members, respectfully demand relief as follows:

A.    Injunctive relief that State Defendants strictly comply and enforce the Procedural Safeguard of parents' right to access their child's education records *instanter*;

B.    Injunctive relief that State Defendants train all hearing officers that handle special education due process cases on the parents' right to access student records and the why and how it must be implemented;

C.    Injunctive relief that State Defendants cease and desist using the OAL as the adjudicative body of special education disputes in the State of New Jersey and replace it with another system that complies with IDEA within 3 months from a decision in this case;

D.     Finding that State Defendants have systemically failed to enforce the parents'
right to access their child's education records;

E.     An award of compensatory damages in the amount of Two Hundred Fifty Million
Dollars ($250,000,000.00) to provide relief to those Class Plaintiffs who were
affected by these violations;

F.     An award of attorneys' fees and costs for Class Plaintiffs; and

G.     For such other and further relief as the Court deems equitable and just.

## COUNT SIX – CLASS ACTION – SYSTEMIC VIOLATION OF THE FIVE-DAY EXCHANGE REGULATION

267.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and
incorporate them herein by reference as if set forth in full.

268.    The parties to a special education due process hearing must exchange and disclose
documents and a list of witnesses and their anticipated testimony that each party intends to
introduce at the hearing "not less than 5 business days prior to a hearing." 20 U.S.C.
§1415(f)(2)(A) (emphasis added).  "Business Day" is defined as "Monday through Friday,
except for Federal and State holidays."  34 C.F.R. 300.11(b).  This is commonly referred to as
the 'Five-Day Exchange Rule' and is akin to a federal Final Pre-Trial Order in that parties are to
specify the evidence that will actually be presented at trial.  *See* Fed.R.Civ.P. 16(e); *see also*
*Instructions/Directives for Preparing the Joint Final Pretrial Order in the CAMDEN Vicinage*[12].

269.    New Jersey has adopted a more stringent version of the Five-Day Exchange Rule.
N.J.A.C. 1:6A-10.1 ("Each party shall disclose to the other party any documentary evidence and

---

[12] Available at: https://www.njd.uscourts.gov/sites/njd/files/pretrialorder%20camden.pdf

summaries of testimony <u>intended to be introduced at the hearing</u>" at least five (5) days before the hearing.)

270.    Failure to comply with the Five-Day Exchange Rule carries serious consequences. "A hearing officer may bar any party that fails to comply with [the Five-Day Exchange Rule] from introducing the relevant evaluation or recommendation at the hearing without the consent of the other party."  20 U.S.C. §1415(f)(2)(B).  "Any party to a [due process IDEA] hearing . . . has the right to [p]rohibit the introduction of any evidence at the hearing that has not been disclosed to that party at least five business days before the hearing."  34 C.F.R. 300.512(a)(3) (emphasis added); *see* N.J.A.C. 1:6A-10.1(c) ("Upon application of a party, the judge <u>shall exclude</u> any evidence at hearing that has not been disclosed to that party at least five business days before the hearing;" emphasis added); *see L.J. v. Audubon Board of Education*, Civil No. 06-5350 (D.N.J. Sept. 10, 2008) ("In light of the five-day rule's 'plain language,' courts faced with challenges to decisions by ALJs excluding evidence under the rule have consistently upheld the ALJ determinations") *citing, inter alia, J.T. ex rel A.T. v. Medford Bd. of Educ.*, 118 Fed. Appx. 605 (3rd Cir. 2004) (upheld ALJ barring of testimony of parents' witnesses for failure to disclose to school board); *B.G. v. Ocean City Board of Education*, Civil No. 13-5166 (D.N.J. Sept. 26, 2014) (U.S. Magistrate Judge Schneider excluded the testimony of the school district's witness and remanded the case to the ALJ because "plaintiff was denied the benefit of the five-day rule . . . The five-day rule specifically states that evidence <u>to be used at a 'hearing'</u> must be disclosed to the opposing party five days prior to the hearing," emphasis added); *Schoenbach v. District of Columbia*, No. 05-1591, 2006 WL 1663426, at *6 (D.D.C. June 12, 2006); *Pachl v. School Bd. of. Independent School Dist. No. 11*, 2005 U.S. Dist. LEXIS 2758, 2005 WL. 428587, at *18 (D. Minn. Feb. 23, 2005) ("The plain language of 34 C.F.R. § 300.509(a)(3) provides a

party the right to exclude evidence not disclosed to a party at least five business days before the

hearing. *Letter to Steinke*, 18 IDELR 739 (OSEP 1992). This right is not curtailed in the event of

a continuance"); *see also Dell v. Board of Educ., Tp. High School Dist. 113*, 32 F.3d 1053, 1061

(7th Cir. 1994) ("the IDEA's policies encourage the prompt, rather than protracted, resolution of

disputes concerning the disabled student's education.")

271.    The standard form letter when a due process case is transmitted from NJDOE to

the OAL states "All evidence including documents and summaries of expected testimony that

either party intends to use at the hearing must be disclosed to the other party at least 5 days

before the hearing. If you do not comply with this requirement, you may be prevented from

presenting the evidence at the hearing." (Emphasis added.)

272.    By statute in New Jersey, school districts have the burden of proof and production

in special education due process cases.  N.J.S.A. §18A:46-1.1.

273.    State Defendants have routinely ignored and not enforced the Five-Day Exchange

Rule by allowing school districts to submit evidence, including documents and witness

testimony, in special education due process hearings that was not timely disclosed to the families

of children with disabilities.  This has occurred in hundreds, if not thousands, of cases in the

State of New Jersey, as it happened to the J.A. Family in all of their due process cases.

274.    State Defendants' failure to enforce the Five-Day Exchange Rule has caused

serious legal error and violation of IDEA's Procedural Safeguards in hundreds, if not thousands,

of special education due process cases because school districts that violated the Rule would

never have met their burden of proof with their evidence excluded and those families should

have prevailed.  Instead, those families were harmed because school districts were allowed to

offer such evidence into the record and in most, if not all, of those cases obtained a favorable finding.

WHEREFORE, Class Representatives, individually and on behalf of all Class members, respectfully demand relief as follows:

A.    Injunctive relief that State Defendants immediately begin strictly enforcing the Five-Day Exchange Rule by excluding evidence, including documents and witness testimony, that any party intends to use in a special education due process hearing that has not been provided to the opposing party at least five (5) business days before the date of the Peremptory Hearing Date;

B.    Injunctive relief that State Defendants immediately begin strictly enforcing the Five-Day Exchange Rule by dismissing a school district's case for failure to comply with the Rule;

C.    Injunctive relief that State Defendants cease and desist using the OAL as the adjudicative body of special education disputes in the State of New Jersey and replace it with another system that complies with IDEA within 3 months from a decision in this case;

D.    Finding that State Defendants have systemically failed to enforce the Five-Day Exchange Rule;

E.    An award of compensatory damages in the amount of Five Hundred Million Dollars ($500,000,000.00) to provide relief to those Class Plaintiffs who were affected by these violations;

F.    An award of attorneys' fees and costs for Class Plaintiffs; and

G.    For such other and further relief as the Court deems equitable and just.

## COUNT SEVEN – CLASS ACTION – DECLARATORY JUDGMENT

275.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

276.    The Federal Declaratory Judgment Act provides that "In a case of actual controversy within its jurisdiction, [exceptions omitted as inapplicable], any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."  28 U.S.C. §2201(a).

277.    There is an actual and justiciable controversy between the Class and Defendants in that said Defendants misuse certain sections of the Uniform Administrative Procedure Rules, N.J.A.C. 1:1-1 *et seq.* ("UAPR"), to their own benefit and to the detriment of the Class.

278.    The Supremacy Clause of the U.S. Constitution states that federal law "shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."  U.S. Constitution, Article VI, Clause 2.

279.    The U.S. Supreme Court has held that if there is a conflict between a federal law and state law, the federal law prevails.  *See Cipollone v. Liggett Group, Inc.*, 505 US 504, 516 (1992) ("Thus, since our decision in *McCulloch v. Maryland*, 4 Wheat. 316, 427 (1819), it has been settled that state law that conflicts with federal law is 'without effect.' *Maryland v. Louisiana*, 451 U. S. 725, 746 (1981).")

280.    Under the doctrine of federal preemption, which is rooted in the Supremacy Clause of the Constitution of the United States, state laws are invalid if they "interfere with, or

are contrary to, federal law. There are three types of preemption: express preemption and two types of implied preemption, field preemption and conflict preemption. Conflict preemption is found where 'compliance with both federal and state regulations is a physical impossibility,' or where state law erects an 'obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *R.B. v. Mastery Charter School*, 532 Fed. Appx. 136, Op. at 12 (3rd Cir. 2013) [internal citations omitted].

281.    The OAL special education regulations ("OAL rules") incorporate by reference the UAPR, if any aspect of notice and hearing is not covered by the OAL rules.  N.J.A.C. 1:6A-1.1(a) (emphasis added.)

282.     The OAL rules expressly acknowledge that they are established in implementation of IDEA and that if any provision of the OAL rules conflicts with federal law, federal law prevails.  N.J.A.C. 1:6A-1.1(b) (emphasis added.)

283.    The UAPR has discovery rules which permit formal interrogatories, requests for production of documents, and requests for admissions, *see* N.J.A.C. 1:1-10.2(a), and allows for depositions upon a motion for good cause.  *See* N.J.A.C. 1:1-10.2(c).  However, the OAL rules provide that discovery in special education cases shall be an informal exchange and specifically prohibit "requests for formal interrogatories, formal admissions or depositions."  N.J.A.C. 1:6A-10.1(d) (emphasis added.)

284.    The UAPR grants a party in any contested matter to serve the discovery requests, 15 days to respond thereto, and then an additional 10 days to file a motion to compel.  *See* N.J.A.C. 1:1-10.4.  However, in special education due process cases, parties must comply with the Five-Day Exchange Rule (*see supra*) five business days prior to the 10 Day Peremptory Hearing Date (*see supra*), which does not allow for the timing of discovery under the UAPR.

285.    Further, school districts typically possess all the relevant documents for special education disputes and rarely, if ever, do they need to take discovery from the families of children with a disability. *See Lascari, supra*, 116 N.J. at 45.  So discovery is not only informal in special education cases, but also, if State Defendants properly enforce parents' timely access to student records (*supra*), it is unnecessary.

286.    Upon information and belief, Defendants routinely permit formal discovery and enforcement in special education due process cases in violation of the OAL rules.  Defendants do so because applying the UAPR discovery rules allows them more time because they know they cannot have a timely hearing and comply with the 45 Day Rule.

287.    The UAPR permits parties to file various types of motions, including motions for summary decision, with briefing schedules and allowance for substantial time for an ALJ to decide the motion.  *See* N.J.A.C. 1:1-12.1.  The only motion discussed in the OAL rules is emergency relief pending settlement or decision.  *See* N.J.A.C. 1:6A-12.1.

288.    As a result, any and all motions under the UAPR are in violation of the special education due process regulations as they would conflict with the 10 Day Peremptory Hearing Date (*see supra*) and the 45 Day Rule.  *See, e.g.*, N.J.A.C. 1:1-12.5(b) and (c) (response to motion 20 days; reply to response 10 days; and "Motions for summary decision shall be decided within 45 days from the due date of the last permitted responsive filing.")

289.    Upon information and belief, Defendants routinely permit school districts and their counsel to file motions in special education due process cases as they did in all of the named plaintiffs' cases in violation of the OAL rules.  Defendants do so because applying the UAPR motion rules allows them more time because they know they cannot have a timely hearing and comply with the 45 Day Rule.

**Page 69 of 107**

290.    The UAPR permits Pre-Hearing Conferences "scheduled in accordance with the criteria established in N.J.A.C. 1:1-9.1(d)."  N.J.A.C. 1:1-13.1(a).  "At the time of the prehearing conference, the participants shall be prepared to discuss one or more alternate dates when the parties and witnesses will be available for the evidentiary hearing."  N.J.A.C. 1:1-13.1(b). While Pre-Hearing Conferences are permitted under the OAL rules, *see* N.J.A.C. 1:6A-13.1, they may not conflict with either the 10 Day Peremptory Hearing Date Rule or the 45 Day Rule.  Such a conference under the UAPR would conflict with these latter two regulations.

291.    Upon information and belief, Defendants routinely schedule pre-hearing conferences in special education due process cases as they did in all of the named plaintiffs' cases in violation of the OAL rules and which is one of the causes for unnecessary delays. Defendants do so because applying the UAPR pre-hearing rules allows them more time because they know they cannot have a timely hearing and comply with the 45 Day Rule.

292.    A party bringing a due process complaint has "the right to present evidence and confront, cross-examine, and compel the attendance of witnesses." 20 U.S.C. §1415(h)(2).

293.    The UAPR provides an exhaustive list of evidence rules.  *See* N.J.A.C. 1:1-15.1 *et seq.*  The only evidence rule in a special education due process case is that "[t]he judge's decision shall be based on the preponderance of the credible evidence, and the proposed action of the board of education or public agency <u>shall not be accorded any presumption of correctness</u>." N.J.A.C. 1:6A-14.1 (emphasis added.)

294.    In general, ALJs should err on the side of admissibility without the formality of foundational proof.  *Delguidice v. New Jersey Racing Commission*, 100 N.J. 79, 494 A.2d 1007 (1985) ("In an administrative hearing, all relevant evidence is admissible"); *Mazza v. Cavicchia*, 105 A. 2d 545, 15 N.J. 498, 509 (1954) ("In a hearing before an administrative tribunal technical

rules of evidence are not controlling.")  This is especially true in special education cases. *RB ex rel. Parent v. Mastery Charter School*, 762 F. Supp. 2d 745, 747 at *fn. 3* (E.D.Pa. 2010) (Administrative hearings may introduce hearsay and other relevant evidence similar to injunction proceedings in federal court where the rules of evidence are relaxed); *HM ex rel. BM v. Haddon Heights Bd. of Educ.*, 822 F. Supp. 2d 439, 448 (D.N.J. 2011) (Admissibility of evidence is different than the weight accorded evidence and should be allowed in an administrative hearing, but it is up to the hearing officer to determine the weight applied); *Council Rock Sch. Dist. v. M.W. ex rel. Marc W.*, No. 11-4824, 2012 WL 3055686, at *6 (E.D.Pa. July 26, 2012) ("Special education hearing officers are not strictly bound by the Federal Rules of Evidence"); *see also JN v. South Western School Dist.*, 55 F. Supp. 3d 589 (M.D.Pa. 2014).

295.    Upon information and belief, Defendants routinely apply UAPR evidence rules in special education due process cases as they did in all of the named plaintiffs' cases in violation of the OAL rules.  This is a detriment to the Class because it denies their 'day in court', especially for *pro se* members of the Class who do not know the rules of evidence.

296.    The UAPR allows for post-hearing briefs by permission of or request by the ALJ. *See* N.J.A.C. 1:1-14.7(f).

297.    The standard form letter when a due process case is transmitted from NJDOE to the OAL states "Legal briefs and other memoranda or argument <u>cannot be submitted after the hearing</u>. You should be prepared to offer these submissions at the hearing with the final argument."

298.    The reason for this prohibition of post-hearing briefing is twofold: (a) allowing such practice inherently causes delay and violation of the 45 Day Rule; and (b) *pro se* families do not know how to write briefs.

**Page 71 of 107**

299.    When the hearing date is changed, the OAL issues a new notice of hearing which omits many of the warnings in the transmittal hearing notice issued by NJDOE so as to cover up its refusal to comply with the regulations described in this Count.  For example, subsequent hearing notices issued by the OAL in a case do not include the prohibition on post-hearing briefs because the OAL does not want to comply with the 45 Day Rule.  *See, infra*.

300.    Upon information and belief, Defendants routinely apply the UAPR rule on post-hearing briefing in special education due process cases as they did in all of the named plaintiffs' cases in violation of the OAL rules and which is one of the causes for unnecessary delays. Defendants do so because applying the UAPR post-hearing briefing rule allows them more time because they know they cannot have a timely hearing and comply with the 45 Day Rule.  This is especially a detriment to *pro se* members of the Class who do not know how to prepare a post-hearing brief.

301.    In nearly every special education due process case, State Defendants regularly apply the UAPR rules that conflict with the OAL rules and violate IDEA and its regulations.

302.    There is a direct conflict between the scheme under federal IDEA law and its regulations and State Defendants' use of the UAPR for how New Jersey handles special education disputes as it causes violations of both the federal and state regulations regarding these hearings.  These violations are evident in all of the named Plaintiffs' cases as well as thousands of other cases filed by Class Members.

303.    As a direct and proximate result of these violations, Plaintiffs and Class Members, especially *pro se* Class Members, have been harmed by this conflict because application of the UAPR in special education cases favors school districts and in many cases Class Members have lost their case as a direct and proximate cause of State Defendants not enforcing IDEA, its

**Page 72 of 107**

regulations, and the New Jersey special education regulations.  For example, many, if not all, *pro se* Class Members do not know how to draft a post-hearing brief; most Class Members can't anticipate erroneous evidentiary rulings by ALJs; and children with a disability may be languishing in school while a motion is being briefed or discovery is being pursued according to an ALJ's case management schedule.

304.    As a direct and proximate result of these violations, Plaintiffs and Class Members, especially *pro se* Class Members, have been harmed by this conflict because either Class Members were not aware they could object to application of the UAPR and erroneous rulings by ALJs or objections were overruled by the ALJs.  For example, in many of the underlying named Plaintiffs' cases, Plaintiffs objected to evidentiary rulings by the respective ALJ as applying the UAPR over IDEA, its regulations, and the OAL Rules, but such objections were overruled and/or disregarded.

305.    As a direct and proximate result of these violations, Plaintiffs suffered harm by the school districts taking advantage of the failure of State Defendants' system to enforce the special education due process case regulations and cause Plaintiffs to incur substantial attorney's fees and costs to contest the school district's actions in due process cases.

306.    As a direct and proximate result of these violations, Plaintiffs have been harmed because they had to go to an unfair hearing before an ALJ who then issued a final decision in favor of school districts when the Plaintiffs should have prevailed.

307.    Thus, federal IDEA law, its implementing regulations, and the OAL Rules should and must prevail over the UAPR in State Defendants' system for resolving special education disputes.

**Page 73 of 107**

308.    To date, Defendants have taken no action to repair the system and it remains broken.

WHEREFORE, Class Representatives, individually and on behalf of all Class members, respectfully demand relief as follows:

A.    Declaration by this Court that there is a conflict between the scheme under federal IDEA law and the UAPR for resolving special education disputes;

B.    Declaration by this Court that IDEA, its federal regulations, and the New Jersey implementing regulations preempt and prevail over the UAPR in State Defendants' system for resolving special education disputes;

C.    Declaration by this Court that the UAPR is not applicable to special education due process cases;

D.    Declaration that State Defendants' system for resolving special education disputes in the State of New Jersey violates IDEA and is systemically violating the rights of all Class Members;

E.    Declaration that Defendants are jointly and severally liable for the harm to Class members for the systemic flaws in resolving special education disputes in the State of New Jersey and systemic violations of IDEA;

F.    Injunctive relief that State Defendants immediately cease and desist using the UAPR in special education due process cases;

G.    Injunctive relief that State Defendants immediately begin using only IDEA, its federal regulations, and N.J.A.C. 1:6A-1.1 *et seq.* and 6A:14-1.1 *et seq.* in special education due process cases;

H.    Injunctive relief that State Defendants cease and desist using the OAL as the adjudicative body of special education disputes in the State of New Jersey and replace it with another system that complies with IDEA within 3 months from a decision in this case;

I.    Declaration that individual members of the Class may pursue independent actions for compensatory education, compensatory damages, attorney's fees, and, if appropriate, punitive damages, against Defendants for the finding of liability under this Count;

J.    Declaration that State Defendants shall establish an education trust fund of Seven Hundred Million Dollars ($700,000,000.00) to reimburse Class Members for the denial of FAPE because of NJDOE's flawed system;

K.    An award of attorneys' fees and costs for Class Plaintiffs; and

L.    For such other and further relief as the Court deems equitable and just.

## COUNT EIGHT – CLASS ACTION – SYSTEMIC VIOLATION OF THE BURDEN OF PROOF AND PRODUCTION IN SPECIAL EDUCATION DUE PROCESS CASES

309.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

310.    New Jersey has statutorily assigned the initial burden of proof and production in special education due process cases to school districts.  N.J.S.A. §18A:46-1.1.

311.    The burden of proof in special education cases requires an LEA to either produce evidence that it substantively provided a FAPE to the child with a disability, *i.e.* not denied a FAPE to the child, or that it did not violate Procedural Safeguards causing such denial of FAPE. *See* 20 U.S.C. §1415(f)(3)(E).

**Page 75 of 107**

312.    The standard form letter when a due process case is transmitted from NJDOE to the OAL states "A judge will decide the case based only on what is presented at the hearing. If you would like the judge to consider any papers, your must have them at the hearing. If you want any witnesses to testify, you must arrange for their attendance at the hearing. If you are not sure that they will attend the hearing, you should serve them with a subpoena and the appropriate fee. This should occur within a reasonable time before the hearing, and if possible, at least three days before the hearing." (Emphasis added.) Further, the letter states, "If you do not attend the hearing, the judge may dismiss your case or order that an action requested by the other side be granted." (Emphasis added.) This language implies an improper and unfair shifting of the burden of proof and production to families because (a) LEAs have the statutory burden of proof; (b) LEAs have either prior experience at the OAL or are represented by counsel, who understand the burden of proof; whereas (c) *pro se* parents do not understand the burden of proof or how to properly subpoena a witness.

313.    Although State Defendants acknowledge these statutory mandates, almost universally they place the burden of proof on the families of children with disabilities or wrongfully shift the burden to them when the LEAs have not yet met their burden of proof. Examples of this are (1) a school district brings in a teacher or special education director as a witness to a due process hearing, has him/her qualified as an "expert", and that expert witness simply opines that the school district has provided a FAPE, whereby the ALJ then shifts the burden to the parents to prove the 'expert' wrong, like what occurred in the J.A. Family cases; (2) in an IEE case, the ALJ requires the parents to prove that the proposed IEE is necessary and appropriate for the child without requiring the LEA to prove that their evaluation in that area is appropriate, as happened in the J.A. Family case; and/or (3) the ALJs assume that the school

district has provided a FAPE and reject the parents' privately-obtained evaluations as contradictory evidence.

314.    State Defendants have routinely and unlawfully shifted the burden of proof and production to the Class Members when the school districts have not met their initial burden of proving they provided a FAPE to the child in question in special education due process cases.

315.    Class members have been harmed by State Defendants' violation of this statutory mandate because they have lost cases – 90% when filing *pro se* and 70%+ when represented by counsel – when they should have prevailed.

WHEREFORE, Class Representatives, individually and on behalf of all Class members, respectfully demand relief as follows:

A.    Injunctive relief that State Defendants cease and desist shifting the burden of proof to class members before LEAs have met their burden of proving they provided a FAPE to children with disabilities and their families in special education due process cases;

B.    Injunctive relief that State Defendants receive a mandatory 6 hours of training/continuing legal education (CLE) in special education cases on the issue of burden of proof;

C.    Injunctive relief that State Defendants cease and desist using the OAL as the adjudicative body of special education disputes in the State of New Jersey and replace it with another system that complies with IDEA within 3 months from a decision in this case;

D.    Finding that State Defendants have systemically and illegally shifted the burden of proof and production to families in special education due process cases;

E.      An award of compensatory damages in the amount of One Hundred Million

Dollars ($100,000,000.00) to provide relief to those Class Plaintiffs who were

affected by these violations;

F.      An award of attorneys' fees and costs for Class Plaintiffs; and

G.      For such other and further relief as the Court deems equitable and just.

## COUNT NINE – CLASS ACTION – SYSTEMIC VIOLATION OF THE 45 DAY RULE AND ADJOURNMENT RULE – (DEFENDANT OAL ONLY)

316.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

317.    Even though NJDOE has settled the claims regarding the 45 Day Rule and the Adjournment Rule in the *CP Class Action*, *see supra*, the OAL is not a party to that settlement. Compliance by the NJDOE will be incomplete or nonexistent without the OAL's compliance. Upon information and belief, the OAL refuses to comply and is still violating those Rules.

318.    After a case is transmitted to a hearing officer, a final decision must be rendered in the due process case within 45 days after the end of the 30-day resolution period.  34 C.F.R. 300.515(a) ("The public agency must ensure that not later than 45 days after the expiration of the 30 day period . . . A final decision is reached in the hearing;" emphasis added); *see also* N.J.A.C. 6A:14-2.7(j); *see also* N.J.A.C. 1:6A-18.1.  This is commonly referred to as the "45 Day Rule".

319.    The term "days" as used in the 45 Day Rule means calendar days, including weekends and holidays.  C.F.R. 300.11(a) ("Day").

320.    The 45 day period begins to run at the expiration of the 30-day resolution period or upon notification of OSEP "in writing, that they have waived the resolution meeting and intend to proceed directly to a due process hearing," whichever is earlier.  N.J.A.C. 6A:14-2.7(j)(1) (emphasis added.)

**Page 78 of 107**

321.    Under IDEA, "A hearing or reviewing officer may grant specific extensions of time beyond the periods set out in paragraphs (a) and (b) of this section at the request of either party." 34 C.F.R. §300.515(c).  There is no statutory or regulatory authority permitting a hearing officer to *sua sponte* grant an extension of time or adjournment beyond the 45 Day Rule. *See* 34 C.F.R. §300.515(c) ("at the request of either party"); *see also* N.J.A.C. §1:6A-9.2(b) ("No adjournment or delay in the scheduling of the hearing shall occur except at the request of a party;" emphasis added.)

322.    If parties to a special education case do not settle the case on "Settlement Thursday", the OAL assigns the case to another ALJ who will conduct the hearing.  The newly-assigned ALJ will set an initial status conference for the case during which the ALJ will schedule the actual hearing dates.  Those hearing dates are based on the OAL calendar and the available dates on that individual ALJ's calendar.  The hearing dates are, without exception, beyond the deadline of the 45 Day Rule.

323.    In addition, most ALJs presiding over special education due process cases require post-hearing briefing, which is not contemplated in either IDEA or the New Jersey Administrative Code and which only further delays issuance of the final decision in the case, exacerbating the violation of the 45 Day Rule.

324.    In each of the named Plaintiffs' due process cases, the ALJs violated both the 45 Day Rule and the Adjournment Rule. Repeatedly, the ALJ in each case scheduled hearing dates according to their own schedules rather than at the request of a party, which adjourned the hearing for months. Ultimately, these *sua sponte* adjournments by the ALJs caused egregious violations of the 45 Day Rule or caused the named Plaintiffs to settle for less than full relief at the illegal settlement conference because of the threat by the ALJ of a long wait.

325.    Upon information and belief, violations of the 45 Day Rule and the Adjournment Rule have occurred and are continuing to occur for thousands of families who have filed special education due process complaints due to the illegal practice of 'Settlement Thursday' and the persistent use of 'federal days' instead of calendar days by the OAL.

326.    As this Court has previously said, "a significant delay in providing a due process hearing – one measured in months beyond expiration of the 45 Day Rule – constitutes a substantive as opposed to procedural harm, and therefore, constitutes a denial of a FAPE." *CP Class Action, O*p. at 28 (D.N.J. May 22, 2020) *citing Blackman v. D.C.*, 382 F. Supp. 2d 3, 9 (D.D.C. 2005) (holding that a delay of 158 days after filing the initial due process complaint "unquestionably constitutes denial of [the student's] right to a Free Appropriate Public Education ("FAPE") and therefore irreparable harm.")

327.    Because of the systemic delay in resolving special education disputes and New Jersey's noncompliance with federal law, there is great harm to children with disabilities and their families because they are being denied a Free Appropriate Public Education ("FAPE"), to which they are entitled, for long periods of time and made to suffer with inadequate IEPs, services, and therapies; inaccurate evaluations; and/or failure to implement IEPs.  This is a great harm to Plaintiffs and to the education system in the State of New Jersey as a whole.

328.    The U.S. Supreme Court held that a party must exhaust IDEA's administrative remedies prior to filing non-IDEA claims where the gravamen of the suit is the denial of FAPE. *See Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 752-758 (2017); *see also Batchelor v. Rose Tree Media School Dist.*, 759 F. 3d 266 (3rd Cir. 2014).  Thus, a parent must prosecute a special education due process complaint to final decision before seeking relief under other

statutes, *e.g.* §504, the ADA, and the NJLAD, even if the final decision isn't issued for more than an entire school year.

329.    OAL has failed to ensure that procedural requirements guaranteeing parents the opportunity to present a due process complaint and have prompt resolution of the dispute within the statutory time frame are available.

330.    NJDOE's systemic design flaw by using the OAL as the adjudicative body to resolve special education disputes has resulted in a denial of FAPE to children with disabilities and their families in the State of New Jersey.

331.    By statute, a school year for public schools in the State of New Jersey is 180 days. N.J.S.A. §18A:7F-9.

332.    Special education cases that exceed 180 days, i.e. a full school year, are *per se* violations of IDEA and also *per se* harmful to students with disabilities in the State of New Jersey.

333.    Each of the Named Plaintiffs and, upon information and belief, all Class Members have experienced delays or threats of delays for final decisions in due process cases for many months beyond the 45 day deadline as a result of the various violations of IDEA's Procedural Safeguards by State Defendants.

334.    OAL has systemically violated the 45 Day Rule since at least 2011.

335.    OAL's actions have caused Plaintiffs damages.  Specifically, Plaintiffs have been denied a FAPE for every day that a case has exceeded the 45 Day Rule.  Plaintiffs are entitled to all appropriate relief as a result of this harm.

WHEREFORE, Class Representatives, individually and on behalf of all Class members, respectfully demand relief as follows:

A.      Injunctive relief that the OAL come into 100% compliance with the 45 Day Rule, i.e. 34 C.F.R. 300.515(a), within 3 months;

B.      Injunctive relief that the OAL immediately cease and desist granting adjournments based on ALJs' schedules;

C.      Injunctive relief that the OAL comply with the Settlement Agreement reached in the *C.P. Class Action*;

D.      Injunctive relief that State Defendants cease and desist using the OAL as the adjudicative body of special education disputes in the State of New Jersey and replace it with another system that complies with IDEA within 3 months from a decision in this case;

E.      Finding that the OAL has systemically violated the 45 Day Rule and the Adjournment Rule in special education due process cases;

F.      A trust fund of Seven Hundred Fifty Million Dollars ($750,000,000.00) to provide educational services to all Class Members for the denial of FAPE for each day their respective cases exceeded the 45 Day Rule;

G.      An award of attorneys' fees and costs for Class Plaintiffs; and

H.      For such other and further relief as the Court deems equitable and just.

## COUNT TEN – CLASS ACTION – SYSTEMIC VIOLATION OF HEARING OFFICER QUALIFICATIONS

336.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

337.    A special education due process hearing officer "shall, at a minimum possess knowledge of, and the ability to understand, the provisions of this chapter, Federal and State regulations pertaining to this chapter, and legal interpretations of this chapter by Federal and

State courts; possess the knowledge and ability to conduct hearings in accordance with appropriate, standard legal practice; and possess the knowledge and ability to render and write decisions in accordance with appropriate, standard legal practice."  20 U.S.C. §§1415(f)(3)(A)(ii) – (iv); 34 C.F.R. 300.511(c).

338.    An ALJ is defined as ""a person appointed pursuant to N.J.S.A. 52:14F-4 [appointment, salary, retirement] or N.J.S.A. 52:14F-5(m) [temporary or emergency appointment] and assigned by the Director of the Office of Administrative Law to preside over contested cases and other proceedings."  N.J.A.C. 1:1-2.1.

339.    The only qualifications specified in the New Jersey statutes are that ALJs, appointed after 1981, must be "attorneys-at-law of [New Jersey] for a minimum of five years" and "qualified in the field of administrative law or in a subject matter relating to the hearing functions of a State agency."  N.J.S.A. §§52:14F-5(l) and (m) (emphasis added.)

340.    Upon information and belief, the ALJs do not receive and State Defendants do not provide adequate training or instruction on IDEA law, specifically the rigors of IDEA's Procedural Safeguards, the federal or New Jersey implementing regulations, and therefore do not meet IDEA's requirements for hearing officers.

341.    In fact, most if not all of the training of the ALJs has been provided by Perry Zirkel and/or Lehigh University's special education department.  Zirkel and/or the other trainers did not provide the ALJs education on the IDEA statute, the IDEA regulations, Third Circuit caselaw, or U.S. District Court District of New Jersey caselaw, focusing exclusively on OAL decisions.  The materials used in teaching the ALJs did not discuss the Procedural Safeguards or how due process cases were to proceed, especially excluding instruction on the 45 Day Rule.

342.    As described at length above, the other systemic violations are evidence that State Defendants have failed to comply with the procedural requirements of the IDEA because they don't even know what they are.

343.    As a result, most of the ALJs assigned to special education cases by the OAL in New Jersey do not have special training in nor possess knowledge of the provisions of IDEA. Further, by its own admission, the OAL, as an executive branch agency instead of a judicial branch court, does not have jurisdiction to make legal interpretations of or conduct hearings in special education cases in accordance with standard legal practice.

344.    As a direct and proximate cause of the inferior training, ALJs operate under the erroneous belief that special education law is state law, rather than federal law, and often make rulings that conflict with the express language of IDEA because they have not been properly trained on this federal law.

345.    As a result, Plaintiffs are harmed by this lack of expertise in special education law and limited jurisdiction.  By way of example, the J.A. Family was harmed because ALJ Wilson did not understand the exhaustion rules as expressed in *Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 752-758 (2017) and *Batchelor v. Rose Tree Media School Dist.*, 759 F. 3d 266 (3rd Cir. 2014); did not understand the pre-trial motions filed by the J.A. Family; and did not understand the caselaw that interprets IDEA law.

346.    The OAL's self-limited jurisdiction harms Plaintiffs because, even if they win a Due Process hearing, they must seek reimbursement of those fees and costs in a separate judicial proceeding.  This causes a chilling effect on settlement of special education cases where parents have hired counsel because school districts have no incentive to include fees and costs in a settlement.  Because parents must exhaust their administrative remedies before going to court,

they must wait until the Due Process case is concluded before seeking reimbursement of those costs and fees.  This problem is compounded by the violation of the 45 Day Rule discussed above and harms Plaintiffs who must wait one year or more, not only for relief for their child with a disability, but to get their fees reimbursed.  These Plaintiffs often lack the financial resources to litigate cases for a year or more, whereas school districts and the NJDOE do have such resources.

347.    Because ALJs lack training, knowledge, and jurisdiction, NJDOE's system of assigning special education disputes to the OAL is flawed and broken.

348.    NJDOE's systemic violations of IDEA have caused Plaintiffs damages. Specifically, Plaintiffs have been denied a FAPE for every case sent to the OAL, which does not meet the statutory qualifications for hearing officers.  Plaintiffs are entitled to all appropriate relief as a result of this harm.

349.    NJDOE must immediately rectify its flawed system and provide relief to all Class members for the harm caused by the delay in their special education cases.

WHEREFORE, Class Representatives, individually and on behalf of all Class members, respectfully demand relief as follows:

A.      Injunctive relief that State Defendants provide adequate training of the hearing officers that handle special education due process cases in the State of New Jersey such that they meet IDEA's statutory qualifications;

B.      Injunctive relief that State Defendants cease and desist using the OAL as the adjudicative body of special education disputes in the State of New Jersey and replace it with another system that complies with IDEA within 3 months from a decision in this case;

C.     Finding that State Defendants have systemically failed to have ALJs who meet IDEA's statutory qualifications and thereby violated families' due process rights;

D.     A trust fund of Seven Hundred Million Dollars ($700,000,000.00) to reimburse Class Members for the denial of FAPE because of NJDOE's flawed system of the OAL using ALJs who do not meet statutory qualifications;

E.     An award of attorneys' fees and costs for Class Plaintiffs; and

F.     For such other and further relief as the Court deems equitable and just.

## COUNT ELEVEN – CLASS ACTION – SYSTEMIC VIOLATION OF THE INDEPENDENCE OF THE ADJUDICATING BODY OF SPECIAL EDUCATION DISPUTES

350.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

351.    The entire dispute resolution mechanism under IDEA is intended to be independent from the State Educational Agency (SEA) and the Local Educational Agency (LEA).

352.    A hearing officer conducting a special education due process hearing "shall, at a minimum not be (I) an employee of the State educational agency or the local educational agency involved in the education or care of the child; or (II) a person having a personal or professional interest that conflicts with the person's objectivity in the hearing." 20 U.S.C. §1415(f)(3)(A)(i); 34 C.F.R. 300.511(c).

353.    Although not technically employees of the NJDOE, ALJs are employees of the OAL, an executive branch agency just as NJDOE is an executive branch agency. Since the budget and salaries of NJDOE and OAL employees are subparts of and determined by the larger budget of the executive branch, they are beholden to the same pot of money. This creates a

personal and/or professional interest that conflicts with the ALJ's objectivity in a special education due process hearing.

354.    In addition, through the mechanism of the Memoranda of Understanding (MOUs), *see supra*, federal funding under IDEA is provided to the OAL via NJDOE. *See, supra*.

355.    The LEAs that provide special education services to children with disabilities in the State of New Jersey also receive federal funding via NJDOE.

356.    Thus, NJDOE, the OAL, and LEAs are all beholden to the same pot of money that comes from the federal government under IDEA and therefore all have a conflict of interest in special education disputes.

357.    Thus, the ALJs, *i.e.* hearing officers, have a significant conflict of interest in finding in favor of LEAs, which benefits NJDOE and protects the funding of State Defendants.

358.    This conflict of interest has proven devastating to the families of children with disabilities who bring special education due process cases in New Jersey.  As discussed earlier, the NJSEP 45 Day Report findings disclosed that overall school districts in New Jersey prevailed in 70% of the special education due process cases before the OAL even when parents were represented by counsel.  In cases where parents appeared *pro se*, the school districts prevailed in 93% of the decisions.  If the system was fairer, those statistics would be closer to 50%, even when parents represent themselves.

359.    Thus, the New Jersey system for resolving special education disputes is rigged in favor of LEAs and State Defendants and the ALJs are the ones executing that inequity.

360.    Upon information and belief, many ALJs assigned by the OAL to preside over special education due process hearings are former members of the school district bar, representing LEAs in special education due process cases in the State of New Jersey.

361.    By contrast and upon information and belief, none of the ALJs assigned by the OAL to preside over special education due process hearings formerly represented children with disabilities and their families in special education due process cases in the State of New Jersey.

362.    The school district bar (counsel for LEAs) use the delays inherent in the systemic flaws of NJDOE's system for resolving special education disputes as a strategic advantage knowing that most families (a) lack adequate financial resources to engage counsel to represent them; (b) lack adequate financial resources to endure a lengthy legal dispute beyond 45 days; (c) develop 'litigation fatigue' and will compromise their claims less favorably than they would if they received a decision in compliance with the 45 Day Rule; and (d) lack knowledge of IDEA's legal protections and legal expertise to conduct a special education dispute in accordance with legal procedures and principles, thereby laying a proper foundation for appeal if necessary.

363.    LEAs use the broken system in New Jersey to deny and/or delay services to eligible children because they know that families will have to challenge their decisions in due process and will  (a) face known delays of months, if not years; (b) incur substantial attorney fees or navigate the complex system of dispute resolution *pro se*; (c) face well-financed and sophisticated school district counsel; (d) be assigned to ALJs who are not qualified to handle IDEA and special education cases; and (e) lose at least 70% of the time.  This is a systemic failure and denial of due process of law.

364.    As a direct and proximate result of this unholy alliance between State Defendants and LEAs/school districts and their counsel, LEAs and their counsel get preferential treatment in special education due process hearings from ALJs. This is evident in the cases of the Named Plaintiffs as well as in thousands and thousands of due process cases brought in the State of New Jersey since at least 2004.

365.    As a direct and proximate result of these violations, Class Members are harmed by this lack of independence of the adjudicating body in New Jersey special education due process hearings by the presiding ALJs, even when the facts, the law, and the regulations were clearly in the Class Members' favor.

366.    As a direct and proximate result of these violations, Class Members are harmed by this lack of independence of the adjudicating body in New Jersey special education due process hearings because LEAs unfairly benefit from invalid rulings that lead to decisions in favor of the LEAs.

367.    State Defendants' systemic violations of IDEA have caused Class Members damages.  Specifically, Class Members have been denied a FAPE for numerous legal errors in their due process cases.  Class Members are entitled to all appropriate relief as a result of this harm.

368.    As a direct and proximate result of these violations, Class Members have been harmed because they have incurred substantial attorney's fees and costs.

WHEREFORE, Class Representatives, individually and on behalf of all Class members, respectfully demand relief as follows:

A.    Injunctive relief that State Defendants cease and desist using the OAL as the adjudicative body of special education disputes in the State of New Jersey and replace it with another system that complies with IDEA within 3 months from a decision in this case;

B.    Finding that State Defendants have systemically violated IDEA by failing to have an independent adjudicating body that meets IDEA's statutory requirements and has no personal or professional conflicts of interest;

C.      A trust fund of Eight Hundred Million Dollars ($800,000,000.00) to reimburse
        Class Members for the denial of FAPE because of State Defendants' failure to
        have an independent adjudicating body that meets IDEA's statutory requirements
        and has no personal or professional conflicts of interest;

D.      An award of attorneys' fees and costs for Class Plaintiffs; and

E.      For such other and further relief as the Court deems equitable and just.

**COUNT TWELVE – CLASS ACTION – SYSTEMIC VIOLATION OF §504**

369.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and
incorporate them herein by reference as if set forth in full.

370.    State Defendants' special education dispute resolution system is a "program or
activity" that receives Federal financial assistance within the definition of §504.  *See* 29 U.S.C.
§794(b)(1).

371.    Named Plaintiffs J.A., L.S., and R.M. are all individuals with a disability as
defined by §504 during the relevant period of this lawsuit.  29 U.S.C. §705(20).

372.    In addition, all potential Class Members are children with disabilities and/or their
families as defined by §504.  29 U.S.C. §705(20).

373.    Plaintiffs are qualified to participate in school activities, including but not limited
to a fair special education due process proceeding provided by State Defendants.

374.    Because of the systemic flaws in State Defendants' implementation of a special
education dispute resolution process, Class Members are excluded from participating in, denied
the benefits of, or subjected to discrimination in these activities solely due to their disabilities.
Class Members would not otherwise need to make use of the dispute resolution process but for
their status as children with disabilities.

**Page 90 of 107**

375.    Denial of FAPE to Class Members is a violation of §504.

376.    Because of State Defendants' systemic denial of FAPE to Class Members, they are systemically violating §504 for which Class Members are entitled to relief.

WHEREFORE, Class Representatives, individually and on behalf of all Class members, respectfully demand relief as follows:

A.    Injunctive relief that State Defendants cease and desist violating §504 by failing to ensure a FAPE to Class Members;

B.    Injunctive relief that State Defendants cease and desist using the OAL as the adjudicative body of special education disputes in the State of New Jersey and replace it with another system that complies with IDEA within 3 months from a decision in this case;

C.    Finding that State Defendants have systemically violated §504 by discriminating against Class Members by denying a FAPE;

D.    An award of compensatory damages in the amount of Three Hundred Million Dollars ($300,000,000.00) to provide relief to those Class Plaintiffs who were affected by these violations;

E.    An award of attorneys' fees and costs for Class Plaintiffs; and

F.    For such other and further relief as the Court deems equitable and just.

**COUNT THIRTEEN – CLASS ACTION – SYSTEMIC VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)**

377.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

378.    State Defendants are public entities as defined by the ADA.  42 U.S.C. §12132(1)(B).

**Page 91 of 107**

379.     Named Plaintiffs J.A., L.S., and R.M. are all qualified individuals with a disability as defined by the ADA during the relevant period of this lawsuit.  42 U.S.C. §12132(2).

380.     In addition, all potential Class Members are qualified individuals with disabilities and their families as defined by the ADA.  42 U.S.C. §12132(2).

381.     Plaintiffs are qualified to participate in school activities, including but not limited to a fair special education due process proceeding provided by State Defendants.

382.     Plaintiffs have been excluded from participation in and denied the benefits of the special education dispute resolution system in the State of New Jersey due to the systemic flaws and illegal implementation of that system by State Defendants.

383.     Because of the systemic flaws in State Defendants' implementation of a special education dispute resolution process, Class Members are excluded from participating in, denied the benefits of, or subjected to discrimination in these activities solely due to their disabilities. Class Members would not otherwise need to make use of the dispute resolution process but for their status as children with disabilities.

384.     Denial of FAPE to Class Members is a violation of the ADA.

385.     Because of State Defendants' systemic denial of FAPE to Class Members, they are systemically violating the ADA for which Class Members are entitled to relief.

WHEREFORE, Class Representatives, individually and on behalf of all Class members, respectfully demand relief as follows:

A.      Injunctive relief that State Defendants cease and desist violating the ADA by failing to ensure a FAPE to Class Members;

B.      Injunctive relief that State Defendants cease and desist using the OAL as the adjudicative body of special education disputes in the State of New Jersey and

replace it with another system that complies with IDEA within 3 months from a decision in this case;

C.     Finding that State Defendants have systemically violated the ADA by discriminating against Class Members by denying a FAPE;

D.     An award of compensatory damages in the amount of Three Hundred Million Dollars ($300,000,000.00) to provide relief to those Class Plaintiffs who were affected by these violations;

E.     An award of attorneys' fees and costs for Class Plaintiffs; and

F.     For such other and further relief as the Court deems equitable and just.

## COUNT FOURTEEN – CLASS ACTION – SYSTEMIC VIOLATION OF PLAINTIFFS' RIGHTS UNDER 42 U.S.C. §1983

386.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

387.    Congress intended that IDEA rights be enforceable under 42 U.S.C. §1983.

388.    Any person, including without limitation a school district, school board of education, local educational agency, state educational agency, and/or arm of the state government, who subjects or causes to be subjected a U.S. citizen to the deprivation of that citizen's Constitutional rights and/or privileges shall be liable to such citizen in an action at law, suit in equity, or other proceeding for redress. 42 U.S.C. §1983.

389.    Plaintiffs have a cause of action under §1983 if a school district, school board of education, local educational agency, state educational agency, and/or arm of the state government has a policy or custom that caused the violation of their constitutional rights, *Monell v. Department of Social Services*, 436 U.S. 658 (1978), or, under the state-created danger theory.

*See Sanford v. Stiles,* 456 F. 3d 298 (3d Cir. 2006); *Kneipp v. Tedder,* 95 F. 3d 1199 (3d Cir. 1996).

390.    State Defendants were acting within the course and scope of their employment and/or under the color of state law at all material times.

391.    State Defendants have denied Class Members their right to due process of law.

392.    State Defendants have denied Class Members their right to a determination of their special education claims against school districts and/or local education agencies by failing to issue timely decisions.

393.    State Defendants have denied Class Members their right to a determination of their special education claims against school districts and/or local education agencies by delaying and/or preventing them from seeking a timely judicial review of decisions.

394.    State Defendants have denied Class Members their right to timely judicial review of decisions by ALJs in the State of New Jersey.

395.    State Defendants have denied Class Members their right to timely assert other claims because of the delays and systemic flaws.

396.    State Defendants violated Class Members' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by actions, including but not limited to, depriving Class Members equal protection under the law on the basis of disability.

397.    State Defendants violated Class Members' rights under the Fourteenth Amendment to the United States Constitution by actions, including but not limited to, acting with deliberate indifference to the risk of harm to Class Members by delaying and/or failing to timely address special education problems in school districts and leaving children with disabilities in inappropriate IEPs and/or harmful school environments.

**Page 94 of 107**

398.    State Defendants violated Class Members' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution by actions, including but not limited to creating a flawed system for resolving special education disputes in the State of New Jersey; selecting the OAL as the adjudicative body for special education disputes knowing that the OAL already had an overloaded docket and could not timely issue decisions in these case; allowing the unreasonable delay in special education cases to continue without efforts to rectify the problem; and, because of the 'exhaustion rule', failing to provide Class Members a proper forum to resolve special education disputes in compliance with federal law.

399.    The failure to issue timely decisions has harmed Class Members in numerous ways, including but not limited to compromising their claims prematurely and/or for lesser than they would because they could not afford to continue litigation, allowing LEA counsel to use the systemic flaws and delays to their strategic advantage and detriment of Class Members when IDEA was intended to level the playing field with LEAs, and reducing the number of available attorneys to take cases because the risk of delays in reimbursement for statutory attorney's fees and costs put a chilling effect on counsel.

400.    State Defendants knew or should have known that they were denying Class Members their rights in violation of statutory law.

401.    State Defendants knew or should have known that they were denying Class Members due process of law.

402.    State Defendants knew or should have known that they were impeding, impairing, prejudicing, and/or violating Class Members' constitutional rights to have a proper forum in which to enforce federal statutory law.

403.    State Defendants acted intentionally, wantonly, and/or with deliberate indifference to Class Members' clearly established constitutional rights.

404.    Class Members are harmed because so much time has passed while the school districts and/or LEAs continue to deny FAPE and the special education disputes are not timely resolved.

405.    Class Members are harmed because so much time has passed while their children with disabilities remain in 'stay put' IEPs which are no longer appropriate or applicable because the child has progressed in school grades.

406.    Class Members are harmed because so much time has passed while their children with disabilities are being denied FAPE.

407.    Class Members are harmed because the education system for children with disabilities has broken down in the State of New Jersey.

408.    Class Members are harmed because school districts, LEAs, and their counsel know that they can outlast the cost and delays in litigating special education disputes due to the OAL's inability to timely address the issues and lacks jurisdiction to resolve the entire conflict.

409.    Class Members have exhausted their administrative remedies as required by IDEA because further pursuit in the OAL would be futile and inadequate.

WHEREFORE, Class Representatives, individually and on behalf of all Class members, respectfully demand relief as follows:

A.    Injunctive relief that Defendants issue hearing decisions and deliver them to the parties in all pending due process cases that have already violated the 45 Day Rule within ten (10) days;

B.      Injunctive relief that State Defendants cease and desist using the OAL as the adjudicative body of special education disputes in the State of New Jersey and replace it with another system that complies with IDEA within 3 months from a decision in this case;

C.      A trust fund of Seven Hundred Million Dollars ($700,000,000.00) to reimburse Class Members for the denial of FAPE because of NJDOE's flawed system of special education dispute resolution that is not in compliance with IDEA;

D.      An award of punitive damages in the amount of Two Billion One Hundred Million Dollars ($2,100,000,000.00) to Plaintiffs;

E.      An award of attorneys' fees and costs for Class Plaintiffs; and

F.      For such other and further relief as the Court deems equitable and just.

## COUNT FIFTEEN – CLASS ACTION – SYSTEMIC VIOLATION OF THE NJLAD

410.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

411.    The New Jersey Law Against Discrimination, N.J.S.A. §10:5-1 *et seq.* ("NJLAD") prohibits discrimination of children with disabilities in school and ensures that their civil rights are not violated.

412.    Class Plaintiffs include all children with a "disability" as defined in the NJLAD. N.J.S.A. §10:5-5(q).

413.    State Defendants' system for special education dispute resolution in the State of New Jersey is "a public accommodation." N.J.S.A. §10:5-5(l).

414.    Class Plaintiffs are entitled to the prohibitions against unlawful discrimination as provided by the NJLAD and shall not, by reason of their disabilities, be denied public

accommodations or excluded from participation in or be denied the benefits of the services, programs, or activities of State Defendants or be subjected to discrimination by any such entities. N.J.S.A. §10:5-12.

415. In addition, under NJLAD, State Defendants are barred from discriminating on the basis of a person's disability.

416. State Defendants failed in their responsibilities under the NJLAD to provide a fair and equitable system for special education dispute resolution in a full and equal manner to the children with disabilities and their families in the State of New Jersey.

417. State Defendants further violated the NJLAD as follows:

a. Failure to provide children with disabilities and their families in the State of New Jersey with a FAPE;

b. Failure to follow and enforce IDEA and its regulations;

c. Failure to follow and enforce New Jersey's implementing regulations for special education dispute resolution;

d. Failure to adequately train its staff and ALJs regarding the Procedural Safeguards of IDEA;

e. Discriminating against children with disabilities and their families in the State of New Jersey because of their disabilities by making it virtually impossible to get a fair and equitable hearing against school districts for special education disputes;

f. Retaliating against Class Plaintiffs for trying to enforce their legal rights; and

g. Any other violations that may be disclosed by careful review of the administrative records and discovery.

418.    Class Plaintiffs reserve their rights to assert any other violations of NJLAD that resulted in discrimination by State Defendants against children with disabilities and their families in the State of New Jersey.

419.    By retaliating against Class Plaintiffs, State Defendants violated the legal rights of children with disabilities and their families in the State of New Jersey under the NJLAD with malice and reckless abandon.

420.    As a direct and proximate result of State Defendants' failure to comply with the NJLAD, Class Plaintiffs have suffered serious damages including special and general damages according to proof.

WHEREFORE, Class Representatives, individually and on behalf of all Class members, respectfully demand relief as follows:

A.    Injunctive relief that State Defendants cease and desist violating the NJLAD by failing to ensure a FAPE to Class Members;

B.    Injunctive relief that State Defendants cease and desist using the OAL as the adjudicative body of special education disputes in the State of New Jersey and replace it with another system that complies with IDEA within 3 months from a decision in this case;

C.    Finding that State Defendants have systemically violated the NJLAD by discriminating against Class Members by denying a FAPE;

D.    An award of compensatory damages in the amount of Three Hundred Million Dollars ($300,000,000.00) to provide relief to those Class Plaintiffs who were affected by these violations;

E.     An award of punitive damages in the amount of Five Hundred Million Dollars

($500,000,000.00) to the Class;

F.     An award of attorneys' fees and costs for Class Plaintiffs; and

G.     For such other and further relief as the Court deems equitable and just.

## COUNT SIXTEEN – CLASS ACTION – SYSTEMIC FAILURE TO ENFORCE ORDERS

421.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and

incorporate them herein by reference as if set forth in full.

422.    IDEA allows the enforcement of Orders that result from settlement.  "If a

resolution to the dispute is reached at the meeting . . ., the parties must execute a legally binding

agreement that is . . . enforceable in any State court of competent jurisdiction or in a district court

of the United States, or, by the SEA, if the State has other mechanisms or procedures that permit

parties to seek enforcement of resolution agreements, pursuant to § 300.537."  34 C.F.R.

§300.510(d).

423.    "Notwithstanding §§ 300.506(b)(7) and 300.510(d)(2), which provide for judicial

enforcement of a written agreement reached as a result of mediation or a resolution meeting,

there is nothing in this part that would prevent the SEA from using other mechanisms to seek

enforcement of that agreement, provided that use of those mechanisms is not mandatory and

does not delay or deny a party the right to seek enforcement of the written agreement in a State

court of competent jurisdiction or in a district court of the United States."  34 C.F.R. §300.537.

424.    NJDOE has created a mechanism by which such settlements reached in mediation

are enforceable by NJDOE.  "Signed agreements resulting from mediation conducted according

to this section are binding on the parties. If either party fails to comply with any provision of the

agreement, either party may seek enforcement of the agreement in a court of appropriate

jurisdiction. . . . If the parent believes the mediation agreement is not being implemented as written, the parent may request enforcement of the agreement provisions addressing the student's program or services. . . . A request for enforcement of a mediation agreement shall be made by writing to the Director of the Office. . . . Upon receipt of this request, the Office shall make a determination regarding the implementation of the agreement. If it is determined that the district board of education has failed to implement the agreement or part of the agreement, the Office shall order the district board of education to implement the agreement or part of the agreement, as appropriate." N.J.A.C. 6A:14-2.6(d)(11).

425.    Similarly, the New Jersey regulations provide for enforcement by NJDOE of decisions by an ALJ in a special education due process case. "If the district board of education responsible for implementing the IEP fails to implement a hearing decision of the Office of Administrative Law with respect to the student's program or services, a request for enforcement may be made by the parent or the parent's attorney on behalf of the student. The request shall be made in writing to the Director of the Office, Department of Education no later than the 90th calendar day from the date that the action directed in the hearing decision that is the subject of the enforcement request was required to have occurred. . . . The Office shall determine the implementation of the decision. If it is determined that the district board of education has failed to implement the decision or part of the decision, the Office shall order the district board of education to implement the decision or part of the decision, as appropriate." N.J.A.C. 6A:14-2.7(t).

426.    Tragically, the NJDOE refuses to enforce either mediation agreements or final decisions issued by ALJs in special education matters.  In fact, nearly every request for enforcement made by families is rejected by NJDOE and returned to Class Members' counsel

**Page 101 of 107**

indicating that NJDOE refuses to enforce the agreement or decision.  This is exactly what

happened in JA DP Case ##1 and 2 Consolidated when NJDOE refused to enforce ALJ Wilson's

Order on compensatory education.  This is a direct and flagrant violation of the New Jersey

regulations.

427.    As a direct and proximate result of State Defendants' refusal to enforce settlement

agreements and decisions made by ALJs, Class Members have suffered serious harm because the

LEAs involved ignore the mandate of the agreements and orders and let the children suffer while

the families only option is to file a lawsuit, thereby causing unnecessary delay and the costs of

litigation.

WHEREFORE, Class Representatives, individually and on behalf of all Class members,

respectfully demand relief as follows:

A.    Injunctive relief that State Defendants immediately begin enforcing settlement

agreements and decisions by ALJs by making LEAs comply with implementation

of the relief and having a policy of withdrawing IDEA funding for failure to do

so;

B.    Injunctive relief that State Defendants cease and desist using the OAL as the

adjudicative body of special education disputes in the State of New Jersey and

replace it with another system that complies with IDEA within 3 months from a

decision in this case;

C.    Finding that State Defendants have systemically failed to enforce settlement

agreements and ALJ decisions from special education due process cases;

D.      An award of compensatory damages in the amount of One Hundred Million

Dollars ($100,000,000.00) to provide relief to those Class Plaintiffs who were

affected by these violations;

E.      An award of attorneys' fees and costs for Class Plaintiffs; and

F.      For such other and further relief as the Court deems equitable and just.

## COUNT SEVENTEEN – CLASS ACTION – SYSTEMIC VIOLATION OF IDEA'S HEARING RIGHTS

428.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and

incorporate them herein by reference as if set forth in full.

429.    IDEA provides that within 10 days of receiving a due process complaint, if the

LEA has not already issued a Prior Written Notice (PWN) regarding the subject matter of the

complaint, it must respond (answer) the complaint with "an explanation of why the agency

proposed or refused to take the action raised in the complaint; a description of other options that

the IEP Team considered and the reasons why those options were rejected; a description of each

evaluation procedure, assessment, record, or report the agency used as the basis for the proposed

or refused action; and a description of the factors that are relevant to the agency's proposal or

refusal." 20 U.S.C. §1415(c)(2)(B)(i).  This is IDEA's equivalent of an Answer under Rule 8 of

the Federal Rules of Civil Procedure.

430.    Routinely school districts fail to issue a PWN or file an answer to the due process

complaint as required by IDEA.  Just as routinely, State Defendants fail to enforce this hearing

right, either because they are ignorant of the statutory provision or they do not feel it is a

requirement.  However, the purposes of a PWN or responsive pleading are to (a) narrow the

issues for the due process hearing; (b) clarify what is actually in dispute; and (c) allow for the

petitioners to prepare their case.

**Page 103 of 107**

431.    Thus, State Defendants are systematically in violation of IDEA's requirement to respond to a special education due process complaint by failing to enforce it, *e.g.* grant a default judgment against the LEA.

432.    IDEA requires that a special education due process hearing "must be conducted at a time and place that is reasonably convenient to the parents and child involved."  34 C.F.R. 300.515(d).

433.    The OAL only conducts hearings in three locations, at its offices in Newark, Trenton (Mercerville), and Atlantic City.  *See* OAL website,

https://www.nj.gov/oal/contact/directions/.

434.    To many members of the Class, including named Plaintiffs, the OAL offices are not convenient to the parents or child involved as they must travel more than an hour to the hearing location.  In addition, hearing are conducted during school and business hours, so parents and child must miss work and school obligations in order to attend the hearing.

435.    Thus, State Defendants are systemically violating the IDEA regulation on convenience to parents and children with disabilities.[13]

436.    IDEA requires that a parent be given the right to have the child at issue present at a due process hearing.  34 C.F.R. 300.512(c)(1).

437.    Regularly, State Defendants ban the child from the hearing.  This is a clear violation of Class Members' rights.

438.    IDEA requires that a parent be given the right to have the due process hearing open to the public.  34 C.F.R. 300.512(c)(2).

---

[13] By contrast, in Pennsylvania's system for special education dispute resolution the hearing officers travel to the LEA that is subject of the dispute and Pennsylvania is a much larger state geographically than New Jersey.

**Page 104 of 107**

439.    State Defendants do not permit members of the public to be present at special education due process hearings and do not publicly announce this right.  ALJs bar members of the public from attending hearings based on alleged "privacy" reasons, yet that is the right of parents to waive, not State Defendants' right to unilaterally enforce.

440.    LEAs also contest attendance by the public at due process hearings because they do not want taxpayers in their district to see how their local boards of education are mistreating students with disabilities.  State Defendants will often uphold LEAs' objections to members of the public attending hearings.

441.    These are egregious violations of Class Members' rights under IDEA.

WHEREFORE, Class Representatives, individually and on behalf of all Class members, respectfully demand relief as follows:

A.    Injunctive relief that State Defendants immediately begin enforcing IDEA's hearing rights strictly and come into 100% compliance with all of the related regulations within 90 days;

B.    Injunctive relief that State Defendants revise its policies and/or internal operating procedures to comply with IDEA's hearing rights;

C.    Injunctive relief that State Defendants cease and desist using the OAL as the adjudicative body of special education disputes in the State of New Jersey and replace it with another system that complies with IDEA within 3 months from a decision in this case;

D.    Finding that State Defendants have systemically violated IDEA's hearing rights and are not in compliance with the relevant regulations for special education due process cases;

**Page 105 of 107**

E.      An award of compensatory damages in the amount of One Hundred Million

Dollars ($100,000,000.00) to provide relief to those Class Plaintiffs who were

affected by these violations;

F.      An award of attorneys' fees and costs for Class Plaintiffs; and

G.      For such other and further relief as the Court deems equitable and just.


THURSTON LAW OFFICES LLC


By:  /s/ *Robert C. Thurston*
        Robert C. Thurston, Esq.
        Attorney for Plaintiffs

Dated: July 26, 2024

Robert C. Thurston, Esq.
Attorney ID #008801988
Thurston Law Offices LLC
433 River Road #1315
Highland Park, NJ 08904
856-335-5291
Email: rthurston@schoolkidslawyer.com

**Page 106 of 107**

## **CERTIFICATE OF SERVICE**

       I, Robert C. Thurston, certify that I served all counsel of record listed below the foregoing document by causing the same to be sent via the ECF system on the date indicated below:

  Sadia Ahsanuddin, DAG
  Attorney General of New Jersey
  25 Market St., P.O. Box 112
  Trenton, NJ 08625-0112
  609-376-3100
  sadia.ahsanuddin@law.njoag.gov

  *Attorneys for State Defendants*


Dated: July 26, 2024

                           /s/ *Robert C. Thurston*
                           Robert C. Thurston